DAVID J. BRODERICK, LLC
70-20 Austin Street
Suite 107
Forest Hills, New York 11375
Phone:718 830 0700
Fax: 718 732 2102
broadericklegal@gmail.com
Attorney for the Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**LESTER PEARSON,**

|  |  |
|---|---|
| Plaintiff, | INDEX: 1:22-CV-10669 |
| -against- | |
| CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY DEPARTMENT OF CORRECTIONS, BRONX COUNTY DISTRICT ATTORNEY DARCEL CLARK IN HIS PERSONAL AND PROFESSIONAL CAPACITY, BRONX COUNTY ASSISTANT DISTRICT ATTORNEY CHRISTINE SCACCIA IN HER PERSONAL AND PROFESSIONAL CAPACITY, DETECTIVE JOHN DODD IN HIS PERSONAL AND PROFESSIONAL CAPACITY, ESTATE OF DETECTIVE KEVIN TRACY IN HIS PERONAL AND PROFESSIONAL CAPACTIY, INVESTIGATOR DANIEL RIVERA IN HIS PROFESSIONAL AND PERSONAL CAPACITY, and JOHN DOES (1-50) IN THEIR PERSONAL AND PROFESSIONAL CAPACITIES, | COMPLAINT

JURY DEMANDED |
| Defendants. | |

Plaintiff Lester Pearson ("Pearson"), by and through his attorneys, David J Broderick,

LLC, as and for his Complaint against Defendants the City of New York ("City"), the New York

City Police Department ("NYPD"), the New York City Department of Correction ("DOC"),

Bronx County District Attorney Darcel Clark ("DA Clark"), Bronx County Assistant District

Attorney Christine Scaccia ("ADA Scaccia"), NYPD Detective John Dodd ("Detective Dodd"),

the Estate of NYPD Detective Kevin Tracy ("Detective Tracy"), NYPD Investigator Daniel

Rivera ("Rivera") and John Does (1-50), alleges upon knowledge as to himself and his own acts,

1

and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an action for false arrest, false imprisonment and abuse of process in violation of Pearson's constitutional and civil rights guaranteed by the Fourth Amendment to the United States Constitution arising under 42 U.S.C. § 1983; for malicious prosecution and civil conspiracy in violation of his constitutional and civil rights guaranteed by the Fourth Amendment arising under 42 U.S.C. § 1985; for false arrest, false imprisonment, abuse of process, malicious prosecution and civil conspiracy in violation of his constitutional and civil rights guaranteed by the Constitution and laws of New York; for the intentional infliction of emotional distress arising under the laws of New York, based upon violations of his constitutional and civil rights guaranteed by the Fourth Amendment and the laws and Constitution of New York; and for cruel and unusual punishment in violation of his constitutional and civil rights guaranteed by the Eighth Amendment to the United States Constitution arising under 42 U.S.C. § 1983, and the Constitution and laws of New York.

2. Pearson brings this action against the City, NYPD, DA Clark, ADA Scaccia, Detectives Dodd and Tracy, and Investigator Rivera for their conspiracy to maliciously prosecute him for close to 23 years in a criminal proceeding (Burgess Case), until Bronx County Supreme Court Justice Ralph Fabrizio ("Fabrizio") terminated the Burgess Case in Pearson's favor on September 6, 2022.

3. As shown herein, around January 2000, ADA Scaccia and Detectives Dodd and Tracy intentionally, with actual malice to harm Pearson, conspired and reached an agreement to act in concert to unlawfully deprive him of his constitutional and civil rights. They agreed to an illicit plan to falsely arrest, falsely charge, wrongfully obtain an indictment, falsely

2

imprison, and maliciously prosecute Pearson for allegedly killing his best friend Kuwaun

Burgess ("Burgess"), a crime they all knew he did not commit and for which they knew

there was no probable cause.

4.    ADA Scaccia and Detectives Dodd and Tracy intentionally carried out unlawful extreme,

outrageous and reprehensible overt acts in furtherance of their illicit conspiracy plan and

malicious prosecution, including: (a) around January 2000, they fabricated the false

coerced and coached testimony of Daniel Garcia ("Garcia") that he saw Pearson kill

Burgess and they secured Garcia's false testimony by causing him physical harm and

threatening to criminally prosecute him for a crime they knew he did not commit; (b)

they falsely arrested, arraigned and charged Pearson in February 2000 for allegedly

killing Burgess, without probable cause, based on Garcia's perjured testimony, which

they knew to be false as they fabricated same; (c) they caused Pearson to be falsely

imprisoned at Rikers Island ("Rikers") from February 2000 through June 2003 based on

charges they knew to be false as they fabricated same and further caused him to be

subjected to inhumane conditions and treatment while confined at Rikers; (d) they

presented Garcia's perjured testimony to the grand jury to obtain an indictment and also

failed to present exculpatory evidence; (e) they obtained a wrongful indictment from the

grand jury in March 2000 based on Garcia's perjured testimony and filed a criminal

proceeding against Pearson in Bronx Supreme Court after securing that tainted

indictment; and (f) they maliciously prosecuted Pearson before and throughout the

January 2002 trial in the Burgess Case by, inter alia, Scaccia presenting Garcia's said

coerced false testimony to the jury, Scaccia mouthing answers to witnesses testifying at

trial, and Scaccia bribing a juror with City Housing vouchers to secure a guilty verdict

and hung jury.

5.    A trial in the Burgess Case was held in January 2002, the jury returned an 11-1 verdict to acquit Pearson on February 1, 2002 and the Court declared a mistrial. The juror bribed by Scaccia was the only holdout juror to convict Pearson. In June 2003, Pearson was released from Rikers after the Court reduced his bail as ADA Scaccia had still not stated the Burgess Case ready to retry him since the mistrial over 18 months earlier, (**AND NEVER DID AT ANY TIME THEREAFTER**), and Pearson had Court permission to relocate to Florida and not personally appear in the Burgess Case until the Scaccia and the Bronx DA's Office stated the Burgess Case ready for trial, which never happened.

6.    To call the intentional acts that transpired over the next 17 years simply "malicious" is a gross understatement - they were outright criminal. Scaccia, Clark, Dodd, Tracy and/or Rivera intentionally, with malice, in their continued malicious prosecution for over 20 years after February 2002 mistrial, engaged in extreme and outrageous acts, including: (a) obtaining an arrest warrant in April 2009 from the Court in the Burgess Case despite not stating the case ready for trial and Pearson having Court permission not to appear in Court until the Bronx DA's Office stated ready for trial; (b) causing Pearson to be falsely profiled on America's Most Wanted ("AMW") as a fugitive murderer, who shot a cop and killed multiple persons; (c) causing Pearson to be arrested in March 2019, without probable cause, to be purportedly retried in the Burgess Case, but then causing him to be extradited to Louisiana in March 2019 for a the lesser charge to keep that case open and hanging over him while they never intended to retry him; and (d) causing Pearson to be extradited to New York in July 2020 to be purportedly retried in the Burgess Case, without probable cause, and to again be confined at Rikers for over two years from July 2020 until September 8, 2022, during which time they intentionally, with malice, took away his freedom and liberty and left him to languish in prison while they did absolutely

4

nothing for over two years to bring the case to trial in violation of the discovery laws and the Orders and directives of the Court, **AND FAILING TO STATE THE CASE READY FOR TRIAL DESPITE HAVING OVER 20 YEARS TO DO SO SINCE THE MISTRIAL IN FEBRUARY 2002**. Based on their "astonishing" conduct, long delay and prosecutorial inaction Justice Fabrizio terminated the Burgess Case in Pearson's favor on September 6, 2022, putting a long overdue end to Defendants' malicious prosecution.

## THE PARTIES

7.   Plaintiff Lester Pearson, an African-American male, lived in Bronx, New York at the time of his false arrest and arraignment on or about February 3, 2000 for allegedly killing Burgess.  Based on those false charges, he was confined at Rikers in Bronx, New York from on or about February 3, 2002 through June 14, 2003 and again from July 23, 2020 through September 8, 2022.

8.   Defendant the City of New York is a municipal corporation duly organized under the laws of the State of New York and operates the New York City Jail System through its mayoral agency the New York Department of Correction.  The City acts under the color of state law when it holds, detains and imprisons persons charged or convicted of a crime. The City and DOC were operating under the color of state law in their operation of the municipal prison facilities known as Rikers and acted under the color of state law, as they are a municipal corporation and a mayoral agency operating under the authority of law. The City and DOC also operate and manage Rikers under the color of federal law, as the U.S. District Court for the Southern District of New York appointed a Monitor in 2015 to oversee their operation of Rikers.  Since that time, the federally-appointed monitors detailed numerous violations of law by the City and DOC in their operation of Rikers.

DOC's correction officers and other employees are employees of the mayoral agency known as DOC and act under the color of state law.

9.     Defendant the New York Police Department is a mayoral agency of the City, which enforces the laws of the City and New York State.

10.    The City and NYPD are liable for the actions of their NYPD employees who engaged in the wrongful unlawful conduct asserted herein under their policies, customs and practices which permit their employees, acting under the color of law, to: (a) cause citizens they know to be innocent to be falsely arrested, charged and prosecuted for crimes by deliberately fabricating false evidence to do so; (b) knowingly and deliberately make false defamatory public statements that citizens are guilty of crimes, without probable cause; and/or (c) unlawfully threaten harm and/or to harm citizens, thus interfering with their person and property for no justifiable or lawful reason, including threatening citizens with prosecution for crimes they  know the citizens did not commit to obtain false coerced testimony.  These policies, customs and practices will hereinafter be referred to as "City/NYPD Policies".  The City/NYPD Policies are so consistent and widespread that, even if said Policies are not expressly authorized, they constitute a custom or usage of which a supervising policy-maker must have been aware and/or the failure by policymakers to provide adequate training or supervision to subordinates are to such an extent that it amounts to deliberate indifference to the rights of citizens who come into contact with municipal employees.

11.    Defendant the New York Department of Correction acts under the authority and color of law granted to the City.

12.    Defendant DA Marcel Clark is an individual and has served as Bronx County District Attorney since 2016, thus during times relevant to Pearson's claims asserted herein from

2016 through September 8, 2022. Clark is being sued in her individual and professional

capacity for violating Pearson's constitutional and civil rights, and acted under the color

of law when she intentionally, with actual malice to harm Pearson, directed, caused and

participated in him being falsely arrested, charged, imprisoned and maliciously

prosecuted in the Burgess Case.  Under New York law, Clark is not entitled to absolute or

qualified immunity none of her unlawful conduct asserted herein constituted her

functioning as an advocate in circumstances intimately associated with the judicial phase

of the criminal process.

13.     Defendant ADA Christine Scaccia is an individual and was employed as an ADA by the

Bronx DA's Office at all times relevant to Pearson's claims asserted herein.  Scaccia is

being sued in her individual and professional capacity for violating Pearson's civil and

constitutional and acted under the color of law when she intentionally, with actual malice

to harm Pearson, directed, caused and participated in him being falsely arrested, charged,

imprisoned, indicted and maliciously prosecuted for crimes he did not commit and

fabricated evidence to use same for those false charges.  Under New York law, Scaccia is

not entitled to absolute or qualified immunity, as she deliberately fabricated evidence by

coercing and coaching Garcia to give perjured testimony.  Also, none of her unlawful

conduct during the almost 23 years that she maliciously prosecuted Pearson constitute

functioning as an advocate in circumstances intimately associated with the judicial phase

of the criminal process.

14.     Defendant Detective John Dodd was employed as an NYPD Detective by the City and

NYPD, at all times relevant to Pearson's claims asserted herein.  Dodd is being sued in

his individual and official capacity for violating Pearson's constitutional rights, and acted

under the color of law when he intentionally with actual malice directly and personally

7

participated in Pearson being falsely arrested, falsely charged, falsely imprisoned and

maliciously prosecuted for allegedly killing Burgess, as well as Gonzalez. Dodd engaged

in the unlawful conduct asserted herein under the City/NYPD Policies.

15.     Defendant Kevin Tracy was an NYPD Detective at all times relevant to Pearson's claims

asserted herein, and Pearson is suing his Estate as he is now deceased. Tracy is being

sued in his individual and official capacity for violating Pearson's constitutional rights,

and acted under the color of law when he intentionally, with actual malice to cause

Pearson harm, directly and personally participated in Pearson being falsely arrested,

charged, imprisoned and maliciously prosecuted for allegedly killing Burgess. Dodd

engaged in the unlawful conduct asserted herein under the City/NYPD Policies.

16.     Defendant Investigator Daniel Rivera was employed as an NYPD Investigator by the City

and NYPD, at all times relevant to Pearson's claims asserted herein. Rivera is being sued

in his individual and official capacity for violating Pearson's constitutional rights, and

acted under the color of law when he intentionally with actual malice directly and

personally participated in Pearson being falsely arrested, falsely charged, falsely

imprisoned and maliciously prosecuted for allegedly killing Burgess. Rivera engaged in

the unlawful conduct asserted herein under the City/NYPD Policies.

17.     Defendants John Doe 1-50 ("Doe Defendants"), inclusive, are sued under fictitious

names, as Pearson is currently unaware of their true names or capacities and will seek

leave of this Court to insert their true names and capacities once ascertained. Pearson is

informed and believes, that each Doe Defendant had direct involvement in some manner

for the wrongs alleged herein, including the false arrest, imprisonment and malicious

prosecution of him and in so acting was an employee of the City, NYPD or Bronx DA's

Office, and in taking the actions alleged acted under the color of law in their official

8

capacity with the permission and consent of the City, NYPD or Bronx DA's Office. The named Defendants and Doe Defendants are sometimes hereafter referred to collectively and/or individually, as "Defendants."

18.     Defendants DA Clark, ADA Scaccia, Detective Tracy, Detective Dodd, Investigator Rivera and Doe Defendants compelled, caused, coerced, aided and/or abetted the false arrests, false imprisonment and malicious prosecution of Pearson alleged in this Complaint, which conduct is prohibited under the Constitutions and laws of the United States and the State of New York.

## JURISDICTION AND VENUE

19.     This action arises from Defendants' violations of the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. This is an action for false arrest, false imprisonment, abuse of process and cruel and unusual punishment arising under 42 U.S.C. §§ 1983 and 1988 and malicious prosecution and civil conspiracy arising under 42 U.S.C. §§ 1985 and 1988 over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Pearson's pendent state and common law claims pursuant to 28 U.S.C. §§ 1367 and 1338(b) in that those claims are integrally interrelated with their substantial and related federal claims and arise from a common nucleus of operative facts, such that the administration of Pearson's state and common law claims with his federal claims furthers the interest of judicial economy.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims asserted herein occurred in this District.

21.     On or about October 26, 2022 a notice of claim was timely filed with the City.

## FACTS

**I.**     **Officer Ling's False Defamatory Statement that Pearson Shot Him**

22.   On or about December 29, 1999, Pearson parked his Lincoln Navigator at the corner of
      Sexton Avenue and East Gun Hill Road, Bronx, New York and went into a nearby store.
      Debbie Stevenson ("Stevenson"), Pearson's girlfriend at that time who later became his
      wife, was with Pearson, but remained in the Navigator when he went into that store.

23.   While Pearson was in said store, Ling, an NYPD police officer who was off duty at that
      time, entered that store intoxicated from alcohol and under the influence of drugs.

24.   Before Ling became an NYPD police officer, he and Pearson grew up together in the
      Baychester section of Bronx, New York, lived on the same street, and did not get along.
      (**Exhibit 1**, Village Voice 2/8/00 "'N2Deep" Article at ¶ 1).[1]

25.   On or about December 29, 1999, Ling, accompanied by another male ("Ling's friend"),
      went to said store with loaded guns in their possession.  Ling encountered Pearson when
      he entered the store, the two men argued, and Ling then drew his gun and jammed it
      against Pearson's face.  Thereafter, outside of that store, Ling and his friend deliberately
      and/or recklessly fired their guns at Pearson and Stevenson ("Ling incident") with the
      intent to cause Pearson to suffer serious bodily harm and/or death and, upon information
      and belief, they fired eleven (11) shots.  (Id. at ¶ 5).

26.   Ling was shot in the abdomen by a bullet from the gun fired by his friend, and Stevenson
      was hit in her thigh by a bullet from the gun fired by either Ling or his friend.

27.   Neither Pearson nor Stevenson had a gun at the scene of said shooting.

28.   The 'N2Deep Village Voice article published on February 8, 2000 contemporaneously set
      forth the facts of the Ling incident as recounted by Pearson's legal counsel at that time:

          According to Roper-Simpson, Pearson recalled that on the night of
          December 29, after leaving a nightclub, he stopped at a store to buy a

---

[1] https://www.villagevoice.com/2000/02/08/n-2-deep/

cigar.  After entering the premises, he saw Ling stagger through the front door, go to the back of the store, and pick up a beer.  Upon spotting Pearson, Ling allegedly approached and asked, "Wassup?"

"What you mean wassup?" Pearson sneered.  "You got some nerve saying something to me after we've been having all these problems." (Among their alleged encounters were a fistfight at a barbecue and an altercation in which Ling brandished a gun at one of Pearson's friends as Pearson was unlocking the front door to his parents' home.) Pearson rebuffed Ling's overture and the two men argued.  Once again, the confrontation seemed headed for fisticuffs.  Pearson and Ling took their jackets off, but instead of coming to blows, Ling allegedly drew his gun and jammed it against Pearson's face.

Roper-Simpson recalls that the assistant D.A. asked Pearson if he was afraid, and Pearson replied he was not because Ling "does this all the time; he's been doing this for years.  He always pulled guns on us, fooling around with his gun."  She says Pearson berated Ling, telling the cop he couldn't even shoot a fly.  "He said he didn't take the cop seriously," Roper-Simpson adds.  "He told him everything he could think of; he just kept dissing him real hard."  At this point, Pearson's girlfriend intervened, trying to separate them.  As she tugged at Pearson's shirt, Pearson kept warning her they shouldn't turn their backs on Ling: "You gotta watch this guy!"  During the standoff, someone walked into the store and asked Ling what was taking him so long.  Ling, according to Pearson's statement, then ran outside behind a tree, took up a defensive posture, and aimed his weapon at Pearson and his girlfriend.

Roper-Simpson says shots suddenly rang out and Pearson, who she insists was not armed, took cover behind his Navigator.  Now both Ling and the stranger, she claims, were firing at Pearson.  Ling, she maintains, was hit by friendly fire.  "I could only assume that when this guy heard the shots he ran, shooting, to defend his friend because he first saw [Pearson] coming from behind the van," she hypothesizes. "So that's the bullet that hit the cop."  After Ling was shot, the third man chased after Pearson while firing at him.

Roper-Simpson says Pearson then heard what sounded like a car crashing, and more shots.  "Somebody was shooting into the car," the attorney says.  Pearson's girlfriend, who was behind the wheel, was shot in the thigh.  She was treated at Jacobi Medical Center and released. Roper-Simpson claims that **Pearson was beaten by guards shortly after he was arraigned and returned to a holding pen in the back of the courthouse**.  (Id. at ¶¶ 12-16 (emphasis added)).

29.    After the Ling incident, Ling intentionally, with actual malice to cause Pearson harm,

slandered Pearson by falsely stating to police officers, detectives and/or other employees of the City, NYPD and/or Bronx DA's Office that Pearson shot him on or about December 29, 1999.

30. Despite Ling falsely naming Pearson as the person who shot him, under the 48-hour rule, Ling refused to cooperate with authorities investigating the matter. (Id. at ¶ 6).

31. Ling made his false inherently harmful defamatory accusation against Pearson with the malicious intent to cause him to suffer severe physical, emotional and economic harm; to be arrested, imprisoned and prosecuted for a crime Ling knew Pearson did not commit; and to conceal, among other things, the truth that Ling and his friend fired guns at unarmed Pearson and Stevenson, and/or that Ling was shot by a friendly shooter.

32. Ling's defamatory lie caused the public to believe Pearson shot Ling, placed Pearson before the public in an unfavorable and contemptuous manner and in a false light of a kind highly offensive to an ordinary person, put his life in jeopardy as well, and irreparably harmed his quality of life, important personal and business relationships and business opportunities.

33. As a direct result of Ling's false accusation, Pearson suffered, and continues to suffer, severe physical and emotional harm, severe and irreparable harm to his reputation, quality of life, personal and business relationships, business opportunities, and emotional distress from being falsely branded a "cop shooter", which also caused him to be brutally beaten and physically injured by police officers and/or other employees of the City, NYPD, DOC and/or the State of New York, who falsely believed Pearson shot a cop based upon Ling's defamatory inherently harmful lie.

34. Ling's false defamatory accusation that Pearson shot him has been and/or continues to be published, circulated, and disseminated on television, the internet, and in newspapers,

articles and the like, as a result of false statements that Pearson shot Ling made by ADA Scaccia, DA Clark, former NYPD Commissioners Howard Safir ("Safir") and James O'Neill ("O'Neill"), NYPD Sergeant Andrew McInnis ("McInnis"), NYPD Detectives Tracy and Dodd, NYPD Investigator Daniel Rivera ("Rivera") and/or other employees of the NYPD and/or Bronx DA's Office, which they knew to be false when making their defamatory statements.  As a result, Pearson has been, and continues to be, subjected to public hatred, contempt and ridicule since in and around late December 1999.

35.    Soon after the Ling incident in December 1999 and continuing through at least July 2022, police officers, detectives and/or other employees of the NYPD and/or Bronx DA's Office intentionally, maliciously and/or recklessly falsely stated that Pearson was a murderer and cop shooter without probable cause or a reasonable belief in the truth thereof.  There was no evidence to support Ling's false accusation, and said incident was being investigated at the time said false statements were made and/or the investigation had concluded and the evidence showed Pearson did not shoot Ling.

36.    Pearson was never arrested, arraigned or prosecuted for allegedly shooting Ling.

37.    Upon information and belief, an investigation of the Ling incident by the NYPD and/or Bronx DA's Office led the NYPD to fire him due to, inter alia, him running guns.

**II.    After the Ling Incident, NYPD Employees Falsely Stated that Pearson was a Murderer and/or Shot Ling and Unlawfully Threatened to Kill Pearson**

   **A.    In January/February 2000, Former NYPD Commissioner Safir and NYPD Sergeant McInnis Made False Public Statements that Pearson Shot Ling**

38.    After the Ling incident, Pearson feared for his life and went into hiding for about 35 days until his attorney negotiated his surrender for questioning about Ling being corrupt and the Ling incident conducted by employees of the City, NYPD and/or Bronx DA's Office, including ADA Scaccia, which occurred on or about February 2, 2000.

13

39.    Around January 2000, despite the Ling incident still being investigated, Ling's refusal to cooperate with authorities in the investigation and no probable cause to arrest Pearson for allegedly shooting Ling, Safir, NYPD Police Commissioner at that time, nevertheless intentionally slandered Pearson anyway by publicly making the false inherently harmful statement and/or false inference that Pearson shot Ling.  Safir made his false statements with no regard for the truth thereof and without probable cause.

40.    As reported in the February 8, 2000 Village Voice 'N2Deep article, former Commissioner Safir publicly stated that 11 shots were "**exchanged**, but how many were fired **at the off-duty officer** [Ling] and how many he [Ling] fired **back** is uncertain," that Pearson had a "lengthy criminal record, including arrests for attempted murder, assault, and weapons charges," and Ling had a "good record."  (Id. at ¶ 6 (emphasis added)).

41.    Before former NYPD Police Commissioner Safir made his inherently harmful false statements, he knew or should have known his statements to be false. The NYPD and/or Bronx DA's Office were still investigating the Ling incident and there was no evidence that Pearson even had a gun at the incident, let alone that he and Ling "exchanged" shots. Also, Pearson had only one conviction for weapon possession, and Ling was under investigation as being a corrupt cop, which does not constitute a "good record".

42.    Just like his boss Commissioner Safir, around February 2000, Sergeant McInnis, an NYPD spokesperson at that time, publicly made the false statement, without probable cause, that Pearson shot Ling and was going to be prosecuted for doing so.  (Id. at ¶ 11).

43.    Former Commissioner Safir and Sergeant McInnis were acting under the color of law and under the City/NYPD Policies shown herein, when they made their aforesaid false statements that Pearson shot Ling and/or was going to be prosecuted therefor.

44.    Former Commissioner Safir's and Sergeant McInnis' aforesaid false statements caused

Pearson to suffer severe physical, emotional and economic harm, severely tarnished his

reputation, poisoned the public and potential jury pool against him, and caused the public

to believe he shot Ling, subjecting him to public hatred, contempt and ridicule.

**B.**      **In January 2000, NYPD Officers Falsely Call Pearson a Murderer**

45.      After the Ling incident, in January 2000, NYPD police officers, detectives, and/or other

employees slandered Pearson by making the false statement that he was a **murderer**, and

they did so when there was no probable cause to make that false statement.

46.      The February 15, 2000 Village Voice article, entitled "Poster Boy Perp", reported:

> This time, **the detectives** were back with a vengeance, swarming
> all over the two-story house. They rapped on the door of an
> apartment occupied by one of Pearson's tenants, a Nigerian doctor.
> "You must be careful," Pearson overheard one stonefaced officer
> caution the physician. "**They [the Pearson family] have a**
> **murderer living here.** If we catch him, we're going to kill him.
> He has a gun, and we don't know what he's going to do." (**The**
> **NYPD refused to comment**.) Although Pearson swore that his son
> did not live with him anymore, the tenant moved out.  (**Exhibit 2**,
> Village Voice 2/15/00 Article at ¶ 1 (emphasis added)).[2]

47.      In January 2000, the NYPD sent its police officers, detectives and/or other employees to

the home of Pearson's father, who unlawfully told him the police death squad was going

to kill his son if Pearson did not surrender for shooting Ling, an allegation for which

there was no probable cause.  The "Poster Boy Perp" article reported:

> That January evening, the Five-O wasn't looking for the old man; they
> had warned him on a previous visit that if Junior didn't surrender, he
> might run into a police death squad. "**They told me if the others catch**
> **him they're going to kill him** . . . because he is armed and dangerous,"
> recalls Lester Pearson Sr....(Id. at ¶ 1 (emphasis added)).

48.      In January 2000 and all other times thereafter shown herein, employees of the City,

NYPD, DOC, New York State and/or Bronx DA's Office engaged in unlawful acts when

---

[2] https://www.villagevoice.com/2000/02/15/poster-boy-perp/

they threatened to kill or otherwise harm Pearson and/or his family, and caused Pearson to suffer physical injuries and emotional harm, including DOC correction officers beating him and failing to protect him when he was incarcerated at Rikers Island ("Rikers").

49.     The false statements that Pearson shot Ling made by Ling, former Commissioner Safir, Sergeant McInnis and/or other employees of the NYPD and/or Bronx DA's Office caused the COP SHOT organization to put a $10,000 bounty on Pearson's head.  (Id. at ¶ 25).

50.     As published in news articles and the like, Pearson had been wrongfully hunted and hounded by the NYPD, who falsely accused him of crimes he did not commit since he was a child and who beat him and caused him to suffer physical and emotional harm while under its care, custody and control.  (Id. at ¶¶ 6-20).

## III.     Pearson's False Arrest, False Imprisonment and Wrongful Indictment

### A.     Pearson's False Arrest and Arraignment

51.     On or about February 2, 2000, Pearson surrendered to police officers, detectives and/or other employees from the NYPD and/or Bronx DA's Office for questioning regarding the Ling incident and Ling, including by ADA Scaccia.  During the investigation, he told Scaccia and the others that he did not have a gun at the Ling incident, he did not shoot Ling, and he would provide honest information about Ling, but would not lie.

52.     During that investigation, Pearson was told that he was not being charged with shooting Ling.  However, to Pearson's shock, he was arrested and charged for allegedly killing his best friend Burgess over two years earlier on December 7, 1997.  Previously, Pearson had never been questioned by the NYPD or Bronx DA's Office about Burgess being killed.

53.     On or about February 2, 2000, Pearson was arrested without probable cause for allegedly killing Burgess, and he was arraigned in the Supreme Court of New York, Bronx County ("Bronx Supreme Court") for that alleged offense the next day.

16

54.     On or about February 3, 2000, the Bronx Supreme Court remanded Pearson into DOC's custody and control, and he was then falsely imprisoned on said date at Rikers to await a trial for allegedly killing Burgess, a crime all said Defendants knew he did not commit.

55.     ADA Saccia, Detectives Dodd and Tracy, and/or other employees of the NYPD and/or the Bronx DA's Office intentionally, with actual malice to cause Pearson harm, conspired and reached an agreement, by, between and among them, to act in concert to unlawfully deprive Pearson of his rights under the Constitutions and laws of the United States and New York, wherein they agreed to an illicit plan to falsely arrest, falsely charge, obtain a wrongful indictment, falsely imprison, and maliciously prosecute Pearson for allegedly killing Burgess, a serious crime they all knew he did not commit and for which there was no probable cause.  Hereinafter, their said plan will be referred to as "Conspiracy Plan".

56.     The aforesaid Defendants intentionally, with actual malice to cause Pearson harm, initiated and caused him to be falsely arrested, charged and arraigned for allegedly killing Burgess, a crime they all knew he did not commit and for which they fabricated evidence.

57.     The aforesaid Defendants' false arrest, false charges, and wrongfully obtained indictment against Pearson was based on the coerced and coached perjured testimony of alleged eye-witness Garcia, who falsely testified he saw Pearson kill Burgess.  Garcia's said coerced perjured testimony had been previously fabricated and manufactured by said Defendants in and around January 2000 in order to arrest Pearson and bring their false charges.

58.     In and around January 2000, the aforesaid Defendants intentionally and unlawfully, with actual malice to cause Pearson harm, coerced and coached Garcia to give the aforesaid false testimony, including ADA Scaccia threatening to criminally prosecute Garcia for the murder of a pizza delivery man if he did not testify that he saw Pearson kill Burgess.

59.     The aforesaid Defendants unlawfully obtained Garcia's false testimony by unlawfully

17

holding him against his will at a Ramada motel for an inordinate period of time, during which time he was beaten by Tracy, Dodd and/or others under the terrifying threat of being criminally charged and prosecuted by Scaccia for a murder he did not commit.

60.   As a direct result of said Defendants' aforesaid unlawful, threatening and abusive coercive conduct, Garcia finally capitulated to their demands and gave them the false testimony they sought and used to arrest, charge, indict and prosecute Pearson for allegedly killing Burgess.

61.   Each aforesaid Defendant had direct personal involvement and intentionally participated in overt acts in furtherance of their unlawful Conspiracy Plan to cause Pearson to be arrested, charged, incarcerated and maliciously prosecuted for Burgess' murder, a crime they all knew Pearson did not do and for which there was no probable cause.

62.   The aforesaid Defendants conspired to carry out their unlawful nefarious Conspiracy Plan with the malicious intent to cause Pearson to suffer severe physical and emotional harm, and did so to incarcerate Pearson while they investigated the Ling incident, to retaliate against Pearson for refusing to provide false testimony against Ling under investigation for corruption, and/or to apply undue pressure on Pearson to testify against Ling.

63.   The aforesaid Defendants' said overt unlawful actions directly and proximately caused Pearson to suffer, and to continue to suffer, severe physical, emotional and economic harm, including, but not limited to, severe emotional distress, mental anguish, and pain and suffering, being beaten by DOC correction officers and inmates while unlawfully confined at Rikers, and sever irreparable harm to his quality of life, reputation, important personal, professional and business relationships, and business opportunities.  Their deliberate malicious overt acts caused the public to believe Pearson shot Burgess and put him before the public in an unfavorable and contemptuous manner and exposed him to

18

public contempt, hatred and ridicule.

**B.     Pearson Was Beaten Before and After His Arraignment While
in the Care, Custody and Control of the City and New York State**

64.     The February 8, 2000 'N2Deep Village Voice article contemporaneously reported:

> The attorney noted that police had never attempted to arrest him for the
> Burgess killing. "If they had substantiated evidence or information, they
> would have indicted him," Roper-Simpson argued in court. "Instead, they
> used trickery, schemes, and devices to violate Lester Pearson's rights."
> **Prosecutors, she continued, were "simply using [their] leverage to
> conduct a fishing expedition."** (The Bronx D.A. did not return a call for
> comment.)

> Roper-Simpson then attempted to shatter the "good cop" image the police
> commissioner had painted of Ling.  She says that during a videotaped
> statement shortly after Pearson surrendered, **Pearson began "cooperating
> with IAB [the NYPD's Internal Affairs Bureau] and this D.A.'s office
> to provide information on a ring" of "dirty cops" involved in
> "underground gun trafficking" in the Bronx.**  Roper-Simpson, who
> suggested that Ling was part of the ring, asked the judge to release
> Pearson on his own recognizance and "request IAB give [him] protection.

> His life is in danger as a result of his cooperating with [the investigation
> concerning] the illicit gun trafficking," she asserted. The judge denied
> bail. (**Exhibit 1** at ¶¶ 9-11 (emphasis added)).

65.     On or about February 3, 2000, before Pearson was transported to Rikers and while in the

custody and control of the City and/or New York State, their correction officers beat him,

causing him to suffer severe physical injuries and they did so based on false statements

by Ling and employees of the City, NYPD and/or Bronx DA's Office, including ADA

Scaccia, Detectives Tracy and Dodd, former NYPD Commissioner Safir, and/or NYPD

Sergeant McInnis, that Pearson shot a cop and/or they wanted him to provide information

about corrupt Officer Ling.  (Id. at ¶¶ 11, 16, 18, 19).

66.     On February 8, 2000, the Village Voice 'N2Deep article reported:

> After Roper-Simpson left, Pearson allegedly was removed from his cell by
> correction officers and taken to a reception area.  When he resisted, he
> allegedly was beaten. "**He suffered bruises to his head and experienced**

**pain in his rib cage area**," Roper-Simpson claims, adding that Pearson demanded to see a doctor, but was denied medical treatment. **An indication of her client's condition, she says, is that when Pearson boarded a bus to be transported from the Bronx House of Detention to Rikers Island, the driver reportedly refused to escort him, fearing that he might be held responsible for Pearson's injuries.** (Id. at ¶ 18).

67. After Pearson's arraignment on or about February 3, 2000, but before Pearson was taken to Rikers, ADA Scaccia, Detectives Tracy and Dodd and/or other employees of the NYPD and/or Bronx DA's Office, directly or indirectly, for nefarious reasons tried to obtain an inked version of Pearson's fingerprints, despite the fact he was previously electronically fingerprinted at the Bronx DA's office. (Id. at ¶ 17). They did so in an attempt to frame Pearson as the person who shot Ling, Burgess and/or Gonzalez and/or for other nefarious purposes. Pearson, however, refused to give his inked fingerprints, thus preventing them from placing his fingerprints on any gun or anything else.

### C. Pearson Was Beaten and Subjected to Cruel and Inhumane Treatment at Rikers During his False Imprisonment From February 2000 Until June 2003

68. From on or about February 3, 2000 (date Pearson was confined at Rikers) until on or about June 18, 2003 (date he was released), ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of the NYPD and/or Bronx DA's Office directed and/or caused DOC's correction officers and/or other employees to subject Pearson to inhumane and cruel treatment while he was confined at Rikers, including beating and harassing him.

69. On February 8, 2000, the Village Voice article 'N2Deep reported:

> **Roper-Simpson charges that Pearson "is being subjected to constant harassment" by correction officers. "This is occurring because Mr. Pearson is alleged to have shot an officer,"** she declares. In a complaint to the city's Department of Correction, Roper-Simpson charged that some correction officers warned Pearson "that they know where his dad lives and that they see him all the time. They also stated to him that they know his sisters." Pearson is being set up by the officers who wrote "Red ID" (indicating that he was a gang member) on his inmate card. Pearson has no gang affiliation, the attorney says. "That code was placed on Mr.

Pearson's card to make his time spent at the correctional facility miserable." (Id. at ¶¶ 18-19 (emphasis added)).

70.    ADA Scaccia, Detectives Tracy and Dodd and/or other employees of the City, NYPD and/or Bronx DA's Office directed and caused DOC's correction officers and/or other employees to purposefully misidentify and/or misclassify Pearson as "RED ID" on his Rikers inmate card, i.e. that he was a gang member although he was not.  The aforesaid Defendants did so to detain Pearson in the most dangerous housing at Rikers with the malicious intent to cause him to suffer serious harm, including being attacked or killed.

71.    DOC correction officers and/or other employees misidentified and/or misclassified Pearson as "RED ID" as a direct and proximate result of ADA Scaccia, Detectives Tracy and Dodd and/or other employees of the City, NYPD and/or Bronx DA's Office falsely accusing Pearson of shooting a cop, i.e. Officer Ling.

72.    ADA Scaccia, Detectives Tracy and Dodd and/or other employees of the City, NYPD and/or Bronx DA's Office caused Pearson to suffer serious physical and emotional injuries while he was confined at Rikers, including being assaulted by other inmates. DOC's corrections officers failed to protect and help Pearson during such attacks.

73.    But for the fabricated false charges brought against Pearson by ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of the City, NYPD and/or Bronx DA's Office, Pearson would not have been incarcerated at Rikers, and thus he would not have been subjected to cruel and inhumane treatment and conditions at Rikers as asserted herein.

**D.    On March 3, 2000, Pearson was Wrongfully Indicted Based on Defendants Presenting Garcia's Coerced Perjured Testimony to the Grand Jury**

74.    On or about February 7, 2000, the Bronx DA's Office and ADA Scaccia convened a grand jury to obtain an indictment against Pearson for Burgess' murder.

75.    On or about February 7, 2000, ADA Scaccia, Detectives Tracy and Dodd, and/or other

employees of the NYPD and/or Bronx DA's Office, by and through Scaccia, intentionally and knowingly with actual malice to harm Pearson and in furtherance of their Conspiracy Plan, presented Garcia's fabricated, coerced and coached perjured testimony to the grand jury to obtain an indictment from the grand jury against Pearson for Burgess' murder.

76.     On or about February 7, 2000, in the grand jury proceeding, ADA Scaccia intentionally called Garcia as an alleged eye-witness and intentionally and knowingly elicited his coerced and coached perjured testimony that he saw Pearson kill Burgess.  She did so for the illicit purpose of securing an indictment based on Garcia's false testimony, which she had fabricated around January 2000, along with her co-conspirators Tracy and Dodd.

77.     ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of NYPD and/or Bronx DA's Office, by and through Scaccia and in furtherance of their Conspiracy Plan to have Pearson wrongfully indicted, intentionally, maliciously and knowingly concealed from the grand jury true facts and exculpatory evidence conflicting with their fabricated coerced and coached false testimony given by Garcia, such as exculpatory evidence that Burgess was killed by a male 5'7" tall, whereas Pearson is about 6'4" tall, and by a male in a car, not on a bicycle which Pearson was riding at the time of Burgess' murder.

78.     The unlawful aforesaid intentional malicious overt acts by the aforesaid Defendants directly and proximately caused the grand jury to wrongfully indict Pearson on or about March 3, 2000 for Burgess' murder.  The true bill being unlawfully procured by fraud and perjury removed any presumption of probable cause arising from the indictment.

79.     The aforesaid unlawful actions by ADA Scaccia and Detectives Tracy and Dodd, and/or other employees of NYPD and/or Bronx DA's Office, before and throughout the grand jury process was done intentionally with deliberate indifference to Pearson's constitutional and civil rights guaranteed by the Constitutions and laws of the United

22

States and the State of New York, and in contravention of their sworn oaths to uphold the Constitutions and laws of the United States and State of New York.

80.    ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of NYPD and/or Bronx DA's Office, under the color of law, engaged in their aforesaid unlawful acts in furtherance of their Conspiracy Plan with knowing approval of their employers under their employers' policies, practices and customs, as shown herein, permitting and condoning unlawful conduct by their employees.

81.    Under New York law, ADA Scaccia is not entitled to absolute or qualified immunity from liability, as she deliberately participated in the manufacture of false evidence by coercing and coaching Garcia, a material witness, to give perjured testimony to the grand jury so that it would return an indictment.  See Hill v. City of New York, 45 F.3d 653, 662-63 (2d Cir. 1995); Rich v. State of New York, (S.D.N.Y., March 31, 2022).

**IV.    On February 1, 2002, the Bronx Supreme Court Presiding Over the Burgess Case Declared a Mistrial After the Jury Voted 11-1 to Acquit Pearson**

82.    After obtaining a tainted true bill on or about March 3, 2000 based upon Garcia's coerced and coached perjured testimony to the grand jury, ADA Scaccia, acting under the color of law, filed a criminal complaint in Bronx Supreme Court against Pearson for allegedly killing Burgess ("Burgess Case").  She intentionally and knowingly, with actual malice to cause Pearson harm, falsely charged him with said murder, a serious crime she knew he did not commit and for which she directly fabricated false "alleged" evidence.

83.    In January 2002, the Burgess Case proceeded to trial before a jury.  ADA Scaccia tried that case and deliberately and knowingly called Garcia as a witness to give coached perjured testimony to the jury, which he did, to obtain a guilty verdict.  She also granted immunity to another witness for a murder he committed in exchange for testifying against Pearson.  Scaccia is not entitled to absolute or qualified immunity from liability.

84.   As of the date of said trial in January 2002, Pearson had already been falsely imprisoned at Rikers for almost two years for a crime he did commit.

85.   During trial in the Burgess Case, the Court admonished ADA Scaccia for her mouthing answers to prosecution witnesses while they were testifying on the stand.

86.   On February 1, 2002, the jury in the Burgess Case reached an 11-1 verdict in favor to acquit Pearson and the Court declared a mistrial.

87.   During trial in the Burgess Case and before the jury reached its verdict, ADA Scaccia intentionally bribed a juror by giving said juror City Housing vouchers to secure that juror's guilty vote against Pearson with the malicious intent to keep Pearson wrongfully confined for a crime he did not commit, i.e. in order to obtain a hung jury to continue the malicious prosecution of Pearson, as a full acquittal would have foreclosed Scaccia and the Bronx DA's Office from thereafter continuing their malicious prosecution of Pearson.

88.   The juror who ADA Scaccia bribed with City Housing vouchers was the only juror who voted to convict Pearson.  Saccia's said bribery violated Pearson's rights to a fair trial.

89.   ADA Scaccia and all employees from the Bronx DA's Office who participated in the aforesaid malicious prosecution of Pearson violated their oaths of office and disciplinary code of conduct for lawyers, and they intentionally did so with actual malice to deprive Pearson of his constitutional and civil rights and cause him harm.

90.   ADA Scaccia's aforesaid misconduct is indicative of her racial animus against African-Americans, as set forth infra.  Scaccia is caucasian and Pearson is African-American.

**V.    After the Mistrial in the Burgess Case, Pearson Was Falsely Arrested and Charged and Maliciously Prosecuted for Allegedly Killing Gary Gonzalez**

91.   After the Court declared a mistrial in the Burgess Case in February 2002, the Bronx DA's Office and ADA Scaccia did not retry Pearson soon thereafter or at any time during their continued malicious prosecution of him for over 20 years thereafter as alleged herein.

24

92.    Instead, in 2002, after their Conspiracy Plan failed to have Pearson wrongfully convicted for Burgess' murder, ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of the NYPD and/or Bronx DA's Office, under the color of law, engaged in intentional acts with actual malice against Pearson in furtherance of their Conspiracy Plan to falsely arrest, imprison, charge and prosecute him for the murder of Gonzalez, another offense they all knew he did not commit.  They wanted Pearson imprisoned one way or another.

93.    ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of the NYPD and/or Bronx DA's Office had no probable cause to arrest, charge and prosecute Pearson for allegedly killing Gonzalez, which they all knew he did not do, but engaged in those unlawful acts anyway with actual malice to cause Pearson harm, which he did in fact suffer and continues to suffer.

94.    Prior to the aforesaid unlawful overt acts being carried out by ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of the NYPD and/or Bronx DA's Office, Scaccia offered Pearson a plea deal of time served if he pled guilty to killing Burgess and testified against Ling.  He refused to plead guilty to a crime he did not commit and refused to falsely testify against Ling.

95.    Consequently, ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of the NYPD and/or Bronx DA's Office then intentionally, with actual malice to harm Pearson, falsely arrested, charged, and filed a criminal complaint against him in Bronx Supreme Court for Gonzalez's murder ("Gonzalez Case"), thus depriving him of his constitutional and civil rights under the Constitutions and laws of the United States and New York and causing him to suffer severe irreparable physical, emotional and economic harm.

96.    Around the time that Pearson was falsely charged in the Gonzalez Case, ADA Scaccia stated to others, "It does not matter if they lock Pearson up for something he did not do

25

because he got away with enough."

97.    At the time ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of the

NYPD and/or Bronx DA's Office arrested Pearson for allegedly killing Gonzalez, they

again tried to obtain his inked fingerprints despite having his electronic fingerprints and

did so to try to frame him for killing Gonzalez, Burgess and/or Ling and/or for other

nefarious purposes.  But Pearson refused to do so, thus preventing them from putting his

fingerprints on any gun or anything else.

98.    The illicit Conspiracy Plan of ADA Scaccia, Detectives Tracy and Dodd, and/or other

employees of the NYPD and/or Bronx DA's Office to frame and convict Pearson for

killing Gonzalez failed.  In 2002 and 2003, the Bronx DA's Office and Scaccia tried

Pearson two times for that alleged offense; the first trial ended in an 8-4 jury verdict to

acquit Pearson and the second trial ended in his acquittal in and around May 2003.

**VI.    Pearson Was Released From Rikers on June 14, 2003 and With**
**The Court's Permission and Knowledge He Relocated to Florida**

99.    After the Court declared a mistrial in the Burgess Case in February 2002 and Pearson was

acquitted in the Gonzalez Case, he still remained confined at Rikers while ADA Scaccia

and the Bronx DA's Office took no actions to retry him in the Burgess Case.

100.   On June 14, 2003, the Court reduced Pearson's bail, he was released from Rikers, and he

relocated to Florida with the Court's knowledge and permission, due to ADA Scaccia and

the Bronx DA's Office not stating the Burgess Case ready to retry him.  In fact, they

failed to state the case ready for trial between the mistrial in February 2002 and Pearson's

release from Rikers in June 2003, i.e. for over 18 months.

101.   As of June 14, 2003, Pearson had been confined at Rikers for about 40 months for two

crimes he did not commit, which said Defendants knew before they intentionally and

maliciously initiated and pursued their prosecutions of Pearson, causing him severe

physical, emotional and economic harm.  With actual malice to cause Pearson harm, said Defendants intentionally interfered with his right to be free and pursue happiness and a career as a rap artist for 40 months.  At the time of his false arrest and imprisonment in February 2000, Pearson was an up and coming rapper being pursued by several record labels, including, but not limited to, Bad Boy records.

102.   After his release from Rikers in June 2003, Pearson flew from Florida at least two times for Court appearances, but ADA Scaccia and the Bronx DA's Office had still not stated the Burgess Case ready for trial.  Thus, the Court excused Pearson from personally appearing in said case until the Bronx DA's Office stated that case ready for trial.

103.   In his July 8, 2022 Decision and Order, the Honorable Ralph Fabrizio, who presided over the Burgess Case since February 2022, found that:

> [Defense] counsel argued in his motion papers that the People alone were responsible for the delay in bringing this case to trial between November 23, 2003, and the date the warrant for his arrest was issued. He claimed to have been present for every court appearance in that period. The People disputed this in their written response. During the argument on June 17, 2022, defense counsel provided some documentation from that period; **he also represented, and this Court finds to be true, that Justice Mogulescu not only agreed that defendant did not have to appear in Bronx Supreme Court for this matter after he approved a bail bond, but agreed that defendant could leave New York go to Florida, where he and his family resided**.  (**Exhibit 3** at 2 (emphasis added)).

104.   In his July 8, 2022 Decision and Order, Justice Fabrizio found that: "**No judge ever directed he [Pearson] return to New York State to stand trial**.  If indeed the People stated not ready on every date - and that would be hard to find since defendant was never there and counsel was absent for extended periods, **<u>all with court permission</u>** – a judge could have ordered the case to go to trial." (<u>Id</u>. at 3 (emphasis added)).

105.   In his July 8, 2022 Decision and Order, Justice Fabrizio found that:

> During oral argument on the motion, defense counsel agreed that

> Judge Mogulescu **never required his client [Pearson] to appear
> on any of the court dates** in this pending murder matter.  Counsel
> represents that this was in essence because the People never "stated
> ready" for trial in all this time.  **The People have not disputed this
> fact**.  (Id. (emphasis added)).

106.    In ADA Scaccia's affidavit filed on June 7, 2022 in the Burgess Case, she admits

Defense counsel requested that Pearson, relocating to Florida, be excused from appearing

in Court with respect to that matter.  (**Exhibit 4**, 6/7/22  Scaccia Affidavit at p. 3).

**VII.    ADA Scaccia, Investigator Rivera, Detectives Tracy and Dodd and/or
        Other Employees of the NYPD and Bronx DA's Office Caused Pearson
        to be Falsely Profiled on America's Most Wanted as a Fugitive
Murderer**

107.    From the date Pearson was released from Rikers on June 14, 2003 through September 6,

2022 (date the Court terminated the Burgess Case in Pearson's favor), DA Clark, ADA

Scaccia and the Bronx DA's Office **never stated that case ready** to retry Pearson.

108.    Yet, in April 2009, **over 7 years after** the mistrial on February 1, 2002 and despite not

stating the Burgess Case ready for trial, ADA Scaccia, Detectives Tracy and Dodd,

and/or other employees of the NYPD and/or Bronx DA's Office nevertheless

intentionally, with actual malice to cause Pearson harm, sought and obtained a warrant to

arrest him for failure to appear in the Burgess Case.

109.    In 2009, although Pearson had Court permission in the Burgess Case not to appear in

Court until the Bronx DA's Office stated ready for trial, which they had not done, ADA

Scaccia, Detectives Tracy and Dodd, Investigator Rivera and/or other employees of the

NYPD and/or Bronx DA's Office, nevertheless intentionally, with actual malice to cause

Pearson harm, caused him to be falsely called a fugitive murderer and cop shooter on

America's Most Wanted ("AMW"), a highly viewed television show with a large

nationwide and worldwide audience.  The aforesaid false defamatory AMW episode(s)

about Pearson was and remains published on the internet.

28

110.   ADA Scaccia, Detectives Tracy and Dodd, Investigator Rivera and/or other employees of
       the NYPD and/or Bronx DA's Office caused Pearson's face to appear on and be splashed
       all over national television on AMW multiple times, including in 2009, 2011 and 2012,
       and in the false defamatory AMW episode, the public was falsely told that Pearson is a
       murderer and cop shooter specializing in crimes against the police.  (**Exhibit 5**,
       https://amwfans.com/thread/137/lester-pearson-new-york-louisiana).  In fact, Rivera, who
       personally appeared in the AMW episode, falsely told the AMW audience that Pearson
       shot Officer Ling in 1999, Pearson would turn on people in a heart beat, and Pearson
       sought to particularly hurt cops and correction officers.  The AMW episode also made the
       false defamatory statement that throughout the 1990s, Pearson "did not hesitate to use
       deadly force on those he felt wronged him."  (Id.).

111.   As asserted herein, Pearson did not shoot and was never charged for shooting Ling, there
       was no probable cause he did so, and said Defendants even told AMW there was not
       enough evidence to charge Pearson with shooting Ling.  Also, Pearson was acquitted in
       the Gonzalez case, and there was no probable cause for the false accusation he killed
       Burgess, as said Defendants had fabricated that alleged charge as shown herein.  Yet, said
       Defendants vindictively and reprehensibly caused an innocent man to be falsely accused
       of serious crimes on national television and the internet, and their extreme and outrageous
       conduct was done intentionally with actual malice to cause Pearson to suffer severe
       irreparable harm, which he did suffer and continues to suffer.

112.   As a direct and proximate result of aforesaid false statements on AMW caused to made
       by ADA Scaccia, Detectives Tracy and Dodd, Investigator Rivera and/or other
       employees of the NYPD and/or Bronx DA's Office, the public was falsely led to believe
       that Pearson shot and/or killed multiple persons, including a cop, thus placing him before

the public in an unfavorable and contemptuous manner, exposing him to public hatred, contempt and ridicule, and causing him severe and irreparable harm.

113.   The aforesaid false statements on AMW caused to made by ADA Scaccia, Detectives Tracy and Dodd, Investigator Rivera and/or other employees of the NYPD and/or Bronx DA's Office were overt acts made in furtherance of their Conspiracy Plan and continued malicious prosecution of Pearson in the Burgess case, a case the Bronx DA's Office and Scaccia had not even stated ready for retrial since February 1, 2002 and for which there was no probable cause.

114.   ADA Scaccia's aforesaid intentional malicious conduct causing Pearson to be profiled as a fugitive murderer and cop shooter when she and the Bronx DA's Office had not even stated the Burgess case ready for trial did not constitute functioning as an advocate in circumstances intimately associated with the judicial phase of the criminal process.

115.   The aforesaid false defamatory statements about Pearson on AMW caused by NYPD Investigator Rivera, Detectives Tracy and Dodd, ADA Scaccia and/or other employees of the NYPD and/or Bronx DA's Office is yet another example of the City/NYPD Policies, and practices, policies and customs of the Bronx DA's Office permitting their respective employees to make false public statements that citizens are guilty of crimes despite knowing their "alleged" statements of fact were and are in fact false.

116.   In the Affidavit of ADA Scaccia recently filed on June 7, 2022 with the Court in the Burgess Case, with respect to AMW profiling Pearson, she represented:

> The People also take exception to Defense counsels representation that the People caused America's Most Wanted to air an episode about Lester Pearson being a fugitive in 2012.  The People neither initiated or participated in the airing of that episode... (**Exhibit 4** at p. 3).

117.   ADA Scaccia's said representation is a false. The AMW episode profiling Pearson falsely

states the "DA's Office in New York has found enough evidence to retry him [Pearson] for the murder of Burgess." (**Exhibit 5**). That false AMW statement also shows the Bronx DA's Office and Scaccia never had probable cause to arrest and prosecute Pearson in the Burgess Case from the outset of their malicious prosecution in February 2000. If not for the sole juror who Scaccia had bribed to vote guilty, Pearson would have been acquitted in February 2002, and Scaccia, DA Clark, Investigator Rivera, Detectives Tracy and Dodd and/or other employees of the NYPD and/or Bronx DA's Office would have been thereafter been forever foreclosed from intentionally and maliciously trying to harm Pearson and continuing their malicious prosecution of him for over 20 years thereafter.

**VIII.  In March 2019, NYPD Commissioner O'Neill Slandered Pearson as a Cop Killer**

118.  On or about March 15, 2019, Pearson was arrested in Florida on the warrant issued in April 2009 by the Bronx Supreme Court presiding over the Burgess Case. During the almost 10-year period since obtaining that warrant, the Bronx DA's Office, DA Clark and ADA Scaccia had still not stated that case ready for trial.

119.  On or about March 19, 2019, O'Neill, NYPD Police Commissioner at that time, publicly celebrated Pearson's capture on twitter, tweeting "COP KILLER CAUGHT." O'Neill publicly praised his vaunted NYPD officers for "capturing the career criminal who killed off-duty #NYPD Officer Vincent Ling in 1999." (**Exhibit 6**, Washington Post).[3]

120.  Former Commissioner O'Neill and other NYPD employees knew that inherently harmful defamatory statement to be false. They knew Pearson did not shoot Ling, knew he was charged for allegedly doing so, knew Ling was not dead, and knew there was no probable cause to charge him with shooting Ling. But O'Neill nevertheless made his false

---

[3] https://www.washingtonpost.com/nation/2019/03/19/nypd-said-it-captured-cop-killer-who-fled-justice-years-ago-turns-out-cop-is-still-alive/

statement anyway to intentionally prejudice Pearson and the potential jury pool with deliberate indifference for irreparably harming Pearson.[4]

121.   Former Commissioner O'Neill's aforesaid false statement was repeated and reported by others causing Pearson to suffer severe and irreparable harm, including the Washington Post which reported on March 19, 2019:

> New York City Police Commissioner James P. O'Neill was thrilled, praising law enforcement official on Twitter on Sunday for "capturing the career criminal who killed off-duty #NYPD Officer Vincent Ling in 1999. (Id.).

122.   Former NYPD Commissioners Safir and O'Neill, NYPD Sergeant McInnis and NYPD Investigator Rivera intentionally and maliciously made public false inherently harmful statements of "alleged" fact that Pearson shot and/or killed Ling on AMW, in tweets and interviews showing the City/NYPD Policies permitting their employees to make false public statements that citizens are guilty of crimes when knowing same to be false.

123.   O'Neill's aforesaid false statement caused the public to believe that Pearson killed a cop, placed him before the public in an unfavorable, contemptuous manner, and exposed him to public hatred, contempt and ridicule. That false statement was made with the intent and in a manner that was calculated to, and did, cause Pearson severe and irreparable harm.

124.   As a direct and proximate result of the many malicious false statements made about Pearson by NYPD officials and employees with the intent to cause him harm as shown herein, Pearson has suffered and continues to suffer severe physical, emotional and economic harm, and the media and others have further circulated and published the NYPD's false statements on television, social media, and the internet.

---

[4] "Ling's family got in touch with the New York Daily News over the weekend after their headline, "Cop Killer Caught," was plastered on the front page alongside the mugshot of 43-year-old Lester Pearson. 'He's very much alive,' Vincent Ling's uncle, Thomas Ling, said. . ." (**Exhibit 7**, https://www.foxnews.com/us/nypd-retracts-statement-about-arresting-cop-killer-20-years-after-shooting-when-officer-revealed-to-be-living).

**IX.**   **The Court Terminated the Burgess Case in Pearson's Favor on September 6, 2022**

125.   After DA Clark, ADA Scaccia, Detective Dodd, Rivera and/or other employees of the NYPD and/or Bronx DA's Office caused Pearson to be falsely arrested in Florida in March 2019 to be purportedly retried in the Burgess Case, they intentionally directed and caused him **not** to be extradited to New York at that time, and did so with actual malice to cause him harm: for the malicious purpose to **continue** their prosecution of him in the Burgess Case, i.e. to delay and engage in prosecutorial inaction to keep that case ongoing and a devastating and reprehensible cloud of suspicion under threat of prosecution hanging over Pearson while all the time they never intended to retry him for a crime they knew he did not commit and for which they knew there was no probable cause.

126.   ADA Scaccia, Detectives Tracy and Dodd, and/or other employees of the NYPD and/or Bronx DA's Office had tried, unsuccessfully, to frame and have Pearson convicted for allegedly killing Burgess over 17 years earlier, but continued and did not dismiss the proceedings in the Burgess Case, with actual malice, to keep the threat of prosecution and cloud of suspicion over Pearson with the intent to cause him harm.  As a result, Pearson suffered and o continues to suffer severe and irreparable harm.

127.   The intentional and malicious delay to keep the proceedings in the Burgess Case ongoing by DA Clark, ADA Scaccia, Detective Dodd, Investigator Rivera and/or employees of the NYPD and/or Bronx DA's Office was knowingly undertaken without probable cause to believe that they would be successful in prosecuting Pearson a second time. They knew they never had probable cause that Pearson committed said offense by the very fact that Scaccia, Tracy and Dodd deliberately fabricated Garcia's coached and coerced false testimony to arrest and charge Pearson and obtain an indictment in hopes to have him convicted over 17 years earlier, which they failed to accomplish.  The Bronx DA's Office

33

and Scaccia could never prove Pearson committed said offense, which they knew they could not prove for the simple reason that **he did not do it**.

128.   Pearson is an innocent man who was maliciously prosecuted by DA Clark, ADA Scaccia, Detectives Tracy and Dodd, Investigator Rivera and/or employees of the NYPD and/or Bronx DA's Office for almost 23 years, and ADA Scaccia's and DA Clark's misconduct in keeping prosecution of the Burgess Case open while they did nothing at all to retry him for over 20 years since the mistrial in the Burgess Case in February 2002 is outrageous, extreme and reprehensible conduct that does not constitute functioning as advocates in circumstances intimately associated with the judicial phase of the criminal process.

129.   Around March 2019, in their continued malicious prosecution of Pearson in the Burgess Case, DA Clark, ADA Scaccia, Detective Dodd, Investigator Rivera and/or other employees of the NYPD and/or Bronx DA's Office intentionally, with actual malice to cause Pearson harm, directed and caused him to be extradited to Louisiana for lesser marijuana related charges, instead of retrying him in New York for the more serious crime of "alleged" murder.  They did so to delay and engage in prosecutorial inaction to keep the Burgess Case ongoing and the threat of prosecution hanging over Pearson while all the time never intending to retry him for a crime they always knew he did not commit and for which they knew they did not have probable cause.

130.   Pearson was not extradited to New York until July 23, 2020, over sixteen 16 months after DA Clark, ADA Scaccia, Detective Dodd, Investigator Rivera and/or other employees of the NYPD and/or Bronx DA's Office caused him to be arrested in Florida in March 2019.

131.   As of July 23, 2020, New York State and the Bronx DA's Office (collectively "People"), including DA Clark and ADA Scaccia, had still not stated the Burgess Case ready for trial since the Court declared a mistrial over 18 years earlier on February 1, 2002.  And

neither had they dismissed said charges against Pearson.

132.    On or about July 23, 2020, Pearson was returned to Bronx Supreme Court, remanded into DOC's custody and control, and again falsely imprisoned at Rikers for allegedly killing Burgess and again subjected to inhumane and cruel conditions and treatment during his incarceration at Rikers.  He was confined at Rikers for over two (2) years thereafter, until September 8, 2022 when he was finally released from Rikers after Justice Fabrizio terminated the Burgess Case in Pearson's favor on September 6, 2022.

133.    Justice Fabrizio first presided over the Burgess Case on February 9, 2022.  (**Ex. 3** at 1).

134.    In his July 8, 2022 Decision and Order, Justice Fabrizio stated that "[w]hat the Court learned from a review of the files was nothing short of astonishing" with respect to the People's delay, prosecutorial inaction and conduct in the Burgess Case.  (Id. at 2).

135.    The reasons for Justice Fabrizio's termination of the Burgess Case in Pearson's favor, i.e. the "astonishing" actions by the People and their violations of the discovery laws of New York and the Court's Orders and directives, are set forth in his June 10, 2022 Interim Decision (**Exhibit 8**) and July 8, 2022 Decision and Order (**Exhibit 3**).

136.    For over two years, from July 23, 2020 (date Pearson was incarcerated at Rikers after his extradition to New York) until September 8, 2022 (date he was released from Rikers after Justice Fabrizio terminated the Burgess Case), DA Clark, ADA Scaccia, Detective Dodd, Investigator Rivera and/or other employees of the NYPD and Bronx DA's Office intentionally caused Pearson to languish in prison, with actual malice to cause him harm, as they did absolutely nothing at all to bring their alleged case to trial, while taking away Pearson's liberty and freedom as he rotted away at Rikers under inhumane and cruel conditions and treatment.  They at no time stated the case ready for trial during those over 2 years of prosecutorial inaction or moved to dismiss those false charges.  That conduct

does not constitute functioning as advocates in circumstances intimately associated with the judicial phase of the criminal process.

137.   The intentional delay and prosecutorial inaction by DA Clark and ADA Scaccia to continue their malicious prosecution of Pearson without probable cause to be successful was extreme, outrageous and reprehensible.  In fact, for 20 years and 7 months (7,025 days) from the date the Court declared a mistrial in the Burgess Case in February 2002 through the date Justice Fabrizio dismissed that case on September 6, 2022, Scaccia and Clark failed to state the case ready to be retried as they knew there was no probable cause that Pearson committed the offense as falsely charged almost 23 years earlier.

A.   **The People Failed to Provide Extradition Paperwork**

138.   In his July 8, 2022 Decision and Order, Justice Fabrizio found that:

> **No judge ever directed he [Pearson] return to New York State to stand trial**.  If indeed the People stated not ready on every date - and that would be hard to find since defendant was never there and counsel was absent for extended periods, **all with court permission** – a judge could have ordered the case to go to trial.  (**Exhibit 3** at 3 (emphasis added)).

139.   In his July 8, 2022 Decision and Order, Justice Fabrizio found that Pearson was considered to be in New York State's custody and control since his arrest in Florida on March 15, 2019.

140.   In his July 8, 2022 Decision and Order, Justice Fabrizio Ordered the Bronx DA's Office to provide all extradition paperwork and representations made at the time to a state executive to obtain a "Governor's warrant."  The Bronx DA's Office, including DA Clark and ADA Scaccia, **refused** to do so.  The Court stated:

> That leaves us with the "reason" for the now almost **two-year delay** in bringing this case to trial after the defendant returned to New York's jurisdiction.  **The Court was concerned about whether the People took steps to prepare this case for trial after defendant was apprehended in Florida in 2019.**

Defendant represented that the People obtained a "Governor's warrant" to secure the defendant's swift return to New York to face the long-delayed trial in this matter. **The Court directed the People to provide this Court with all extradition paperwork and all representations made at the time to a state executive to secure such a warrant, if indeed they did.** **They have not done so.** (Id. at 5 (emphasis added)).

**B.    In contravention of Court Orders and Directives, ADA Scaccia and DA Clark Failed to file a certificate of compliance with all discovery obligations and Failed to State the Burgess Case Ready For Trial**

141.   In his July 8, 2022 Decision, Justice Fabrizio stated that "[s]ince January 1, 2020, the People have been required to file a certificate of their compliance with all discovery obligations before they can state 'ready' for trial. Not only have they not done so in this matter, but they claim they cannot do so for at least two additional months." (Id.).

142.   In his June 10, 2022 Decision, Justice Fabrizio stated:

> The Court learned that the People had never filed a certificate of discovery compliance ('C of C') in this matter. The People represented on the record on February 9, 2022, in substance, that they had not yet even located all their 'boxes' containing their files....**This Court adjourned the case for about one month, until March 11, 2022. The Court marked the case 'final' for discovery compliance and C of C. The People did not comply with that Order**. (**Exhibit 8** at 1 (emphasis added)).

143.   In his June 10, 2022 Decision, Justice Fabrizio stated:

> On March 11, 2022, the People once again stated that they could not find all of their own files. Defense counsel asked for an adjournment to litigate a constitutional speedy trial motion. The Court directed defendant to file his motion on or before April 15, 2022 and directed that the People respond to the motion by May 6, 2022. The case was adjourned for decision until May 20, 2022. (Id. at 1-2).

144.   On April 15, 2022, Pearson filed a motion to dismiss the Burgess Case. The Bronx DA's Office, including DA Clark and ADA Scaccia, "never responded to the motion, and on May 20, 2022, the date set for decision, they asked an extension." (Id. at 2).

145.   After the Bronx DA's Office, including DA Clark and ADA Scaccia, failed to respond to

Pearson's motion, Justice Fabrizio stated:

> The Court marked the case final for the People's response on May
> 31, 2022, and adjourned the case for decision until June 17, 2022.
> The Court did so over defendant's understandable objection. (Id.).

146.    The Bronx DA's Office, including DA Clark and ADA Scaccia, did not timely file their

response on May 31, 2022.  Instead, they filed their response over 7 days late on June 7,

2022. (Id.).

147.    The Court gave the Bronx DA's Office, including DA Clark and ADA Scaccia, every

opportunity to provide answers for their long prosecutorial delay in the Burgess Case,

which they refused to answer:

> The People were directed to answer some questions they left open in
> their answering papers to establish good cause.  **They chose not to
> do so**. (Id. (emphasis added)).

148.    In his July 8, 2022 Decision and Order, Justice Fabrizio detailed the egregious conduct

and long prosecutorial delay in bringing the Burgess case to trial by the Bronx DA's

Office, finding that:

> Following the receipt of the People's response, this Court made certain
> findings.  Because there were fact disputes, and because this Court did
> not have specific information regarding what it considered to be key
> concerns related to the People's delay in bringing this case to trial since
> defendant's apprehension in Florida on the arrest warrant, **the Court
> ordered that the parties appear with documentation and for oral
> argument on June 17, 2022...the People did not provide anything
> this Court requested**.  The case was adjourned for a final decision on
> this motion.  (**Exhibit 3** at 1 (emphasis added))

149.    In his July 8, 2022 Decision and Order, Justice Fabrizio detailed the egregious conduct

and long prosecutorial delay in bringing the Burgess Case to trial by the Bronx DA's

Office, finding that:

> **In terms of delay since Defendant's apprehension in Florida, this
> Court's main concern is that that People have not provided
> discovery to current counsel, have not filed a certificate of
> discovery compliance ("c of c") and have not and apparently**

**cannot state ready for trial.** (Id. (emphasis added)).

150.   In his July 8, 2022 Decision and Order, Justice Fabrizio detailed the egregious conduct

and long prosecutorial delay in bringing the Burgess Case to trial by the Bronx DA's

Office, finding that:

> This Court learned that the People could not certify their compliance
> with their discovery obligations because they said that their files were
> in storage and they had not received them, and **that nothing had in**
> **fact been done other than *adjourn* the case**. **The Court ordered**
> **the People to get those files and to provide the discovery by March**
> **11, 2022. They did not**. Defendant asked for an adjournment to file
> this motion. In its interim findings, **this Court directed the People**
> **to provide it with the extradition paperwork prepared to secure**
> **defendant's return to New York State in 2019. They did not**.
>
> Since January 1, 2020, the People have been required to file a
> certificate of their compliance with all discovery obligations before
> they can state 'ready' for trial. Not only have they not done so in
> this matter, but they claim they cannot do so for at least two
> additional months. They say that it will take them that additional
> amount of time to find their stored files. **The Court directed the**
> **People to explain their inability to have secured their own**
> **records for at least the almost two-year period since defendant**
> **has been in custody after extradition. They did not**. The Court
> believed it was unable to resolve this matter 'on the papers,' before
> ordering argument on the motion and the documentary support. This
> was mainly to assess the 'reason for the delay' between the mistrial
> and the issuance of the bench warrant, and since defendant has been
> returned to face trial in 2020. (Id. at 1-2 (emphasis added)).
>
>         *               *              *
>
> As noted, **the People have failed to comply with the discovery**
> **laws since defendant's return. To this Court, this is the reason**
> **that this 22-year-old case now languishes without any resolution.**
> **The People have not denied that they filed [sic] to comply with**
> **this statutory mandate. This Court ordered that they comply**
> **with this statute the first time this matter appeared on its own**
> **calendar. They did not do so, have not done so, and represented**
> **that they are currently not able to do so. The reason: they**
> **cannot find all their files. The Court directed the People to**
> **provide some documentation or at least make an oral**
> **presentation of the steps they have taken to obtain these files.**
> **They failed to do so.** In their affirmation in opposition, they
> represent that they received some documents and evidence in this
> matter that is commingled in a file containing documents relating to

a different homicide case involving this defendant, for which he was acquitted in 2002.  The files purport to be stored in a facility where the People have their files stored.  This Court has no idea when they first ordered the files.  **It cannot find that they have even acted with any diligence to get the files since this Court took charge of the matter in February 2022**.  (Id. at 4 (emphasis added)).

*          *          *

**Of course, what is most extraordinary about this case is 'the extent of the delay' since the 2002 mistrial.  The overall delay is now more than 20 years**.  (Id. (emphasis added)).

*          *          *

The Court agrees that the People could not try this case in July 2020, because there were no jury trials being scheduled in Bronx County at the time.  Because of COVID issues that were specific to the Bronx County Hall of Justice, jurors were not required to appear for service until March 2021.  **Since that time, this Court finds the reason for this additional fifteen months' delay is because the People cannot find their files.  The COVID pandemic did not prevent the People's retrieving their files in 2020 and 2021.** The People represented in their opposition papers that they will have all their files and be able to try this case in two months.  This Court is not optimistic that this will happen...**The People were directed to answer some questions they left open in their answering papers to establish good cause.  They choose not to do so**.  And now that places this matter on a path to dismissal.  **This Court will dismiss this matter based on the People's failure to re-try defendant in a constitutionally appropriate period of time should the People not file a valid "c of c" and a statement of trial readiness on or before September 5, 2022**.  (Id. at 5 (emphasis added)).

151.   In his July 2022 Decision and Order, Justice Fabrizio gave the People until September 5, 2022 to state the Burgess Case ready for trial.  (Id.).  The People, including DA Clark and ADA Scaccia, failed to file a valid "c of c" and a statement of trial readiness on or before September 5, 2022 as directed by Justice Fabrizio.

152.   Justice Fabrizio terminated the Burgess Case in Pearson's favor at a hearing held on or about September 6, 2022.  See Thompson v. Clark, 596 U.S. ___ (April 4, 2022).

153.   DA Clark and ADA Scaccia did not even appear at the September 6, 2022 Court hearing,

and they at no time sought to dismiss the false charges filed against Pearson over 22 years earlier, thus leaving that criminal case to hang over Pearson for over 20 years since the Court declared a mistrial in the Burgess Case on February 1, 2022.

154.   DA Clark and ADA Scaccia intentionally, maliciously and with deliberate indifference for Pearson's constitutional and civil rights and actual malice to cause him harm, continued the proceedings in the Burgess Case, while **doing absolutely nothing for over 20 years** since the mistrial in February 2000, other than maliciously obtaining an arrest warrant in April 2009, and maliciously causing Pearson to be falsely profiled on AMW as a fugitive murderer and cop shooter, with actual malice and intent to cause him harm, humiliate him nationwide and ruin his life and reputation.

155.   DA Clark and ADA Scaccia did not deny or contest that they failed to comply with the discovery laws and Orders and directives of the Court in the Burgess Case.

156.   After Pearson was returned to New York in July 2020, DA Clark and ADA Scaccia deliberately claimed to have lost and/or could not locate the Bronx DA's files for the Burgess Case in order to hide the intentional unlawful false arrest, imprisonment, and malicious prosecution of Pearson for allegedly killing Burgess by Scaccia, Tracy, Dodd, Rivera and/or employees of the NYPD and/or Bronx DA's Office over the past almost 23 years, and to not have the their unlawful actions exposed to the Court and Pearson.

157.   The Bronx DA's Office via the NYPD and ADA Scaccia had Pearson extradited to New York for prosecution while all the time knowing they were not going to produce and/or could not find their own "alleged" files.

158.   ADA Scaccia and DA Clark, acting under the color of law, intentionally and with actual malice directed, caused and participated in the wrongful conduct by the People set forth in Justice Fabrizio's June 10, 2022 Decision and July 8, 2022 Decision and Order.  They

intentionally disregarded Justice Fabrizio's Orders and directives, while continuing in

their prosecution of Pearson in the Burgess Case for a crime they knew he did not commit

and while intentionally, with actual malice to harm Pearson, keeping him falsely confined

at Rikers for over 2 years purportedly awaiting a trial that Scaccia and Clark never

intended to pursue.  The aforesaid conduct does not constitute functioning as an advocate

in circumstances intimately associated with the judicial phase of the criminal process.

**X.    Detectives Dodd and Tracy, Under the Color of Law, Engaged in the Unlawful
<u>Misconduct Asserted in this Complaint Under the City/NYPD Policies</u>**

159.   Engaging in conduct under the City/NYPD Policies and acting under the color of law,

Detectives Dodd and Tracy abused their powers as NYPD Detectives by:

   (a) directly participating in and causing Pearson to be falsely arrested, charged,
   imprisoned and maliciously prosecuted for allegedly killing Burgess and
   Gonzalez, serious crimes that they each knew Pearson did not commit;

   (b) beating and threatening Garcia, who is Hispanic, with criminal prosecution
   for a crime he did not commit and doing so while unlawfully keeping him
   captive to obtain his false coerced testimony against Pearson for the unlawful
   purpose of using same to arrest, charge, indict and prosecute Pearson; and/or

   (c) beating Pearson in an attempt to coerce a false confession and/or
   discriminating against him because he is African-American.

160.   While employed by the NYPD, Detective Tracy had a history of beating minorities,

including his own members of service.[5]  He beat one of his fellow officers so bad that it

left him with an IQ of 79.[6]

**XI.    <u>Bronx DA's Office Policies Allowing Misconduct and Civil Rights Violations</u>**

192.   During ADA Scaccia's employment at the Bronx DA's Office, she was demoted, but

then promoted in and around June 2016.  The Bronx DA's Office knew she was a

---

[5] Tracey was known to be a hot head, quick to beat people, and  use pejorative terms even against members of service.  See **Exhibit 9**, https://nypost.com/2013/07/16/court-date-for-officers-in-cop-on-cop-bash/; see also, **Exhibit 10** https://www.50-a.org/complaint/200512246

[6] **Exhibit 11,** https://www.nydailynews.com/news/crime/court-hears-ex-officer-suit-22-years-bar-beating-article-1.1399554

problematic prosecutor, including her modus operandi of letting persons accused of crimes languish in prison without bringing them to trial for alleged crimes.[7]

193. During ADA Scaccia's employment at the Bronx DA's Office, DA Clark and the Bronx DA's Office became aware, or should have become aware, of information that she was unfit to serve in the capacity of an ADA, posed a danger to the public, and had repeatedly violated the constitutional and civil rights of civilians she was sworn to serve.

194. The Bronx DA's Office knew that its employees were "engaging in utter incompetence, serious misconduct and unethical practices directly impacting primarily complainants and defendants constitutional rights."[8]

195. Crystal Rivera, a former City employee, filed a complaint in the Bronx Supreme Court, alleging under oath that the Bronx DA's Office engaged in racism, asserting:

> 23. Plaintiff alleges since August 6, 2007, the Office of the Bronx District Attorney is rife with employees engaging in utter incompetence, serious misconduct and unethical practices that effect the public safety and the constitutional rights of complainants' and defendants' that are primarily African-American and Hispanic. (**Exhibit 13**).

196. Ms. Rivera's complaint highlights that the Bronx DA's Office has a policy, practice and custom of secreting exculpatory evidence from defendants, asserting:

> 24. Plaintiff alleges since August 6, 2007, the Office of the Bronx District Attorney and its prosecutors intentionally fail to disclose pertinent information to defense counsel to the detriment of their African-American and Hispanic client's constitutional rights. (Id.).

197. Ms. Rivera's complaint documented that the Bronx DA's Office has a policy, practice and custom of failing to preserve records in cases for prosecuting African-American defendants:

> 25. Plaintiff alleges since August 6, 2007, the Office of the Bronx District

---

[7] **Exhibit 12,** Demoted prosecutor gets a new top job thanks to Bronx DA, https://ny-post.com/2016/06/21/demoted-prosecutor-gets-a-new-top-job-thanks-to-bronx-da/
[8] **Exhibit 13,** https://www.thesandersfirmpc.com/fed-up-bronx-da-employee-finally-sues

Attorney and its prosecutors intentionally fail to properly, collect and secure evidence to the detriment of the accused African-American and Hispanic criminal defendant's constitutional rights. (Id.).

198.   Ms. Rivera's complaint documented that the Bronx DA's Office has a policy, practice and custom of delaying prosecution so that African-American defendants will plead guilty:

> 27. Plaintiff alleges the dilatory tactics of the Office of the Bronx District Attorney and its prosecutors are intentionally used to ensure the accused African-American and Hispanic criminal defendants' plea to crimes the office could not otherwise prosecute due to the serious misconduct and unethical practices within the office. (Id.).

199.   Ms. Rivera's complaint documented the Bronx DA's Office policy, practice and custom of allowing its employees to engage in sexual activities rather than investigate crimes:

> 28. Plaintiff alleges since August 6, 2007, the Office of Bronx District Attorney, its prosecutors and other employees routinely shop, consume alcohol in the office, engage in sexual activities in the office and other improper activities instead of investigating and prosecuting crimes against accused African-American and Hispanic criminal defendants. (Id.).

200.   Ms. Rivera's complaint blew the whistle on DA Clark's and ADA Scaccia's racial animus:

> 83. Plaintiff alleges Defendants' THE CITY OF NEW YORK; DARCEL D. CLARK; CHRISTINA SCACCIA; CARMEN FACCIOLO III; JEREMY SOCKETT; TERRY GENSLER; FRANK CHIARA; TERRENCE MULDERRIG; WANDA PEREZ-MALDONADO; OMER WICZYK and ARTHUR B. SIMMONS with racial arrogance and lack of respect retaliated against her for exercising her First Amendment right of freedom of association with NYPD Detective Terrell; for re-buffing the incompetence, serious misconduct and unethical practices of the Office of the Bronx District Attorney and for failing to cooperate with a baseless racially charged criminal investigation against NYPD Detective Terrell. (Id.).

201.   Ms. Rivera's complaint evidences that under its policies, practices and customs, the Bronx DA's Office acts with malice and racial discrimination towards African-Americans accused of crimes, and that ADA Scaccia has a practice of violating the

constitutional and civil rights of African-American civilians charged with crimes in cases she handled while working for the Bronx DA's Office.

202.   The policies, practices and customs of the Bronx DA' Office are so consistent and widespread that, even if same are not expressly authorized, they constitute a custom or usage of which a supervising policy-maker must have been aware and/or the failure by policymakers to provide adequate training or supervision to subordinates are to such an extent that it amounts to deliberate indifference to the rights of citizens who come into contact with its employees.

## XII.   Pearson Was Subjected to Inhumane and Cruel Treatment and Conditions While Wrongly Incarcerated at Rikers For a Crime He Did Not Commit

203.   The City and DOC deliberately abrogated their mandated responsibilities and obligations to Pearson under the Constitutions and laws of the United States and New York with deliberate indifference to his safety and well being.  The inhumane and cruel treatment and conditions that he was subjected to while confined at Rikers have existed for decades at Rikers and were well known to the City and DOC.

204.   While Pearson was confined at Rikers awaiting trial and subsequently to be retried for allegedly killing Burgess, the City and DOC violated his constitutional rights arising under the Fourth, Fifth, Sixth, Eighth, Eleventh and Fourteenth Amendments to the U.S. Constitution; violated his civil rights; and violated his constitutional rights arising under Article 1 §§ 1, 3, 5, 11 and 12 of the Constitution of the State of New York.

205.   On or about February 3, 2000, Pearson was remanded by the Bronx Supreme Court into DOC's care, custody and control, and he was thereafter incarcerated at Rikers from said date until June 18, 2003 ("First Incarceration"), during which time the City and DOC subjected him to inhumane and cruel treatment.

206.   As a direct and proximate result of ADA Scaccia, Detectives Tracy and Dodd, and/or

45

other employees of the NYPD and Bronx DA's Office falsely arresting, falsely charging, and maliciously prosecuting Pearson for allegedly killing Burgess, Pearson was subjected to inhumane and cruel treatment and conditions while incarcerated at Rikers during his First Incarceration.  But for said Defendants' unlawful conduct, Pearson would not have been confined at Rikers and subjected to inhumane and cruel treatment during said time.

207.   On or about July 23, 2020, Pearson was remanded by the Bronx Supreme Court into DOC's care, custody and control to await being purportedly retried for allegedly killing Burgess.  He was confined at Rikers from said date until September 8, 2022 ("Second Incarceration").  The City and DOC subjected him to inhumane and cruel treatment during said time.

208.   As a direct result of DA Clark, ADA Scaccia, DA Clark, Detective Dodd, Investigator Rivera and/or other employees of the NYPD and/or Bronx DA's Office falsely arresting, charging, and maliciously prosecuting Pearson for allegedly killing Burgess, he was subjected to inhumane and cruel treatment and conditions while incarcerated at Rikers during his Second Incarceration.  But for said Defendants' unlawful conduct, he would not have been confined at Rikers and subjected to inhumane and cruel treatment during said time.

209.   DA Clark, ADA Scaccia, Detectives Tracy and Dodd, Investigator Rivera and/or other employees of the City, NYPD and Bronx DA's Office intentionally and maliciously directed and/or caused the City and DOC, by and through DOC's correction officers and other employees, to subject Pearson to cruel and inhumane treatment and conditions while he was confined at Rikers.

210.   DA Clark, ADA Scaccia, Detectives Tracy and Dodd, Investigator Rivera and/or other employees of the City, NYPD and/or Bronx DA's Office intentionally and maliciously

engaged in actions to cause Pearson's incarceration at Rikers to be inhumane, cruel, dangerous, intolerable and unbearable, with the intent to cause him serious and significant physical, emotional and mental harm.

211.    DA Clark, ADA Scaccia, Detectives Tracy and Dodd, Investigator Rivera and/or other employees of the City, NYPD and/or Bronx DA's Office directed and caused DOC correction officers and/or other employees to purposefully misidentify and/or misclassify Pearson as "RED ID," i.e. a gang member, in order to place him in the most dangerous housing at Rikers with the intent to cause him serious harm, including being attacked, stabbed and/or killed while confined at Rikers.

212.    DOC correction officers and/or other employees deliberately misidentified and/or misclassified Pearson as "RED ID" as a result of ADA Scaccia, Detectives Tracy and Dodd, Investigator Rivera, former Commissioners Safir and O'Neill, Sergeant McInnis and/or other employees of the City, NYPD and Bronx DA's Office intentionally falsely stating that Pearson shot a cop and/or was a murderer.

213.    With respect to Pearson's Second Incarceration, the City and DOC intentionally and maliciously did not place him in appropriate housing.  DOC housed him with convicted murderers with the highest classification even though Pearson was a detainee with a low classification and was never written up by DOC correction officers or other employees.

214.    The DOC deliberately failed to protect Pearson from being attacked, harassed and threatened by its corrections officers and/or other employees.  During his incarcerations, he was assaulted by corrections officers, who also threatened to harm his family, thus causing him severe physical and emotional harm.  DOC correction officers intentionally did not protect him from or during said attacks, and also failed to protect him during attacks by inmates, including multiple stabbing incidents during his Second Incarceration.

47

215.   The City and DOC were aware that Pearson suffers from asthma and high blood pressure. They acted with deliberate indifference to his medical needs and medical conditions, and refused and/or failed to provide him his required medications for unsafe periods of time.

216.   DOC failed to provide Pearson with proper and adequate medical care and treatment for his medical conditions and/or the injuries he sustained from being assaulted by inmates and/or DOC correction officers and/or other employees.

217.   During his Second Incarceration, the City and DOC failed to timely provide Pearson with his commissary, which included his needed medications. His commissary was almost always delivered about two weeks late.

218.   During Pearson's Second Incarceration, the City and DOC denied and/or failed to provide him with mental health counseling services, which he repeatedly requested.

219.   The City and DOC were aware that Pearson should not be exposed to excessive heat and chemical agents. Yet, they intentionally, with actual malice to cause him harm, exposed him to excessive heat and chemical agents during his Second Incarceration.

220.   Pearson was marked in DOC's records as being "heat sensitive." Nevertheless, during his Second Incarceration, DOC housed him in the worst, improper and inappropriate housing area that had no air conditioning or ventilation. Said housing only had two fans.

221.   DOC correction officers engaged in intentional acts, with actual malice to cause Pearson harm, when they took him to Jacobi Medical Center ("Jacobi Hospital") by van during his Second Incarceration. Despite it being summertime and DOC officers knowing Pearson is "heat sensitive", they intentionally and maliciously kept the heat on in the van the entire time Pearson was detained therein. As a result, Pearson felt like he was going to die, was screaming and when he was examined at Jacobi Hospital, his vitals were off the charts in a bad way.

222. During his Second Incarceration, DOC correction officers and/or other employees indiscriminately sprayed Pearson with chemical agents, thereby aggravating his medical conditions, including asthma, and causing him to suffer breathing and/or vision problems. After he was sprayed with chemical agents, DOC correction officers and/or other employees forced Pearson to stay in the same clothes sprayed with chemical agents for an inordinate period of time, violated the health and safety protocols for using chemical agents by failing to take him to medical for evaluation after the spraying incidents, and/or failed to allow him time to decontaminate.

223. The indiscriminate spraying of chemical agents by DOC correction officers and/or other employees occurred because the City and DOC failed to adequately staff Rikers. DOC correction officers told inmates that the horrific conditions the inmates were suffering at Rikers were a direct result of DOC's failure to hire personnel and adequately staff Rikers.

224. During his Second Incarceration, DOC corrections officers held Pearson and other inmates on a DOC bus in front of Vernon C. Bain Correctional Center ("VCBC") for over six (6) hours and denied them food, water and use of a bathroom, thus forcing Pearson to urinate on the bus. The DOC correction officers holding Pearson on DOC buses or other vehicles for hours on end is a form of physical abuse compensable by the Prison Litigation Reform Act ("PLRA") Section 803.

225. On multiple occasions during his Second Incarceration, DOC knowingly placed Pearson into intake cells with no working toilets or sinks, thus intentionally subjecting him to inhumane and cruel conditions. DOC holding Pearson in overcrowded, dangerous and/or unsanitary intake cells is physical abuse compensable under PLRA § 803.

226. During his Second Incarceration, while being held at VCBC, the DOC gave Pearson very limited access to recreation, and when he was transferred to another jail at Rikers, the

49

DOC failed to provide him with any recreation time at all.

227.   During his Second Incarceration, DOC served Pearson food contaminated with a cooked mouse, causing him to become very ill.  The City and DOC denied him medical services.

228.   During his Second Incarceration, Pearson was so ill that DOC had to take him to Jacobi Hospital where he was hospitalized for about five (5) days.

229.   During Pearson's Second Incarceration, DOC correction officers strip searched him all the time and in a sexualized manner.  The unfettered, indiscriminate sexualized strip searches of Pearson are a form of physical abuse compensable by PLRA § 803(d).

230.   During Pearson's Second Incarceration, DOC denied him access to the law library so as to keep him ignorant of his rights under the law and deny him avenues to redress grievances and exhaustion of administrative remedy procedures in violation of the PLRA.

231.   During Pearson's Second Incarceration, the City and DOC violated his right to humane and safe treatment by failing to provide him with basic and essential items and services to ensure his physical health, mental health and well being, including, but not limited to:

- Failing to provide and/or providing inadequate Medical/Mental Health Services;
- Failing to provide and/or failing to provide him meaningful access to the Law Library;
- Failing to provide a copy of and/or access to the Book of Inmate Rights;
- Failing to provide and/or providing inadequate or limited counseling services;
- Failing to provide programs including educational services;
- Failing to provide and/or providing inadequate food and water, providing spoiled, rotten, and/or undercooked food, and/or failing to provide fruit;
- Allowing the gangs to determine which inmates get to eat and what food inmates are allowed to have;
- Allowing food to be served with foreign objects;
- Failing to provide recreation time;
- Providing improper mattresses, as the mattresses are specifically tagged not suitable to be placed upon a metal frame;

50

- Failing to provide masks, N-95 masks, or masks that inhibit the transmission of Covid-19;

- Failing to follow the Covid-19 social distancing protocols issued by the CDC, State of New York and the City of New York and/or failing to ensure that DOC employees wear masks at all times;

- Failing to provide anti-slip mats in the bathroom and/or failing to paint the bathroom floor with anti-slip paint;

- Failing to provide materials for personal hygiene;

- Failing to provide and/or provide adequate laundry services;

- Failing to provide clean cells, housing and/or dorms and failure to house him in areas free from pests, insects, bugs, bedbugs, lice, ants, roaches, mice, rats, rodents, etc, as said areas are infested with same;

- Failing to provide adequate phone privileges;

- Failing to isolate prisoners with communicable diseases, including, but not limited to, lice and scabies;

- Failing to provide clean water and safe showers and/or failing to ensure the water coming out of the showers is safe for use as same has caused rashes;

- Failing to provide clean bathroom facilities;

- Failing to provide visitation with family members (physical and virtual);

- Failing to provide mail services and/or adequate mail services;

- Keeping him in a perpetual state of quarantine;

- Retaliation by DOC Officers for the filing of a Notice of Claim, grievance, and/or placing a call to the 311;

- Failing to provide adequate access to commissary and/or providing expired items in commissary;

- Failing to provide linens to sleep, adequate blankets, and/or clean mattresses;

- Failing to provide hot water;

- Failing to clean the mattresses when one inmate leaves;

- Failing to keep the building warm during the winter months and/or cool during the hot months;

- Failing to provide barber shop services; and/or

- Illegally and surreptitiously collecting the inmates' DNA;

- Performing improper strip searches, which are being sexualize; and/or

51

- Allowing excessive spraying of chemical agents and excessive use of force by DOC's Correction Officers against the inmates incarcerated at Rikers.

233. The laws and Constitutions of the United States and New York do not allow the City and DOC to pick and choose which rights they would provide to Pearson while confined at Rikers. The Covid-19 pandemic did not relieve them of their duties to Pearson under the Constitutions and laws of the United States and New York.

234. The unlawful events and inhumane and cruel conditions at Rikers resulted directly from and were caused by the City's and DOC's knowing, intentional, reckless, negligent acts and/or failure to act, with deliberate indifference to a substantial risk of causing serious harm to Pearson, while acting in their governmental capacity as jailor of detainees and arrestees. Thus, they violated Pearson's constitutional and civil rights and caused him to suffer severe and permanent physical injuries and emotional and psychological harm.

### COUNT I - False Arrest and False Imprisonment
(42 U.S.C. § 1983 - Violation of the Fourth Amendment against
the City, NYPD, Clark, Scaccia, Dodd, Tracy and Rivera)

235. Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

236. Scaccia, Tracy, Dodd, Rivera and/or Doe Defendants violated Pearson's constitutional rights guaranteed under the Fourth Amendment to the U.S. Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

237. On or about February 3, 2000, Scaccia, Tracy, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm and with no probable cause, initiated and caused him to be falsely arrested, falsely charged, arraigned and falsely imprisoned for allegedly killing Burgess, a crime they knew he did not commit.

238.   On or about February 3, 2000, Pearson was falsely charged and arraigned for the aforesaid alleged offense, the Bronx Supreme Court remanded him into DOC's custody and control, and he was confined at Rikers on said date until he made bail on or about June 14, 2003 for a crime Scaccia, Tracy, Dodd and/or Doe Defendants all knew he did not commit.  Said Defendants intentionally, with actual malice to cause Pearson harm, caused him to be unjustifiably confined at Rikers for over three years during that time.

239.   As asserted herein, Pearson's arrest, arraignment, imprisonment, indictment and prosecution was based on the coerced perjured testimony of falsely alleged eye-witness Garcia that he saw Pearson kill Burgess.  Around January 2000, Scaccia, Tracy, Dodd and/or Doe Defendants deliberately, with actual malice to cause Pearson harm, fabricated Garcia's said false testimony in order to arrest, charge, arraign, indict, imprison and prosecute Pearson for allegedly killing Burgess in December 1997.

240.   While Pearson remained confined at Rikers, in January 2002, a jury trial was held in the Burgess Case and, on February 1, 2002, the jury voted 11-1 in favor to acquit him and the Court declared a mistrial.  With actual malice to cause Pearson harm, Saccia bribed the sole juror, who voted guilty to convict Pearson, with City Housing.  As a result of that hung jury, Pearson remained confined at Rikers until he made bail on June 14, 2003. During the 18 months between the mistrial and the time he was released from Rikers, Scaccia and the Bronx DA's Office did not state that case ready to retry him.

241.   In April 2009, Scaccia, Tracy, Dodd, Rivera and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, sought and obtained an arrest warrant for Pearson from the Court in Burgess Case for failure to appear on Court for said case, despite Scaccia and the Bronx DA's Office not stating the case ready for trial for over seven (7) years since the mistrial in the case on February 1, 2002 and despite the Court giving

53

Pearson permission not to personally appear in Court for that case until the Bronx DA's Office stated the case ready to retry him.

242.   At least in 2009, 2011 and 2012, Scaccia, Rivera, Tracy, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused him to be falsely profiled on AMW, aired on national television, as a fugitive murderer and cop shooter for the alleged purpose of having him arrested to be retried the Burgess Case.  However, Scaccia and the Bronx DA's Office had never stated that case ready for trial on any date that the AMW episode aired on television, or since 2009 when said AMW episode was first published on the internet, where it remains published.

243.   In March 2019, Scaccia, Clark, Rivera, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, initiated and caused him to be arrested, without probable cause which they knew, in Florida to purportedly be retried in the Burgess Case. During the 10 years between obtaining the arrest warrant in April 2009 and arresting him in March 2019, Scaccia and the Bronx DA's Office never stated the case ready for trial.

244.   On July 23, 2020, Scaccia, Clark, Rivera, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused him to be extradited to New York to purportedly be retried in the Burgess Case, and the Court remanded him into DOC's custody and control, at which time he was again confined at Rikers without probable cause, which all said Defendants knew.

245.   As of July 23, 2020, Clark, Scaccia and the Bronx DA's Office had not stated the Burgess Case ready for trial at any time after the Court declared a mistrial over 18 years earlier.

246.   For over two years, from July 23, 2020 through September 8, 2022, Pearson was confined at Rikers to await a purported retrial in the Burgess Case, during which time Scaccia,

Clark, Rivera, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, did nothing to bring him to trial and engaged in delay and prosecutorial inaction, causing him to languish in prison until the Court terminated the case in Pearson's favor on September 6, 2022. During Pearson's over two-year confinement at Rikers, Scaccia, Clark and the Bronx DA's Office never stated the case ready for trial, and violated discovery laws and Court Orders and directives in the Burgess Case.

247.   After Justice Fabrizio terminated the Burgess Case in Pearson's favor, Pearson was released from Rikers on September 8, 2022.

248.   Scaccia, Clark, Rivera, Tracy, Dodd and/or Doe Defendants, with actual malice to cause Pearson harm, intended to arrest, arraign and charge him and to confine him in prison for allegedly killing Burgess, a crime they knew he did not commit and for which they knew there was no probable cause.

249.   Pearson was conscious of his confinement at Rikers from on or about February 3, 2000 through June 14, 2003 and again from July 23, 2020 through September 8, 2022, and he did not consent to his confinement at Rikers during either of those said times.

250.   Pearson's confinement at Rikers was never privileged as there was no probable cause for his arrests for allegedly killing Burgess, and all aforementioned Defendants always knew the alleged facts upon which his arrests and imprisonments were based were in fact false.

251.   As alleged herein, Pearson's arrest, arraignment, incarceration, indictment and prosecution for allegedly killing Burgess was the product of deliberate fraud by Scaccia, Dodd, Tracy and/or Doe Defendants, who unlawfully fabricated, coerced and coached false testimony by Garcia to arrest, charge, imprison, indict and prosecute Pearson for a crime they knew he did commit. They also deliberately suppressed exculpatory evidence.

252.  Scaccia, Clark, Rivera, Dodd, Tracy and/or Doe Defendants acted under the color of law when they caused Pearson to be arrested, arraigned and charged in February 2000 and/or March 2019, extradited to New York in July 2020, imprisoned at Rikers from on or about February 3, 2000 through June 14, 2003 and from July 23, 2020 through September 8, 2022, and maliciously prosecuted for close to 23 years from February 2000 through September 2022. They were directly involved in violating his Fourth Amendment rights. It was not objectively reasonable for them to believe their unlawful actions were lawful.

253.  The City and NYPD are liable for the unlawful actions of Tracy, Dodd, Rivera and Doe Defendants employed by the NYPD, as all said NYPD employees engaged in their unlawful conduct alleged herein under the City/NYPD Policies.

254.  Pearson is entitled to compensation for his false arrest and false imprisonment from the City, NYPD, Clark, Scaccia, Tracy, Dodd, Rivera and Doe Defendants for their violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983, including punitive damages and damages for their intentional infliction of emotional distress due to their extreme and outrageous conduct alleged herein, causing severe and irreparable harm to his quality of life, reputation, personal and business relationships, and business opportunities.

255.  As alleged herein, the City, NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants intentionally, with actual malice to cause Pearson harm, interfered with his person and property and caused him to suffer, and to continue to suffer, severe and irreparable harm for which he is entitled to judgment against them for economic harm, compensatory damages, emotional distress, pain and suffering, punitive damages, reasonable attorney fees, costs and expenses incurred since February 2000 and to be

incurred in this action, interest, and such further and equitable relief as the Court may deem just and proper.

256.    Pearson seeks damages in excess of $100,000,000 for his false arrest and imprisonment, pursuant to 42 U.S.C. § 1983.

## COUNT II - False Arrest and False Imprisonment
(Violation of New York Law against the City,
NYPD, Clark, Scaccia, Dodd, Tracy and Rivera)

257.    Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

258.    Scaccia, Clark, Rivera, Dodd, Tracy and/or Doe Defendants, with actual malice to cause Pearson harm, intended to arrest, arraign and charge him, without probable cause which they all knew, in February 2000 and/or in March 2019 for allegedly killing Burgess, to extradite him to New York in July 2020 for that alleged offense, and/or to confine him in prison on or about February 3, 2000 through June 14, 2003 and/or July 23, 2020 through September 8, 2022 for that alleged offense.  All aforementioned Defendants initiated, caused and participated in said unlawful actions to prosecute Pearson for a crime they knew he did not commit and for which they knew there was no probable cause.

259.    Pearson was conscious of his confinement at Rikers from on or about February 3, 2000 through June 14, 2003 and July 23, 2020 through September 8, 2022 for allegedly killing Burgess, and he did not consent to his confinement at Rikers during those said times.

260.    Pearson's confinement at Rikers was never privileged as there was no probable cause for his arrests for allegedly killing Burgess, and all aforementioned Defendants always knew the alleged facts upon which his arrests and imprisonments were based were in fact false.

261.    As described herein, Pearson's arrest, arraignment, incarceration and indictment for allegedly killing Burgess was the product of deliberate fraud by Scaccia, Dodd, Tracy

and/or Doe Defendants, who unlawfully fabricated, coerced and coached Garcia's false testimony in order to arrest, charge, arraign, imprison, indict and prosecute Pearson for a crime they knew he did commit, and who deliberately suppressed exculpatory evidence.

262. Scaccia, Clark, Rivera, Dodd, Tracy and/or Doe Defendants acted under the color of law when they caused Pearson to be arrested, arraigned and charged in February 2000 and/or March 2019, extradited to New York in July 2020, and/or imprisoned at Rikers from on or about February 3, 2000 through June 14, 2003 and/or from July 23, 2020 through September 8, 2022. They were directly involved in falsely arresting and imprisoning Pearson in violation of his rights under the Constitution and laws of New York. It was not objectively reasonable for them to believe that their unlawful actions were lawful.

263. The City and NYPD liable for the unlawful actions of Tracy, Dodd, Rivera and Doe Defendants employed by the NYPD asserted herein, as said NYPD employees engaged in their unlawful conduct under the City/NYPD Policies.

264. Pearson is entitled to compensation for his false arrest and false imprisonment from the City, NYPD, Clark, Scaccia, Tracy, Dodd, Rivera and Doe Defendants for their violation of his rights under the Constitution and laws of New York, including punitive damages and damages for their intentional infliction of emotional distress due to their extreme and outrageous conduct alleged herein, causing severe and irreparable harm to his quality of life, reputation, personal and business relationships, and business opportunities.

265. As alleged herein, the City, NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants intentionally, with actual malice to cause Pearson harm, interfered with his person and property and caused him to suffer, and to continue to suffer, severe and irreparable harm for which he is entitled to judgment against them for economic harm, compensatory damages, emotional distress, pain and suffering, punitive damages,

reasonable attorney fees, costs and expenses incurred since February 2000 and to be incurred in this action, interest, and such further and equitable relief as the Court may deem just and proper.

266. Pearson seeks damages in excess of $100,000,000 for his false arrest and imprisonment, pursuant to the Constitution and laws of New York.

### COUNT III - Malicious Prosecution
(42 U.S.C. § 1983 - Violation of the Fourth Amendment against
the City, NYPD, Clark, Scaccia, Dodd, Tracy and Rivera)

267. Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

268. On or about February 3, 2000, Scaccia, Tracy, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm and without probable cause which they knew, initiated and caused Pearson to be falsely arrested, arraigned, charged and imprisoned for allegedly killing Burgess, a crime they all knew he did not commit. Said Defendants' aforesaid unlawful overt acts against Pearson were based on the fabricated, coerced and coached perjured testimony by alleged eye-witness Garcia, which they had fabricated and manufactured in and around January 2000.

269. On or about February 3, 2000, the Bronx Supreme Court arraigned and remanded Pearson into DOC's custody and control, and he was confined at Rikers on said date until he made bail on or about June 14, 2003 for a crime Scaccia, Tracy, Dodd and/or Doe Defendants knew he did not commit.  Said Defendants intentionally, with actual malice to cause Pearson harm, caused him to be falsely imprisoned and unjustifiably confined at Rikers for over three years during that said period of time.

270. As alleged herein, Pearson's false arrest, imprisonment, indictment and prosecution for allegedly killing Burgess was based upon Garcia's coerced perjured testimony, which

Scaccia, Tracy, Dodd and/or Doe Defendants deliberately, with actual malice to cause Pearson harm, fabricated to arrest, charge, indict, imprison and prosecute him therefor.

271.   On or about February 7, 2000, Scaccia, Tracy, Dodd, and/or Doe Defendants, by and through Scaccia, intentionally, with actual malice to cause Pearson harm, presented Garcia's coerced and coached perjured testimony to the grand jury in order to obtain an indictment against Pearson for Burgess' murder.  Said Defendants also concealed from the grand jury the true facts and exculpatory evidence with respect to that said offense.

272.   The aforesaid intentional malicious overt acts to cause Pearson harm were the product of deliberate fraud, perjury, suppression of exculpatory evidence and bad faith conduct by the aforesaid Defendants, who directly caused the grand jury to wrongfully indict him on or about March 3, 2000 for Burgess' murder.  The true bill unlawfully procured removed any presumption of probable cause arising from the grand jury's indictment of Pearson.

273.   After obtaining the tainted true bill, Scaccia, Tracy, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, initiated and caused a criminal complaint to be filed in Bronx Supreme Court against him for allegedly killing Burgess, a crime they knew he did not commit and for which they fabricated evidence.

274.   At trial in the Burgess Case in January 2002, Scaccia deliberately, with actual malice to cause Pearson harm, called Garcia as a witness to give fabricated coerced and coached perjured testimony to the jury, which he did, in order to obtain a guilty verdict.  Scaccia and/or other employees from the Bronx DA's Office also deliberately, with actual malice to cause Pearson harm, granted immunity to another witness for a murder he committed in exchange for said witness testifying against Pearson at the Burgess trial.

275.   During trial in the Burgess Case in January 2002, Scaccia intentionally, with actual malice to cause Pearson harm, bribed a juror by giving said juror City Housing vouchers

to secure a guilty vote against Pearson with the malicious intent to keep Pearson wrongfully confined for a crime he did not commit: to obtain a hung jury to continue the malicious prosecution of Pearson as a full acquittal would have foreclosed Clark, Scaccia, Tracy, Dodd, Rivera and/or Doe Defendants from thereafter continuing their malicious prosecution of Pearson.

276. During trial in the Burgess Case in January 2002, the Court admonished Scaccia for mouthing answers to witnesses while they testified on the stand. Her conduct evidences actual malice with intent to cause Pearson harm; it shows witnesses were telling the fabricated story of Scaccia, Tracy, Dodd and/or Doe Defendants and not the truth.

277. On February 1, 2002, the jury in the Burgess Case voted 11-1 verdict to acquit Pearson and the Court declared a mistrial. The juror bribed by Scaccia was the only juror who voted to convict. Saccia's said bribery violated Pearson's rights to a fair trial, as she was only able to obtain one vote to convict by securing City Housing for the holdout juror.

278. As a result of the hung jury in the Burgess Case on February 1, 2002, Pearson remained confined at Rikers until he made bail on June 14, 2003. During the 18 months between the mistrial and the time Pearson was released from Rikers in June 2003, Scaccia and the Bronx DA's Office did not state that case ready to retry Pearson.

279. When the Burgess trial ended in an 11-1 jury verdict to acquit, Scaccia, Tracy, Dodd, and/or Doe Defendants quickly and intentionally, with actual malice to cause Pearson harm, falsely arrested, charged, indicted and prosecuted him for allegedly killing Gonzalez, a crime they knew he did not commit. Said Defendants had no probable cause that Pearson committed that crime, which they knew, but prosecuted him on those false charges anyway. After two trials, Pearson was acquitted for said offense around May 2003.

280. Scaccia, Tracy, Dodd, and/or Doe Defendants upset with the 11-1 jury verdict to acquit Pearson in the Burgess Case and his acquittal in the Gonzalez Case, intentionally, with actual malice to cause him harm, kept him under the Burgess indictment for over 20 years after the mistrial in the Burgess Case. Clark, Scaccia and the Bronx DA's Office never stated ready for trial to retry Pearson for that alleged offense during those over 20 years.

281. In April 2009, Scaccia, Tracy, Dodd, Rivera and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, sought and obtained an arrest warrant from the Court for Pearson's alleged failure to appear in the Burgess Case, despite Scaccia and the Bronx DA's Office not stating the case ready for trial for over seven (7) years since the mistrial in February 2002 and despite the Court giving Pearson permission not to appear in Court until the Bronx DA's Office stated that case ready to retry him.

282. From the date Pearson was released from Rikers on June 14, 2003 through September 6, 2022 (date the Court terminated the Burgess Case in Pearson's favor), Clark, Scaccia and the Bronx DA's Office never once stated that case ready to retry Pearson.

283. In 2009, 2011 and 2012, although Pearson had Court permission in the Burgess Case not to appear in Court until the Bronx DA's Office stated ready for trial, which they had not done, Scaccia, Rivera, Tracy, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused him to be falsely called a fugitive murderer and cop shooter on AMW aired nationwide. Their false statements were overt acts in furtherance of their continued malicious prosecution of Pearson in the Burgess case.

284. On or about March 15, 2019, Scaccia, Clark, Rivera, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, knowingly caused him to be arrested, without probable cause, in Florida to purportedly be retried in the Burgess Case, which the evidence shows they never intended to do. During the 10 years between the

overt malicious acts of obtaining the arrest warrant in April 2009 and arresting Pearson in March 2019, Clark, Scaccia and Bronx DA's Office never stated that case ready for trial.

285.   Former NYPD Commissioner O'Neill's tweet in March 2019 praising NYPD officers for arresting Pearson and falsely calling him a "Cop Killer" was an intentional overt act with actual malice to cause Pearson harm in furtherance of their malicious prosecution of Pearson in the Burgess Case by Clark, Scaccia, Rivera, Dodd and/or Doe Defendants.

286.   As alleged herein, Scaccia, Clark, Rivera, Tracy, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, engaged in overt acts in their continued malicious prosecution of Pearson for allegedly killing Burgess for close to 23 years after he was first falsely charged, i.e. from on or about February 3, 2000 (date he was falsely charged, arraigned and imprisoned at Rikers) until September 6, 2022 (date the Court terminated the criminal case in Pearson's favor).

287.   After Clark, Scaccia, Dodd, Rivera, and/or Doe Defendants caused Pearson to be falsely arrested in Florida in March 2019 to be purportedly retried in the Burgess Case, they intentionally, with actual malice to cause Pearson harm, caused him not to be extradited to New York at that time for the malicious purpose to continue their prosecution of him in the Burgess Case, i.e. to delay and engage in prosecutorial inaction to keep that case ongoing and the threat of prosecution hanging over Pearson while never intending to retry him for a crime they knew he did not commit.  Scaccia, Tracy, Dodd and/or Doe Defendants unsuccessfully tried to frame and have Pearson convicted of said offense over 17 years earlier, and Clark, Scaccia, Dodd, Rivera and/or Doe Defendants continued the proceedings in that case with malice to cause him to continue to suffer irreparable harm.

288.   Around March 2019, in their continued malicious prosecution of Pearson in the Burgess Case, Clark, Scaccia, Tracy, Rivera and/or Doe Defendants intentionally, with actual

intent to cause Pearson harm, caused him to be extradited to Louisiana for lesser marijuana related charges, instead of retrying him in New York for the more serious crime of murder.  Said Defendants did so to keep the Burgess case ongoing and the threat of prosecution hanging over Pearson while they never intended to retry him.

289.   The intentional malicious delay to keep the proceedings in the Burgess Case ongoing by Clark, Scaccia, Rivera, Dodd and/or Doe Defendants was knowingly undertaken in bad faith, with actual malice to cause Pearson harm, and without probable cause to believe they would be successful in prosecuting him a second time for allegedly killing Burgess. They knew they never had probable cause that he committed said offense by the very fact that Scaccia, Tracy, Dodd and/or Doe Defendants deliberately, with actual malice to cause Pearson harm, fabricated Garcia's false testimony in order to arrest, charge, indict and prosecute him in hopes to have him convicted over 17 years earlier, which they failed to do.  Scaccia, Clark, Dodd, Rivera and/or Doe Defendants could never have proved he committed said crime, which they knew, for the simple reason that **he did not do it**.

290.   Pearson is an innocent man who was maliciously prosecuted by all aforementioned Defendants for almost 23 years in the Burgess Case, as evidenced by the intentional misconduct alleged herein by Scaccia, Clark, Tracy, Dodd, Rivera and/or Doe Defendants in keeping the prosecution of the Burgess Case open while they did nothing at all to retry him for over 20 years since the mistrial in February 2002.

291.   On July 23, 2020, Scaccia, Clark, Rivera, Dodd and/or Doe Defendants caused Pearson to be extradited to New York to purportedly be retried in the Burgess Case, and the Court remanded him into DOC's custody and control, at which time he was again imprisoned at Rikers for allegedly killing Burgess.  He was confined at Rikers for over two years until

September 8, 2022, at which time he was released after Justice Fabrizio terminated the case in Pearson's favor on September 6, 2022.

292.  Pearson was not extradited to New York until July 23, 2020, over sixteen 16 months after Scaccia, Clark, Rivera, Dodd and/or Doe Defendants caused him to be arrested in March 2019.  As of July 23, 2020, the Bronx DA's Office, Clark and Scaccia had still not stated the Burgess Case ready for trial since the mistrial over 18 years earlier in February 2002.

293.  In his July 8, 2022 Decision and Order, Justice Fabrizio stated that "[w]hat the Court learned from a review of the files was nothing short of astonishing" with respect to the People's delay, prosecutorial inaction and conduct in the Burgess Case.  (**Ex. 3** at 2).

294.  The reasons for Justice Fabrizio's termination of the Burgess Case in Pearson's favor, i.e. the "astonishing" actions by the People, including their delay, prosecutorial inaction and violations of discovery laws and the Court's Orders and directives, are set forth in his June 10, 2022 Decision (**Exhibit 8**) and July 8, 2022 Decision and Order (**Exhibit 3**). Justice Fabrizio's decisions set forth intentional overt acts, with actual malice to cause Pearson harm, by Scaccia, Clark, Rivera, Dodd and/or Doe Defendants in continuing prosecution of Pearson in the Burgess Case.

295.  For over two years, from July 23, 2020 (date Pearson was incarcerated at Rikers after his extradition to New York) until September 8, 2022 (date he was released from Rikers), Clark, Scaccia, NYPD and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused him to languish in prison while they did nothing at all to bring their alleged case against him to trial, thus taking away Pearson's liberty and freedom while he rotted away in prison subjected to inhumane and cruel conditions and treatment at Rikers.

296.  The intentional delay and prosecutorial inaction by Clark, Scaccia, Dodd, Rivera and/or Doe Defendants in order to continue their malicious prosecution of Pearson without

probable cause to be successful was extreme and outrageous.  In fact, for over 20 years since the Court declared a mistrial in the Burgess Case in February 2002 through the date Justice Fabrizio dismissed that case on September 6, 2022, Clark, Scaccia and Bronx DA's Office failed to state the case ready to be retried as they knew there was no probable cause that Pearson committed the offense as falsely charged almost 23 years earlier.

297.    In his July 2022 Decision and Order, Justice Fabrizio gave the People until September 5, 2022 to state the Burgess Case ready for trial.  The People, including Clark and Scaccia, failed to file a "c of c" and statement of trial readiness on or before September 5, 2022.

298.    Justice Fabrizio terminated the Burgess Case in Pearson's favor on September 6, 2022.

299.    Clark and Scaccia did not even appear at the September 6, 2022 Court hearing, and they at no time sought to dismiss the false charges filed against Pearson over 22 years earlier, thus leaving the Burgess indictment to hang over Pearson for over 20 years since the Court declared a mistrial in the Burgess Case on February 1, 2002.

300.    Pearson was released from Rikers on September 8, 2022.

301.    Clark, Scaccia, Dodd, Tracy, Rivera and/or Doe Defendants, intentionally with actual malice to cause Pearson harm and with deliberate indifference for his rights under the laws and Constitutions of the United States and New York, maliciously continued the proceedings in the Burgess Case while doing absolutely nothing at all for over 20 years since the mistrial in February 2000, other than to intentionally, with actual malice to cause Pearson harm, obtain an arrest warrant in April 2009 when they had not even stated the Burgess Case ready for trial, and have Pearson falsely profiled on AMW multiple times in 2009, 2011, and 2012 as a fugitive murderer and cop shooter, with the intent to cause Pearson harm, humiliate him nationwide and ruin his life and reputation.

302.   The Bronx DA's Office via Clark, Scaccia, Dodd, Rivera and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused him to be extradited to New York for prosecution in the Burgess Case while all the time knowing they would not produce, could not find and/or could not and would not recreate their "alleged" files for said case and did not intend to retry Pearson.

303.   Scaccia, Clark, Rivera, Dodd, Tracy and/or Doe Defendants acted under the color of law when they each intentionally acted, with actual malice to cause Pearson harm, including, but not limited to, causing him to be arrested and charged in February 2000, indicted in March 2000, arrested in March 2019, extradited to Louisiana in March 2019, extradited to New York on July 23, 2020, imprisoned at Rikers from on or about February 3, 2000 to June 14, 2003 and from July 23, 2020 to September 8, 2022, and maliciously prosecuted for almost 23 years from February 2000 through September 2022.

304.   All aforementioned Defendants participated in and were directly involved in violating Pearson's Fourth Amendment rights, and it was not objectively reasonable for any of them to believe their aforesaid unlawful actions were lawful.

305.   The sheer length of time of keeping Pearson under indictment in the Burgess Case for over 20 years since the 11-1 verdict to acquit February 2002, shows the aforementioned Defendants' malicious intent to cause him harm by their continued prosecution thereof.

306.   For over 20 years, Scaccia, Clark, Rivera, Dodd, Tracy and/or Doe Defendants kept Pearson under the Burgess indictment so as to prevent him from suing any of them under 42 U.S.C. § 1983 for depriving him of his Fourth Amendment rights and/or his rights under the Constitution and laws of the State of New York.

307.   As set forth herein, City employee Ms. Rivera assigned to the Bronx DA's Office blew the whistle regarding the Bronx DA's Office policies, customs and practices and

Scaccia's practices of dilatory prosecution to hurt African-Americans.  Ms. Rivera's statements are declarations against interest to Clark and Scaccia.

308.   The City and NYPD are liable for the unlawful actions asserted herein by Tracy, Dodd, Rivera and all Doe Defendant NYPD employees, as all said NYPD employees engaged in their alleged unlawful conduct under the City/NYPD Policies.

309.   Pearson is entitled to compensation for the continued malicious prosecution he endured for close to 23 years as a result of the overt intentional acts, with actual malice to cause him harm, by the City, NYPD, Clark, Scaccia, Tracy, Dodd, Rivera and Doe Defendants in violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983, including punitive damages and damages for their intentional infliction of emotional distress due to their egregious, extreme and outrageous conduct, causing severe irreparable harm to his quality of life, reputation, personal and business relationships and opportunities.

310.   As alleged herein, the City, NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants intentionally, with actual malice to cause Pearson harm, interfered with his person and property and caused him to suffer, and to continue to suffer, severe and irreparable harm for which he is entitled to judgment against them for economic harm, compensatory damages, emotional distress, pain and suffering, punitive damages, reasonable attorney fees, costs and expenses incurred since February 2000 and to be incurred in this action, interest, and such further and equitable relief as the Court may deem just and proper.

311.   Pearson seeks damages in excess of $100,000,000 for Defendants' malicious prosecution for almost 23 years, pursuant to 42 U.S.C. § 1983.

**COUNT IV - Malicious Prosecution**
(Violation of New York Law against the City,
NYPD, Clark, Scaccia, Dodd, Tracy and Rivera)

312.    Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

313.    As asserted herein, Scaccia, Dodd, Tracy and/or Doe Defendants, acting under the color of law, intentionally, with actual malice to cause Pearson harm, engaged in unlawful acts in violation of his rights under the Constitution and laws of New York in their malicious prosecution of him in the Burgess Case, including, but not limited to: (a) around January 2000, fabricating and manufacturing Garcia's false coerced and coached testimony that he saw Pearson kill Burgess, and securing Garcia's said false testimony by causing him physical harm and threatening to criminally prosecute him for a crime they knew he did not commit; (b) falsely arresting, arraigning and charging Pearson on or about February 3, 2000 for allegedly killing Burgess, without probable cause which they knew, based on Garcia's coerced perjured testimony, which they knew to be false and fabricated; (c) causing Pearson to be falsely imprisoned at Rikers from on or about February 3, 2000 through June 14, 2003 based on charges without probable cause, which they knew to be false as they fabricated same, and further causing him to be subjected to inhumane and cruel conditions and treatment while confined at Rikers due to their said known false charges; (d) presenting Garcia's coerced false testimony to the grand jury in order to obtain a indictment and failing to present exculpatory evidence to the grand jury; (e) knowingly obtaining a wrongful indictment from the grand jury on March 3, 2000 based on Garcia's false coerced and coached perjured testimony and the suppression of exculpatory evidence; (f) filing a criminal proceeding against Pearson in Bronx Supreme Court after wrongfully securing the indictment based on Garcia's false testimony and the suppression of exculpatory evidence; and (g) maliciously prosecuting Pearson before and throughout the January 2002 trial in the Burgess Case by, inter alia, Scaccia presenting

69

Garcia's said coerced false testimony to the jury, Scaccia mouthing answers to witnesses testifying at trial, and Scaccia bribing a juror to secure a guilty verdict and hung jury.

314.   As shown herein, Scaccia, Clark, Dodd, Tracy, Rivera and/or Doe Defendants, acting under the color of law, intentionally, with actual malice to cause Pearson harm, engaged in unlawful acts in violation of his rights under the Constitution and laws of New York in their continued malicious prosecution of him for over 20 years after the mistrial in the Burgess Case in February 2002, during which 20 year period, Scaccia, Clark and the Bronx DA's Office never stated the case ready to retry him, including, but not limited to: (a) obtaining an arrest warrant in April 2009 in the Burgess Case despite not stating the case ready for trial and Pearson having Court permission not to appear in Court until the Bronx DA's Office stated ready for trial; (b) causing Pearson to be falsely profiled on AMW as a fugitive murderer, who shot a cop and killed multiple persons; (c) causing Pearson to be arrested in March 2019, without probable cause, to be purportedly retried in the Burgess Case, but then causing him to be extradited to Louisiana in March 2019 for a the lesser charge to keep that case open and hanging over him while they never intended to retry him; and (d) causing Pearson to be extradited to New York in July 2020 to be purportedly retried in the Burgess Case, without probable cause, and to again be confined at Rikers for over two years from July 2020 until September 8, 2022, during which time they intentionally, with actual malice to cause him harm, took away his freedom and liberty and left him to languish in prison while they did absolutely nothing to bring the case to trial in violation of the discovery laws and the Orders and directives of the Court.

315.   As alleged herein, all aforementioned Defendants lacked probable cause to arrest, imprison, indict, charge and maliciously prosecute Pearson in the Burgess Case for close

to 23 years, i.e. from on or about February 3, 2000 through September 6, 2022 when Justice Fabrizio terminated the Burgess Case in Pearson's favor.

316. As alleged herein, all aforementioned Defendants intentionally, with actual malice to cause Pearson harm, initiated and/or continued the criminal proceeding against him in the Burgess Case for close to 23 years, i.e. from or about February 3, 2000 until September 6, 2022 when Justice Fabrizio terminated the Burgess Case in Pearson's favor.

317. Justice Fabrizio terminated the Burgess Case in Pearson's favor on September 6, 2022.

318. All aforementioned Defendants participated in and were directly involved in violating Pearson's rights under the Constitution and laws of New York, and it was not objectively reasonable for any of them to believe that their aforesaid unlawful actions were lawful.

319. The City and NYPD are liable for the unlawful actions asserted herein by Tracy, Dodd, Rivera and all Doe Defendant NYPD employees, as they engaged in their unlawful conduct under the City/NYPD Policies.

320. Pearson is entitled to compensation for the continued malicious prosecution he endured for close to 23 years as a result of the overt intentional acts, with actual malice to cause him harm, by the City, NYPD, Clark, Scaccia, Tracy, Dodd, Rivera and Doe Defendants in violation of rights under the Constitution and laws of New York, including punitive damages and damages for their intentional infliction of emotional distress due to their egregious, extreme and outrageous conduct, causing severe irreparable harm to his quality of life, reputation, personal and business relationships and opportunities.

321. As alleged herein, the City, NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants intentionally, with actual malice to cause Pearson harm, interfered with his person and property and caused him to suffer, and to continue to suffer, severe and irreparable harm for which he is entitled to judgment against them for economic harm,

71

compensatory damages, emotional distress, pain and suffering, punitive damages, reasonable attorney fees, costs and expenses incurred since February 2000 and to be incurred in this action, interest, and such further and equitable relief as the Court may deem just and proper.

322.   Pearson seeks damages in excess of $100,000,000 for Defendants' malicious prosecution for almost 23 years, pursuant to the Constitution and laws of New York.

**COUNT V - Civil Conspiracy**
(42 U.S.C. § 1985(3) against the City, NYPD,
Clark, Scaccia, Dodd, Tracy and Rivera)

323.   Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

324.   As asserted herein, around January 2000, Scaccia, Dodd, Tracy and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, conspired and reached an agreement to act in concert to unlawfully deprive him of his Fourth Amendment rights, causing him to suffer, and to continue to suffer, physical, emotional and economic harm and irreparable harm to his person, property, life and reputation, wherein with actual malice to cause Pearson harm, they intentionally agreed to their illicit Conspiracy Plan, alleged herein, to falsely arrest, falsely charge, wrongfully obtain an indictment, falsely imprison, and maliciously prosecute him for allegedly killing Burgess, a crime they all knew he did not commit and for which there was no probable cause.

325.   As alleged herein, Scaccia, Dodd, Tracy and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, engaged and carried out overt acts in furtherance of their Conspiracy Plan, and made and/or caused to made false public defamatory statements about him in furtherance of their plan and to cause him severe hardship and to prejudice the public against him, including falsely branding him a murderer, cop killer and person

72

who shot a cop, and further to cause him to be attacked, as alleged herein, by falsely

branding him a murderer, cop killer and person who shot a cop.

326.   As alleged herein, Scaccia, Dodd, Tracy and/or Doe Defendants intentionally, with actual

malice to cause Pearson harm, were directly involved and participated in overt acts in

furtherance of their Conspiracy Plan and Pearson's arrest, arraignment and indictment

were the product of fraud and bad faith by said Defendants, who unlawfully fabricated,

coerced and coached false testimony by Garcia in order to falsely arrest, arraign, charge,

imprison, indict and prosecute Pearson for a crime they knew he did do and for which

they knew there was no probable cause. They also deliberately suppressed exculpatory

evidence for the offense they fabricated against Pearson.

327.   As alleged herein, Scaccia, Dodd, Tracy and/or Doe Defendants conspired to continue

their Conspiracy Plan after they failed to have Pearson convicted by a jury in the Burgess

Case in February 2002.  Intentionally, with actual malice to cause Pearson harm, they

conspired to falsely arrest, charge, indict, incarcerate and maliciously prosecute him for

allegedly killing Gonzalez, a crime they knew he did not commit and for which they had

no probable cause.  However, their plan failed.  The jury acquitted Pearson of that charge

around May 2003, and he was then released from Rikers on June 14, 2003 after his bail

was reduced and Scaccia and the Bronx DA's Office had still failed to state the Burgess

Case ready to retry Pearson.  Pearson then relocated to Florida with the knowledge and

permission of the Court, and he was not required to return to New York to be retried in

the Burgess Case unless and until Scaccia and the Bronx DA's Office stated that case

ready for trial.

328.   From the date Pearson was released from Rikers on June 14, 2003 through September 6,

2022 (the date the Court terminated the Burgess Case in Pearson's favor), Clark, Scaccia

and the Bronx DA's Office never stated that case ready to retry him after there was a hung jury in February 2002 due to Scaccia deliberately bribing the sole holdout juror with City Housing, i.e. the jury voted 11-1 to acquit Pearson on February 1, 2002.

329.    But yet, over nine years after the mistrial in February 2002 and despite Scaccia and the Bronx DA's Office not stating ready to retry Pearson, in April 2009, Scaccia, Dodd, Tracy, Rivera and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused the Court to issue a warrant for his arrest for failure to appear in Court. Their vindictive overt acts show actual malice in furtherance of their Conspiracy Plan to continue their malicious prosecution of Pearson.

330.    Then, in 2009, 2011 and 2012, although Pearson had permission of the Court in the Burgess Case to leave New York and not to return until the Bronx DA's Office was ready to retry him and despite them not doing so, Scaccia, Dodd, Tracy, Rivera and/or Doe Defendants nevertheless intentionally, with actual malice to cause Pearson harm, caused him to be falsely called a fugitive murderer and cop shooter on AMW aired on television, which also was and remains published on the internet. Their vindictive overt acts show actual malice in furtherance of their Conspiracy Plan.

331.    On or about March 15, 2019, Scaccia, Clark, Dodd, Rivera and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused him to be arrested in Florida to be purportedly retried in the Burgess Case, without probable cause and despite not stating the case ready to be retried. However, despite having Pearson arrested, they intentionally caused him **not** to be extradited to New York, and instead to be extradited to Louisiana for a lesser charge. They did so in order to keep the Burgess case open and the threat of prosecution under the Burgess indictment to hang over Pearson while they never intended to retry him for a crime they knew he did not commit and for which they knew

there was no probable cause.  These unlawful overt acts show actual malice with intent to harm Pearson in furtherance of Defendants' illicit Conspiracy Plan.

332.   In March 2019, former NYPD Commissioner O'Neill sent out a tweet stating NYPD officers apprehended Pearson and falsely made the defamatory statements "Cop Killer Caught" and that Pearson killed Officer Ling.  Pearson did not shoot Ling, there was no evidence he did so and Ling was not dead.  This vindictive tweet shows actual malice and an overt act in furtherance of said Defendants' illicit Conspiracy Plan.

333.   On July 23, 2020, over 16 months after said Defendants caused him to be arrested in Florida, Scaccia, Clark, Rivera, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused him to be extradited to New York to purportedly be retried in the Burgess Case, without probable cause.  Judge Fabrizio directed the Bronx DA's Office to produce the Governor's warrant and extradition paperwork, but they refused and failed to do so.

334.   On July 23, 2020, the Court remanded Pearson into DOC's custody and control, at which time he was falsely imprisoned for allegedly killing Burgess.  As of that date, Clark, Scaccia and the Bronx DA's Office had not stated the case ready for trial at any time after the mistrial over 18 years earlier.

335.   For over two years, from July 23, 2020 (date Pearson was incarcerated at Rikers after his extradition to New York) until September 8, 2022 (date he was released from Rikers after Justice Fabrizio terminated the Burgess Case), Clark, Scaccia, Dodd, Rivera and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused him to languish in prison while they did nothing to bring their alleged case to trial, thus taking away his liberty and freedom while he rotted away in prison subjected to inhumane conditions and treatment at Rikers.  During said two years, Clark, Scaccia and the Bronx

DA's Office never stated the case ready for trial and violated discovery laws and Orders and directives of the Court and Clark, Saccia and the NYPD never looked for or recreated their alleged files as Scaccia told the Court they would do.  The aforesaid overt acts show actual malice in furtherance of all aforementioned Defendants' illicit Conspiracy Plan.

336.  In his July 8, 2022 Decision and Order, Justice Fabrizio stated that "[w]hat the Court learned from a review of the files was nothing short of astonishing" with respect to the People's delay, prosecutorial inaction and conduct in the Burgess Case.  (Ex. C at 2).

337.  The reasons for Justice Fabrizio's termination of the Burgess Case in Pearson's favor, i.e. the "astonishing" actions by the Bronx DA's Office, including their delay, prosecutorial inaction and violations of the discovery laws and the Court's Orders and directives, are set forth in his June 10, 2022 Decision (**Exhibit 8**) and July 8, 2022 Decision and Order (**Exhibit 3**).  Justice Fabrizio's said decisions clearly show said Defendants' intentional overt acts and continued malicious prosecution of Pearson in the Burgess Case.

338.  The intentional delay and prosecutorial inaction by Clark, Scaccia, Tracy, Dodd, Rivera and/or Doe Defendants in order to continue their malicious prosecution of Pearson without probable cause to be successful was egregious, extreme and outrageous.  In fact, for over 20 years since the Court declared a mistrial in the Burgess Case in February 2002 through the date Justice Fabrizio dismissed that case on September 6, 2022, Scaccia and Clark failed to state the case ready to be retried as they knew there was no probable cause that Pearson committed the offense as falsely charged almost 23 years earlier.

339.  In his July 2022 Decision and Order, Justice Fabrizio gave the People until September 5, 2022 to state the Burgess Case ready for trial.  The People, including Clark and Scaccia, failed to file a "c of c" and statement of trial readiness on or before September 5, 2022.

340.  Justice Fabrizio terminated the Burgess Case in Pearson's favor on September 6, 2022.

341.   Clark and Scaccia did not even appear at the September 6, 2022 Court hearing, and they at no time sought to dismiss the false charges filed against Pearson over 22 years earlier.

342.   Clark, Scaccia, Tracy, Dodd, Rivera and/or Doe Defendants intentionally, with actual malice to cause Pearson harm and with deliberate indifference for his rights under the laws and Constitutions of the United States and New York, maliciously continued the proceedings in the Burgess Case while doing absolutely nothing at all for over 20 years since the mistrial in February 2002, other than to intentionally, with actual malice to cause Pearson harm, obtain an arrest warrant in April 2009 and have Pearson falsely profiled on AMW multiple times as a fugitive murderer and cop shooter, with the intent to cause him harm, humiliate him nationwide and ruin his life and reputation.

343.   Scaccia, Clark, Rivera, Dodd, Tracy and/or Doe Defendants acted under the color of law when they engaged in the intentional malicious overt acts shown herein in furtherance of their Conspiracy Plan, and they participated in and were directly involved in violating Pearson's rights under the Constitutions and laws of the United States and New York.

344.   The City and NYPD liable for the unlawful overt acts of Tracy, Dodd, Rivera and all NYPD Doe Defendants asserted herein, as said NYPD employees engaged in their unlawful acts under the City/NYPD Policies.

345.   Pursuant to 42 U.S.C. § 1985(3), Pearson is entitled to compensation for the conspiracy to participate in, cause and carry out intentional overt acts, with actual malice to cause him harm, between and among, the City, NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants, in furtherance of their Conspiracy Plan in violation of Pearson's Fourth Amendment rights, including punitive damages and damages for the intentional infliction of emotional distress due to their extreme and outrageous conduct, causing severe and

irreparable harm to his quality of life, reputation, and personal and business relationships and opportunities.

346.  As alleged herein, intentionally, with actual malice to cause Pearson harm, the City, NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants interfered with his person and property and caused him to suffer, and to continue to suffer, severe and irreparable harm for which he is entitled to judgment against them for economic harm, compensatory damages, emotional distress, pain and suffering, punitive damages, reasonable attorney fees, costs and expenses incurred since February 2000 and to be incurred in this action, interest, and such further and equitable relief as the Court may deem just and proper.

347.  Pearson seeks damages in excess of $100,000,000 for Defendants' alleged conspiracy to violate his Fourth Amendment rights, pursuant to 42 U.S.C. § 1985(3).

## COUNT VI - Civil Conspiracy
(Violation of New York Law against the City,
NYPD, Clark, Scaccia, Dodd, Tracy and Rivera)

348.  Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

349.  As alleged herein, around January 2000, Scaccia, Dodd, Tracy, and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, conspired and reached an agreement to act in concert to unlawfully deprive him of his rights under the Constitution and laws of New York, causing him to suffer, and to continue to suffer, physical, emotional and economic harm and irreparable harm to his person, property, life and reputation, wherein they intentionally and maliciously agreed to an illicit Conspiracy Plan to falsely arrest, falsely charge, wrongfully obtain an indictment, falsely imprison, and

maliciously prosecute Pearson for allegedly killing Burgess, a crime they all knew he did not commit and for which they knew there was no probable cause.

350.   As alleged herein, said Defendants intentionally and maliciously participated in and carried out overt acts in furtherance of their illicit Conspiracy Plan, and further made and/or caused to made false public defamatory statements with respect thereto and about Pearson to cause him severe hardship and to prejudice the public against him.

351.   As alleged herein, said Defendants intentionally, with actual malice to cause Pearson harm, conspired to continue their illicit Conspiracy Plan and maliciously, once again, caused him to be falsely imprisoned and continued their malicious prosecution to purportedly retry him after they failed to have him convicted by a jury in the Burgess Case in February 2002.

352.   As alleged herein, said Defendants intentionally and maliciously participated in and carried out overt acts in furtherance of their illicit Conspiracy Plan up through September 6, 2022, when Justice Fabrizio dismissed the Burgess case in Pearson's favor.

353.   Scaccia, Clark, Rivera, Dodd, Tracy and/or Doe Defendants acted under the color of law when they intentionally directed, participated in and caused overt acts, with actual malice to cause Pearson harm, in furtherance of their Conspiracy Plan, including, but not limited to, causing him to be arrested and charged in February 2000, indicted in March 2000, arrested in March 2019, extradited to Louisiana in March 2019, extradited to New York on July 23, 2020, imprisoned at Rikers from on or about February 3, 2000 through June 14, 2003 and from July 23, 2020 through September 8, 2022, and maliciously prosecuted for almost 23 years from February 2000 through September 2022.

354.   All aforementioned Defendants participated in and were directly involved in violating

Pearson's rights under the Constitution and laws of New York, and it was not objectively

reasonable for any of them to believe their aforesaid unlawful actions were lawful.

355.   All aforementioned Defendants acted under the color of law when they directed,

participated in and caused the intentional malicious overt acts alleged herein in

furtherance of their illicit Conspiracy Plan, and they directly participated in and were

involved in violating Pearson's rights under the Constitution and laws of the United

States and New York.

356.   The City and NYPD are liable for the unlawful overt acts and conduct of Tracy, Dodd,

Rivera and all NYPD Doe Defendants asserted herein, as all said NYPD employees

engaged in their unlawful acts under City/NYPD Policies.

357.   Pearson is entitled to compensation for the conspiracy to participate in, cause and carry

out intentional overt acts, with actual malice to cause him harm, among, by and between

the City, NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants, in furtherance

of their Conspiracy Plan in violation of his rights under the laws and Constitution of New

York, including punitive damages and damages for the intentional infliction of emotional

distress due to their egregious, extreme and outrageous conduct, causing severe and

irreparable harm to his quality of life, reputation, and personal and business relationships

and opportunities.

358.   As alleged herein, intentionally, with actual malice to cause Pearson harm, the City,

NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants interfered with his

person and property and caused him to suffer, and to continue to suffer, severe and

irreparable harm for which he is entitled to judgment against them for economic harm,

compensatory damages, emotional distress, pain and suffering, punitive damages,

reasonable attorney fees, costs and expenses incurred since February 2000 and to be incurred in this action, interest, and such further and equitable relief as the Court may deem just and proper.

359.    Pearson seeks damages in excess of $100,000,000 for Defendants' conspiracy to violate his civil and due process rights under the laws and Constitution of New York.

### COUNT VII - Abuse of Process
(42 U.S.C. § 1983 - Violation of the Fourth Amendment
against the City, NYPD, Clark, Scaccia, Dodd, Tracy and Rivera)

360.    Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

361.    On or about February 2, 2000, Pearson surrendered to police officers, detectives and/or other employees from the City, NYPD, and Bronx DA's Office for questioning regarding the Ling incident and Ling, including by Scaccia.  During the investigation, he told Scaccia and the others that he did not have a gun at the Ling incident, he did not shoot Ling, and he would provide honest information about Ling, but would not lie.

362.    During that investigation, Pearson was told that he was not being charged with shooting Ling.  However, to his shock, he was arrested and charged for allegedly killing his best friend Burgess over two years earlier.  Previously, Pearson had never been questioned by any employees of the NYPD or Bronx DA's Office about Burgess being killed.

363.    On or about February 2, 2000, Scaccia, Tracy, Dodd and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, arrested him, without probable cause, for allegedly killing Burgess.  The next day, on or about February 3, 2000, they caused him to be arraigned in Bronx Supreme Court, initiating and abusing process.  As alleged herein, said Defendants knew those charges to be false, as they had fabricated Garcia's false coerced testimony in order to use same to falsely arrest, arraign, charge,

indict and prosecute Pearson for a crime they knew he did not commit, thus abusing process.

364.   Pearson was incarcerated at Rikers for that alleged offense from on or about February 3, 2000 until he was released on June 14, 2003 after the Court reduced his bail, as a mistrial was declared in February 2002 in the Burgess Case and Scaccia and the Bronx DA's Office had still not stated that case ready to retry Pearson as of June 14, 2003.

365.   When released from Rikers, Pearson relocated to Florida with the Court's knowledge and permission and the Court gave him permission not to personally appear in Court for the Burgess Case until the Bronx DA's Office stated that case ready for trial.

366.   Despite the Bronx DA's Office not stating the case ready for trial, Scaccia, Tracy, Dodd, Rivera and/or Doe Defendants intentionally, with actual malice to harm Pearson, obtained a warrant for his arrest in April 2009 from the Court, thus again abusing process.

367.   Thereafter, on March 15, 2019, Scaccia, Clark, Dodd, Rivera and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, caused him to be arrested in Florida to purportedly be retried in the Burgess Case, without probable cause, and despite not stating the case ready to be retried for over ten (10) years after obtaining an arrest warrant in April 2009, thus again abusing process.

368.   Despite having Pearson arrested, Scaccia, Clark, Dodd, Rivera and/or Doe Defendants intentionally caused him **not** to be extradited to New York and instead had him extradited to Louisiana for a lesser charge, thus again abusing process.  They did so to keep the Burgess Case open and the threat of prosecution in that case to hang over Pearson while they never intended to retry him for a crime they knew he did not commit and for which they knew there was no probable cause.

369.   On July 23, 2020, over 16 months after Scaccia, Clark, Dodd, Rivera and/or Doe

Defendants caused Pearson to be arrested in March 2019, they intentionally, with actual

malice to cause him harm, caused him to be extradited to New York to purportedly be

retried in the Burgess Case, without probable cause, thus again abusing process.

370.   In his July 8, 2022 Decision and Order, Justice Fabrizio Ordered the Bronx DA's Office

to provide all extradition paperwork and representations made at the time to a state

executive to obtain a "Governor's warrant", which the Bronx DA's Office, including

Clark and Scaccia, **refused** to provide to the Court.  The Court stated:

> That leaves us with the "reason" for the now almost **two-year
> delay** in bringing this case to trial after the defendant returned to
> New York's jurisdiction.  **The Court was concerned about
> whether the People took steps to prepare this case for trial
> after defendant was apprehended in Florida in 2019.**
> Defendant represented that the People obtained a "Governor's
> warrant" to secure the defendant's swift return to New York to
> face the long-delayed trial in this matter.  **The Court directed the
> People to provide this Court with all extradition paperwork
> and all representations made at the time to a state executive to
> secure such a warrant, if indeed they did.  They have not done
> so**.  (**Exhibit 3** at 5 (emphasis added)).

371.   On July 23, 2020, the Court remanded Pearson into DOC's custody and control, at which

time he was again falsely imprisoned at Rikers for allegedly killing Burgess, as a result of

abuse of process by Scaccia, Clark, Dodd, Rivera and/or Doe Defendants.  As of that

date, Clark, Scaccia and the Bronx DA's Office had not stated the Burgess Case ready for

trial at any time after the mistrial over 18 years earlier.  Pearson was again incarcerated at

Rikers, without probable cause, from July 23, 2020 through September 8, 2022.  In

having Pearson incarcerated again, said Defendants interfered with his person and

property, and abused process.

372.   For over two years, from July 23, 2020 (date Pearson was incarcerated at Rikers after his

extradition to New York) until September 8, 2022 (date he was released from Rikers after

Justice Fabrizio terminated the Burgess Case), Clark, Scaccia, Dodd, Rivera and/or Doe Defendants intentionally, with actual malice to harm Pearson, caused him to languish in prison while they did nothing at all to bring their alleged case to trial, thus taking away his liberty and freedom while he rotted away in prison subjected to inhumane conditions and treatment at Rikers. During said two years, Clark, Scaccia and the Bronx DA's Office never stated the case ready for trial and violated discovery laws and Orders and directives of the Court, and Clark, Saccia and the NYPD never looked for or recreated their alleged files as Scaccia told the Court they would do.

373. Pearson was released from Rikers on September 8, 2022 after the Court terminated the Burgess Case in Pearson's favor on September 6, 2022.

374. With actual malice and intent to harm Pearson and without probable cause, excuse or justification, Scaccia, Clark, Dodd, Rivera and/or Doe Defendants caused him to be arrested in March 2019, and extradited to New York and confined at Rikers on July 23, 2020 to purportedly await trial in the Burgess Case. The lack of probable cause creates an inference of malice which supports the collateral objective element of this claim.

375. As alleged herein, the aforesaid acts show that Scaccia, Clark, Tracy, Dodd, Rivera and/or Doe Defendants abused process and acted to obtain a collateral objective outside the legitimate ends of process in the Burgess case. They intended to, and did, improperly use process to keep Pearson incarcerated while they investigated the Ling incident, to retaliate against him for refusing to testify against Ling being a corrupt cop, to coerce and put undue pressure on him to testify against Ling, to interfere with his person and property, to harass and cause him to suffer physical, emotional and economic harm and/or to irreparably ruin his quality of life and reputation. The evidence shows said Defendants never intended to retry Pearson.

376.   All aforementioned Defendants acted under the color of state law when they abused
        process as asserted herein, with intent to do Pearson harm without excuse or justification
        to obtain a collateral objective outside the legitimate ends of the process.  It was not
        objectively reasonable for any them to believe that their unlawful actions were lawful.

377.   The City and NYPD are liable for the unlawful actions of Tracy, Dodd, Rivera and all
        NYPD Doe Defendants alleged herein, as all said NYPD employees engaged in their
        unlawful overt acts under the City/NYPD Policies.

378.   Pursuant to 42 U.S.C. § 1983, Pearson is entitled to compensation for the malicious abuse
        of process by the City, NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants
        in violation of his Fourth Amendment rights, including punitive damages and damages
        for the intentional infliction of emotional distress due to their extreme and outrageous
        conduct, causing severe and irreparable harm to his quality of life, reputation, personal
        and business relationships and opportunities.

379.   Said Defendants' intentional abuse of process, with actual malice to cause Pearson harm,
        interfered with his person and property, and caused him to suffer and to continue to suffer
        severe irreparable harm for which he is entitled to judgment against them for economic
        harm, emotional distress, pain and suffering, punitive damages, reasonable attorney fees,
        costs and expenses incurred since February 2000 and to be incurred in this action,
        interest, and such further and equitable relief as the Court may deem just and proper.

380.   Pearson seeks damages in excess of $100,000,000 for Defendants' abuse of process in
        violation of his Fourth Amendment rights, pursuant to 42 U.S.C. § 1983.

### COUNT VIII - Abuse of Process
(Violation of New York Law against the City,
NYPD, Clark, Scaccia, Dodd, Tracy and Rivera)

381.   Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

382.   As alleged herein, the City, NYPD, Scaccia, Dodd, Tracy and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, used regularly issued process to arrest, arraign, charge, indict, incarcerate and maliciously prosecute Pearson for allegedly killing Burgess, a crime they knew he did commit and for which they knew there was no probable cause.  Their aforesaid unlawful overt acts were based on Garcia's fabricated coerced perjured testimony, which Scaccia, Tracy, Dodd and/or Doe Defendants had manufactured in and  around January 2000 to use to unlawfully arrest, arraign, charge, indict, incarcerate and maliciously prosecute Pearson for that alleged offense.

383.   As alleged herein, the City, NYPD, Scaccia, Clark, Dodd, Tracy, Rivera and/or Doe Defendants intentionally, with actual malice to cause Pearson harm, used regularly issued process to cause him to be arrested in Florida on March 15, 2019, without probable cause; to cause him to be extradited to Louisiana in March 2019 after causing him to be arrested on March 15, 2019 to purportedly be retried in the Burgess Case without probable cause; to cause him to be extradited to New York to purportedly be retried in the Burgess Case without probable cause; and to have him confined again at Rikers on July 23, 2020 to purportedly be retried in the Burgess Case, without probable cause, to take away his freedom and liberty while he languished in prison for over two years while Scaccia, Clark, Dodd, Rivera and/or Doe Defendants did absolutely nothing to retry him, which they never intended to do when they caused him to be arrested in March 2019 and extradited to New York in July 2020.

384.   The lack of probable cause creates an inference of malice which supports the collateral objective element of this abuse of process claim.

385.   The intentional overt acts alleged herein show Scaccia, Clark, Dodd, Rivera and/or Doe Defendants abused process to obtain a collateral objective outside the legitimate ends of the process in the Burgess case. They intended to, and did, improperly use process to keep Pearson incarcerated while they investigated the Ling incident, to retaliate against him for refusing to testify against Ling being a corrupt cop, to coerce and put undue pressure on him to testify against Ling, to interfere with his person and property, to harass and cause him to suffer physical, emotional and economic harm and/or to irreparably ruin his quality of life and reputation. The evidence clearly shows said Defendants never intended to retry Pearson.

386.   All aforementioned Defendants acted under the color of state law when they abused process as asserted herein, with intent to cause Pearson harm without excuse or justification in order to obtain a collateral objective outside the legitimate ends of the process. It was not objectively reasonable for any of said Defendants to believe that their unlawful actions were lawful.

387.   The City and NYPD are liable for the unlawful actions of Tracy, Dodd, Rivera and all NYPD Doe Defendants asserted herein, as all said NYPD employees engaged in their unlawful acts under the City/NYPD Policies.

388.   Pursuant to the Constitution and laws of New York, Pearson is entitled to compensation for the abuse of process by the City, NYPD, Scaccia, Clark, Tracy, Dodd, Rivera and Doe Defendants in violation of his constitutional, civil and due rights under the Constitution and laws of New York, including punitive damages and damages for the intentional infliction of emotional distress due to their extreme and outrageous conduct, causing Pearson to suffer severe and irreparable harm to his quality of life, reputation, personal and business relationships and opportunities.

389.   Said Defendants' intentional abuse of process, with actual malice to cause Pearson harm, interfered with his person and property, and caused him to suffer and to continue to suffer severe irreparable harm for which he is entitled to judgment against them for economic harm, compensatory damages, emotional distress, pain and suffering, punitive damages, reasonable attorney fees, costs and expenses incurred since February 2000 and to be incurred in this action, interest, and such further and equitable relief as the Court may deem just and proper.

390.   Pearson seeks damages in excess of $100,000,000 for Defendants' abuse of process in violation of his rights under laws and Constitution of New York.

### COUNT IX - Intentional Infliction of Emotional Distress
(New York Law against the City, NYPD,
Clark, Scaccia, Dodd, Tracy and Rivera)

391.   Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

392.   The intentional acts and conduct, with actual malice to cause Pearson harm, by the City, NYPD, Scaccia, Clark, Dodd, Tracy, Rivera and/or Doe Defendants as alleged herein, constitutes extreme and outrageous conduct with the intent to cause, or disregard of a substantial probability of causing, severe emotional distress to Pearson, which he suffered as a result of their malicious prosecution of him for almost 23 years, without probable cause, and based upon Garcia's fabricated coerced and coached false testimony, which Scaccia, Tracy, Dodd and/or Doe Defendants unlawfully fabricated around January 2000 to use to arrest, arraign, indict and prosecute Pearson for charges they knew to be false.

393.   As alleged herein, after the mistrial in the Burgess Case in February 2002, Clark, Scaccia and the Bronx DA's Office never once stated the case ready to retry Pearson for over 20 years, but nevertheless intentionally, with actual malice to cause Pearson harm, kept the

Burgess indictment hanging over Pearson, causing him to suffer severe and irreparable emotional harm, which he continues to suffer and will continue to forever suffer for the rest of his life as the severe and irreparable harm he suffered can never be undone.

394.   As alleged herein, Scaccia, Dodd, Tracy and/or Doe Defendants, acting under the color of law, intentionally, with actual malice to cause Pearson harm, engaged in unlawful acts in violation of his rights under the Constitutions and laws of the United States and New York in their malicious prosecution of him in the Burgess Case, including, but not limited to: (a) around January 2000, fabricating Garcia's false coerced and coached testimony that he saw Pearson kill Burgess, and securing Garcia's said false testimony by causing him physical harm and threatening to criminally prosecute him for a crime they knew he did not commit; (b) falsely arresting, arraigning and charging Pearson on or about February 3, 2000 for allegedly killing Burgess, without probable cause which they knew, based on Garcia's coerced perjured testimony they knew to be false and fabricated; (c) causing Pearson to be falsely imprisoned at Rikers from on or about February 3, 2000 through June 14, 2003 based on charges without probable cause, which they knew to be false as they fabricated same, and also causing him to be subjected to inhumane and cruel conditions and treatment while confined at Rikers due to their said known false charges; (d) presenting Garcia's coerced false testimony to the grand jury to obtain an indictment and failing to present exculpatory evidence to the grand jury; (e) knowingly obtaining a wrongful indictment from the grand jury in March 2000 based on Garcia's false coerced and coached perjured testimony and the suppression of exculpatory evidence; (f) filing a criminal proceeding against Pearson in Bronx Supreme Court based on Garcia's false testimony and suppression of exculpatory evidence; and (g) maliciously prosecuting Pearson before and throughout the January 2002 trial in the Burgess Case including by,

inter alia, Scaccia presenting Garcia's said coerced false testimony to the jury, Scaccia mouthing answers to witnesses testifying at trial, and Scaccia bribing a juror to secure a guilty verdict and hung jury.

395.   As alleged herein, during the over 20 years between the mistrial on February 1, 2002 and September 6, 2022, the date Justice Fabrizio terminated the Burgess Case in Pearson's favor, Scaccia, Clark, Dodd, Tracy, Rivera and/or Doe Defendants, acting under the color of law, intentionally, with actual malice to cause Pearson harm, engaged in unlawful overt acts in violation of his rights under the Constitutions and laws of the United States and New York in their continued malicious prosecution of him, including, but not limited to: (a) obtaining an arrest warrant in April 2009 in the Burgess Case despite not stating the case ready for trial and Pearson having Court permission not to appear in Court until the Bronx DA's Office stated ready for trial; (b) causing Pearson to be falsely profiled on AMW as a fugitive murderer, who shot a cop and killed multiple persons; (c) causing Pearson to be arrested in March 2019, without probable cause, to be purportedly retried in the Burgess Case, but then causing him to be extradited to Louisiana in March 2019 for a lesser charge in order to keep the Burgess Case open and hanging over Pearson, while they never intended to retry him; and (d) causing Pearson to be extradited to New York in July 2020 to be purportedly retried in the Burgess Case, without probable cause, and to again be confined at Rikers for over two years from July 2020 until September 6, 2022, during which time they took away his freedom and liberty and left him to languish in prison while they did absolutely nothing at all to bring the case to trial in violation of the discovery laws and the Orders and directives of the Court.

396.   As a direct and proximate result of all aforementioned Defendants' intentional and malicious extreme and outrageous conduct and overt acts alleged herein, Pearson has

suffered, and continues to suffer, severe emotional distress and irreparable harm to his quality of life, reputation, and personal and business relationships, and is entitled to judgment against said Defendants for economic harm, compensatory damages, mental anguish, emotional distress, pain and suffering and other emotional injuries, punitive damages, reasonable attorney fees, costs and expenses incurred since February 2000 and to be incurred in this action, interest, and such further and equitable relief as the Court may deem just and appropriate.

397.    Pearson seeks damages in excess of $100,000,000 for all aforementioned Defendants' intentional and malicious extreme, outrageous and reprehensible conduct, causing him to suffer, and to continue to suffer, severe emotional distress and irreparable harm to his quality of life, reputation, and personal and business relationships and opportunities, which he will continue to forever suffer for the rest of his life as the severe and irreparable harm he suffered can never be undone.

### COUNT X - Inhumane and Cruel Treatment
(42 U.S.C. § 1983 - Violation of the Eighth Amendment of
the United States Constitution against the City and DOC)

398.    Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

399.    The United States Constitution does not permit inhumane conditions in prisons.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "[T]he Supreme Court has interpreted the Eighth Amendment's prohibition of 'cruel and unusual punishment' as imposing duties on prison officials to provide humane conditions of confinement, ensure that inmates receive adequate food and medical care, and take reasonable measures to guarantee the safety of inmates."  People ex rel. Burse v. Schiraldi, 2021 NY Slip Op 21351, Index No. 21-53252 (Dec. 22, 2021) (citing Brown v. Plata, 563 U.S. 493, 508 (2011); Farmer, 511

U.S. at 832; <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).

400.  "Prison officials have a duty to protect prisoners from violence at the hands of other

prisoners." <u>Burse v. Schiraldi</u>, 2021 NY Slip Op 21351 (citing <u>Farmer</u>, 511 U.S. at 833).

The U.S. Supreme Court has held that a prison official's deliberate indifference to a

substantial risk of serious harm to an inmate violates the cruel and unusual punishment

clause of the Eighth Amendment, which prohibits inhumane prisons. <u>Id</u>.

401.  Persons detained by the government for an alleged crime do **not** lose their rights to be

treated civilly and humanely while in the government's care, custody, and control.

402.  The City and DOC are responsible for operating and maintaining Rikers and have the

duties to maintain Rikers in a condition fit for human habitation and in proper working

order and to operate Rikers in a manner to keep inmates safe while housed there.  To

carry out those duties, the City and DOC have the duty to properly staff Rikers, properly

train and hire qualified correction officers and staff for their jobs, and properly manage

correction officers and other employees and staff.

403.  Before Pearson was remanded into DOC's custody and control, the City and DOC long

knew the conditions at Rikers to be inhumane and cruel to the inmates incarcerated there,

but failed to advise the Court those conditions posed an unreasonable threat and/or

serious risk of harm to the physical and mental health of inmates, including Pearson.

404.  To purportedly await to be retried in the Burgess Case, on July 23, 2020, the Bronx

Supreme Court remanded Pearson into DOC's custody and control, and he was thereafter

falsely imprisoned at Rikers for over two (2) years.  Pearson was released from Rikers on

September 8, 2022 after the Court terminated the Burgess Case in his favor on September

6, 2022 due to Clark, Scaccia and the Bronx DA's Office failing to state the case ready

for trial and failing to comply with the discovery laws, among other things, in violation of

the Court's Orders and directives.  (**Exhibits 3 and 8**).

405.  Between July 2020 and September 2022, while Pearson languished falsely imprisoned for over two years subjected to cruel and inhumane treatment and conditions at Rikers, Clark, Scaccia and the Bronx DA's Office did absolutely nothing at all to move the Burgess Case forward to retry him, despite having over 20 years to do so after the Court declared a mistrial in the Burgess Case over 20 years earlier on February 1, 2002.

406.  Pearson would not have been confined at Rikers and subjected to cruel and unusual punishment and inhumane and cruel conditions and treatment while there, but for the intentional acts of Clark, Scaccia, Dodd, Tracy, Rivera and/or Doe Defendants undertaken with actual malice to cause Pearson harm.

407.  Clark, Scaccia, Dodd, Tracy, Rivera and/or Doe Defendants intentionally, with actual malice to harm Pearson, caused the City and DOC, through their correction officers and staff at Rikers, to subject him to inhumane and cruel conditions and treatment while he was confined at Rikers, to cause him to suffer severe physical and emotional harm.

**Failure to Protect Pearson**

408.  Clark, Scaccia, Rivera, Dodd and/or Doe Defendants intentionally, with actual malice to harm Pearson harm, caused City and/or DOC employees to misidentify and/or misclassify Pearson as "RED ID," i.e. classifying him as a gang member on his inmate card in order to put him in the most dangerous housing at Rikers and they did so with the intent to cause him to be beaten, attacked, stabbed and/or killed while housed at Rikers.

409.  City and/or DOC employees misidentified and/or misclassified Pearson as "RED ID" due to the false inherently harmful defamatory statements that Pearson was a murderer and shot a cop made or caused to be made by officials and employees of the NYPD and Bronx DA's Office, including Scaccia, former NYPD Commissioners Safir and O'Neill,

NYPD Sergeant McInnis, Tracy, Dodd, Rivera and/or Doe Defendants, on AMW, in tweets, on the internet and the like.

410. The City and DOC intentionally, with actual malice to harm Pearson, did not place him in appropriate housing. Instead, they housed him with convicted murderers with the highest classification even though Pearson was a detainee, who had a low classification and was never written up by DOC's correction officers or other staff.

411. The City and DOC failed in their duty to protect Pearson from being assaulted and battered by DOC corrections officers and/or other employees and/or by other inmates at Rikers. While at Rikers, the City and DOC intentionally, recklessly and/or negligently failed to protect Pearson when he was assaulted and battered by DOC corrections officers and/or other inmates in several stabbing including, causing him to suffer physical injuries and emotional harm.

412. The City's and DOC's employees, agents, and/or servants inflicted bodily harm upon Pearson using force not necessary to the circumstances presented.

413. The City and DOC failed to provide A officers and to provide B officers on the floor of the housing where Pearson was confined, thus denying him safety.

414. The City and DOC have allowed Rikers to be controlled by inmates and gangs with no regard for the safety of other inmates incarcerated therein and with deliberate indifference to Pearson's safety and well being.

415. The City and DOC have long known that they do not have adequate staff to safely house the inmates incarcerated at Rikers, including Pearson. The inadequate staffing at Rikers places DOC's correction officers and inmates at risk for physical injury and harm, places additional stress upon officers, and is responsible for correction officers and other staff using excessive force and violence against the inmates incarcerated at Rikers.

94

416.   DOC correction officers assaulted and battered Pearson by placing handcuffs and/or twisty ties on him so tight as to cut off the circulation in his wrists.

**Failure to Provide Adequate Medical Care, Medications, Etc.**

417.   At the time Pearson was confined to Rikers, the City and DOC knew that he suffers from asthma and high blood pressure due to his prior confinement.  Despite knowledge of his conditions, they acted with deliberate indifference to his medical conditions and needs, thus violating his constitutional right to be free from cruel and unusual punishment.

418.    The City and DOC refused and/or failed to provide Pearson his required medications for unsafe periods of time, and refused and/or failed to provide his commissary in a timely manner, which included his needed medications. His commissary was almost always delivered about two weeks late.

419.   DOC failed to provide Pearson with proper and adequate medical care and treatment for his medical conditions and/or the injuries he sustained from being assaulted and battered by other inmates and/or DOC correction officers or other staff.

420.   The City's and DOC's employees, agents, servants and/or contractors ignored Pearson's obvious medical conditions; failed to provide treatment for his known and/or diagnosed medical conditions; failed to investigate enough to make an informed judgment regarding his medical care; delayed medical treatment to him; and/or interfered with his access to medical treatment.

421.   The City's and DOC's employees, agents, servants and/or contractors actions and/or inactions in denying Pearson medical care and/or his medications are not an acceptable standard of care in terms of modern medicine and human decency.  No reasonable doctor would have denied Pearson medical care for his conditions and/or ailments.  The City's and DOC's denial of medications and/or medical care to Pearson significantly affected

his daily activities.

422. The City's and DOC's employees, agents, servants and/or contractors made medical decisions regarding Pearson's health and conditions based on non-medical factors, and made medical judgments so bad that they fell below professional medical standards.

423. The City and DOC failed to provide dental checkups for Pearson, who was held over six months at Rikers.

424. The City and DOC denied Pearson medical and/or dental care, including by falsely claiming and/or coercing him to refuse medical and/or dental care, by falsely claiming they could not find him, and/or by rescheduling his medical and/or dental services.

425. The City's and DOC's denial of medications to Pearson without regard to his medical conditions, failure to timely provide medical care for injuries he sustained at Rikers, and their failure to timely provide him with his medications, all constitute an excessive risk to Pearson's health or safety.  Their aforesaid conduct violated his right to be free from cruel and unusual punishment.

426. The City and DOC intentionally, negligently and/or recklessly failed to provide Pearson protection from Covid-19, including failing to provide masks, PPE and/or new PPE to help prevent the spread of Covid-19.  They intentionally, negligently and/or recklessly overcrowded its jails at Rikers making it impossible for inmates to social distance.

427. The doctor in charge of the medical care at Rikers wrote a letter to City Counsel complaining that his office could not handle all of the medical issues presented by the prisoners at Rikers.

428. The City and DOC denied and/or failed to provide Pearson with mental health counseling services, despite Pearson's repeated requests for said services.

**Excessive Use of Force With Chemical Agents and Inhumane
and Cruel Treatment knowing Pearson is Heat Sensitive**

429. The City and DOC were aware that Pearson should not be exposed to excessive heat and chemical agents, as he suffers from asthma, but yet exposed him to both.

430. Pearson was marked in DOC's records as "heat sensitive." Nevertheless, DOC housed him in the worst, improper and inappropriate housing area that had no air conditioning or ventilation. Said housing only had two fans.

431. On one occasion, DOC correction officers intentionally and maliciously harmed Pearson when they took him to Jacobi Hospital by van. Despite it being summertime and DOC knowing Pearson is "heat sensitive", the correction officers kept the heat on in the van the entire time. As a result, Pearson felt like he was going to die, was screaming, and when he was examined at the Jacobi Hospital, his vitals were off the charts in a bad way.

432. Despite the DOC knowing Pearson has asthma, its correction officers and/or other employees indiscriminately sprayed him with chemical agents, thus aggravating his medical conditions, including asthma and/or caused him to suffer breathing and/or vision problems. After he was sprayed with chemical agents, DOC correction officers and/or other employees forced him to stay in the same clothes sprayed with chemical agents for an inordinate period of time, violated the health and safety protocols for using chemical agents by failing to take him to medical for evaluation after the spraying incidents, and/or failed to allow him time to decontaminate.

433. The City's and DOC's excessive, abusive and indiscriminate use of chemical agents upon Pearson without regard to his medical conditions violated his right to be free from cruel and unusual punishment and is an "excessive risk to his health or safety."

434. When DOC correction officers and/or other employees indiscriminately sprayed chemical agents into the housing areas where Pearson was confined, they committed an assault and battery upon Pearson.

**Inhumane and Cruel Conditions in Housing Areas and on DOC Buses**

435.   The City and DOC failed to provide Pearson with clean spaces during his incarceration. The housing units where he was held were overrun with insects, rodents, roaches, and the like, and/or other vermin ran and crawled across the floors and walls thereof.

436.   Pearson was held in housing at Rikers wherein the bathrooms had non-functioning toilets and urinals, were not cleaned, had toxic mold on the ceilings and walls, and/or the toilets and urinals leaked excrement on the bathroom floors.

437.   Pearson was held in housing at Rikers wherein the water from the showers was brown, red, black, and/or discolored, indicating that the water was polluted.

438.   Upon information and belief, the City and DOC exposed Pearson to asbestos.

439.   Pearson was held in housing at Rikers with inadequate ventilation, inadequate heat during cold months, and/or inadequate air conditioning during hot months.

440.   The City and DOC are responsible for transporting inmates at Rikers on DOC buses and/or other vehicles, including to and from Court and hospitals.  During his incarceration, DOC correction officers and/or other employees held Pearson and/or other inmates on DOC buses and/or other vehicles for excessive periods of time without access to food, water, or a bathroom, thus forcing them to defecate and/or urinate on themselves or bus floor, and denied him and/or other inmates adequate ventilation and/or air conditioning during hot weather and/or heat during cold days and/or failed to open the windows so air could pass through the bus or other vehicle.

441.   During his incarceration, DOC correction officers held Pearson and other inmates on a DOC bus in front of VCBC for over six hours and denied them food, water and use of a bathroom, causing Pearson to urinate while on the bus.  DOC holding Pearson on buses for inordinate periods of time is a form of physical abuse compensable by PRLA § 803,

and after he or other inmates defecated or urinated on said buses exposed him to sewage and the noxious fumes and smells created therefrom was noxious and toxic to Pearson.

### Failure to Provide Recreation, Access to Law Library, Mail Services

442.    The DOC denied Pearson outdoor exercise and recreation during his incarceration, thus damaging his physical health, mental health and well being.  While held at VCBC, the DOC gave Pearson very limited access to recreation, and when he was transferred to another jail at Rikers, the DOC failed to provide him with any recreation time at all.

443.    During Pearson's incarceration, the DOC denied him access to the law library so as to keep him ignorant of his rights under the law and to deny him avenues to redress grievances and exhaustion of administrative remedy procedures, thus violating the PLRA. The City and DOC employed this policy to create an absolute defense to litigation.

444.    While confined at Rikers, DOC intentionally, negligently and/or recklessly refused and/or failed to provide Pearson timely mail services.

### Failure to Provide Adequate Food

445.    While confined at Rikers, DOC failed and/or refused to provide Pearson consistent meals, adequate food, and/or adequate water.

446.    The food service provided by the City and DOC to Pearson was done in an unsanitary manner.  Also, while he was confined at Rikers, they provided him with warm, sour or expired milk, expired, moldy and otherwise spoiled food, expired food items in the commissary, and food containing foreign objects.  They also denied him fruits.

447.    During his incarceration, DOC served Pearson food contaminated with a cooked mouse, causing him to become very ill.  The City and DOC denied him medical services.

448.    During his incarceration, Pearson became so ill that DOC had to take him to Jacobi Hospital where he was hospitalized for about five (5) days.

**Failure to Provide Essential and Basic Necessities**

449.   While confined at Rikers, DOC intentionally, negligently and/or recklessly refused and/or failed to provide Pearson access to basic essential items and services for good personal hygiene and dental hygiene, including denying him access to shower and failing to provide him essential toiletries, toothbrushes, toothpaste, and mouthwash and clean clothes to ensure his physical health, mental health and well being.

450.   While confined at Rikers, DOC intentionally, negligently and/or recklessly refused and/or failed to provide Pearson an adequate mattress, blankets and/or other bedding items.

451.   While confined at Rikers, DOC intentionally, negligently and/or recklessly refused and/or failed to provide safe showers, clean water, and clean housing as its housing areas were and are over run with insects, rodents and the like.

**Sexualized Strip Searches and Use of Slurs**

452.   During his incarceration, DOC correction officers strip searched Pearson all the time and in a sexualized manner.  The City and DOC have employed a policy of strip-searching inmates at Rikers without regard for penal interests and a policy of almost daily strip searches of inmates and have even had female officers watch the search to humiliate the inmates, including Pearson.  The indiscriminate, unfettered and sexualized strip searches of Pearson are a form of physical abuse compensable by PLRA § 803(d).

453.   Pearson had a right to be free from verbal, physical, harassment and sexual harassment from employees of the City and DOC while he was incarcerated at Rikers.  When DOC's correction officers used racial slurs and profanities and threats of force against Pearson, they committed an assault and battery upon Pearson.

**Violation of Eighth Amendment Based on Aforesaid Conditions and Treatment**

454.   The unlawful cruel and unusual punishment and inhumane, cruel and dangerous

conditions at Rikers alleged herein, resulted directly from and were caused by DOC's intentional and/or negligent acts and/or failure to act with deliberate indifference to Pearson's constitutional, due process and civil rights, causing him to suffer severe physical injuries and emotional and/or psychological harm.

455.   The City had and has a de facto policy of improperly staffing Rikers, failing to properly train and hire qualified correction officers, failing to properly manage correction officers and staff at Rikers, and failing to keep Rikers' facilities in proper working order.

456.   The City has been aware of the problems at Rikers detailed herein since at least as early as 2011, and most likely long before that time.  Throughout Pearson's incarceration, the City and DOC knew the conditions at Rikers to be inhumane, cruel and dangerous, but they did nothing.

457.   The direct and inevitable result of the City's and DOC's policies are the multiple deprivations of Pearson's constitutional rights.

458.   The City and DOC failed to properly staff the jails at Rikers, failed to train the staff working there, and failed to keep the jails in proper working order, causing Pearson to suffer and his constitutional, due process and civil rights to be violated.  He was subjected to unreasonable health and safety risks while incarcerated at Rikers.

459.   These conditions violate the most basic rights afforded by the Eighth Amendment to the United States Constitution, which is compensable under 42 U.S.C. § 1983. Pearson is entitled to compensation for the City and DOC violating his Eighth Amendment rights.

460.   The City's and DOC's aforesaid actions interfered with Pearson's person and property, and caused him to suffer and to continue to suffer severe irreparable harm for which he is entitled to judgment against them for compensatory damages, emotional distress, pain

and suffering, punitive damages, reasonable attorney fees and costs, interest, and such further and equitable relief as the Court may deem just and proper.

461. Pearson seeks damages in excess of $100,000,000.

## COUNT XI
### (New York Law - Lack of Medical Care Against the City and DOC)

462. Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

463. The City's and DOC's employees, agents, servants, and/or contractors violated their protocols for providing Pearson with medical care while incarcerated at Rikers.

464. The City and DOC violated the laws of the State of New York when they failed to provide adequate medical care to Pearson while he was incarcerated at Rikers.

465. Pearson has been injured as a result of the City's and DOC's failure to provide him with medical care.

466. These inhumane and cruel conditions and treatment violate the most basic rights afforded to Pearson under the laws of New York, and he is entitled to and seeks compensation from the City and DOC for violating his rights under New York law.

467. The City's and DOC's aforesaid actions interfered with Pearson's person and property, and caused him to suffer and to continue to suffer severe irreparable harm for which he is entitled to judgment against them for compensatory damages, emotional distress, pain and suffering, punitive damages, reasonable attorney fees and costs, interest, and such further and equitable relief as the Court may deem just and proper.

468. Pearson seeks damages in excess of $100,000,000.

## COUNT XII - Sexual Harassment
### (New York State Constitutional Violations against the City and DOC)

469. Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if

more fully set forth below.

470.    The conduct of the City and DOC detailed in this Complaint breached the protections

guaranteed to Pearson by the New York Constitution, including but not limited to,

Articles §§ 1, 3, 5, 11 and 12.  Article 1, § 1 of the New York Constitution provides:

> No member of this state shall be disfranchised, or deprived of any of
> the rights or privileges secured to any citizen thereof, unless by the
> law of the land, or the judgment of his or her peers....

471.    The City and DOC have disfranchised and/or deprived Pearson of rights secured by the

New York State Constitution.

472.    Article 1, Section 5 of the New York State Constitution provides:

> Excessive bail shall not be required nor excessive fines imposed, nor
> shall cruel and unusual punishments be inflicted, nor shall witnesses
> be unreasonably detained.

473.    The City and DOC violated Article 1, Section 5 of the New York State Constitution by

holding Pearson in inhumane and dangerous conditions while incarcerated at Rikers,

which satisfy the definition of cruel and unusual punishment.

474.    Article 1, Section 11 of the New York State Constitution provides:

> No person shall be denied the equal protection of the laws of this
> state or any subdivision thereof.  No person shall, because of race,
> color, creed or religion, be subjected to any discrimination in his or
> her civil rights by any other person or by any firm, corporation, or
> institution, or by the state or any agency or subdivision of the state.

475.    As set forth in this Complaint, the City and DOC violated Article 1, Section 11 of the

New York State Constitution.

476.    Article 1, Section 12 of the New York State Constitution provides:

> The right of the people to be secure in their persons, houses, papers
> and effects, against unreasonable searches and seizures, shall not be
> violated, and no warrants shall issue, but upon probable cause,
> supported by oath or affirmation, and particularly describing the
> place to be searched, and the persons or things to be seized. The right
> of the people to be secure against unreasonable interception of

> telephone and telegraph communications shall not be violated, and ex parte orders or warrants shall issue only upon oath or affirmation that there is reasonable ground to believe that evidence of crime may be thus obtained, and identifying the particular means of communication, and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof.

477.    As set forth in this Complaint, the City and DOC violated the rights guaranteed to Pearson by Article 1, Section 12 of the New York Constitution.

478.    The City and DOC violated the New York Constitution by allowing and permitting their employees, agents, and/or servants to inflict bodily harm upon Pearson.

479.    These inhumane and cruel conditions and treatment violate the rights guaranteed to Pearson under the Constitution of New York, and he is entitled to and seeks compensation from the City and DOC for violating his rights afforded thereunder.

### COUNT XIII - Negligence
(New York Law against the City and DOC)

480.    Plaintiff Lester Pearson repeats and reiterates each of the aforementioned paragraphs as if more fully set forth below.

481.    On July 23, 2020, the City and DOC took physical custody of Pearson, wherein they voluntarily assumed care, custody and control of him and and took upon themselves the responsibility to feed him, house him, care for him, provide him a safe place to live, provide him with security, clothe him and provide him necessary medical and dental care.

482.    While in the care, custody and control of the City and DOC, Pearson had no right to make an appointment with a doctor or dentist, to select his living quarters, to go to a store to buy food, clothes or cleaning supplies, to defend himself from attacks, or to go to the laundry and wash his clothes.

483.    While Pearson was in the care, custody and control of the City and DOC, they had a duty to provide him with clean water for showers, clean water for drinking, eatable food,

fruits, clothes, cleaning supplies, toothpaste, toothbrushes, sneakers, barbershop services, access to a law library, clean and sanitary spaces to live, quarters to live free of insects, rodents, vermin and the like, safe housing free of gang activity, reasonable and necessary medical care, and employees unaffiliated with gangs.

484. The City and DOC owed Pearson a duty of protection while he was in their custody and control, but failed to protect him from assaults and battery committed against him by other inmates incarcerated at Rikers and by their employees at Rikers.

485. The City and DOC took upon themselves the above responsibilities to Pearson and owed him a duty to exercise their responsibilities properly and safely.

486. The City and DOC violated each and every duty owed to Pearson for his health and safety while in their care, custody and control. As a result of the City's and DOC's breach of their duties, Pearson has been harmed and suffered damages.

487. In assuming physical custody of Pearson, the City and DOC undertook a duty of care to, inter alia, safeguard him from harm. They violated the duty of care they owed to Pearson by allowing and permitting their employees, agents, and/or servants to inflict bodily harm upon Pearson.

488. The City's and DOC's duty of care to Pearson was a direct and proximate cause and a substantial factor in bringing about his damages set forth herein, and, as a result, they are liable to Pearson.

489. Pearson is entitled to and seeks compensation from the City and DOC for violating Pearson's aforesaid rights by and through their negligent conduct in violating their duties and responsibilities of care owed to Pearson while under their care, custody and control. He demands economic harm, compensatory damages, emotional distress, pain and suffering, punitive damages, reasonable attorney fees, costs and expenses incurred since

February 2000 and to be incurred in this action, interest, and such further and equitable relief as the Court may deem just and proper.

490. The City's and DOC's aforesaid actions interfered with Pearson's person and property, and caused him to suffer and to continue to suffer severe irreparable harm for which he is entitled to judgment against them for compensatory damages, emotional distress, pain and suffering, punitive damages, reasonable attorney fees and costs, interest, and such further and equitable relief as the Court may deem just and proper.

491. Pearson seeks damages in excess of $100,000,000.

## **RELIEF REQUESTED**

**WHEREFORE,** Pearson prayers for relief and demands judgment in his favor and against the City, NYPD, DOC, DA Clark, ADA Scaccia, Detective Dodd, the Estate of Detective Tracy, Investigator Rivera and Doe Defendants on all claims asserted in Counts I through XIII in this Complaint, in an amount in excess of $100,000,000 for his economic harm, compensatory damages, emotional distress, pain and suffering, mental anguish, punitive damages, reasonable attorney fees, costs and expenses incurred since February 2000 and to be incurred in this action, interest, and such further and equitable relief as the Court may deem just and proper.

Dated:     Forest Hills, New York
            December 19, 2022

                         Respectfully Submitted,

                         /s David Broderick

                         DAVID J. BRODERICK
                         DAVID J BRODERICK LLC
                         Attorney for the Plaintiff
                         LESTER PEARSON
                         70-20 Austin Street, Suite 107
                         Forest Hills, NY 11375
                         Phone:     7188300700
                         Fax:       FAX:718-228-4271

BRODERICKLEGAL@GMAIL.COM

TO:

THE CITY OF NEW YORK
C/O CORPORATION COUNSEL FOR THE CITY OF NEW YORK
100 Church Street
New York, New York 10007

THE NEW YORK CITY DEPARTMENT OF CORRECTIONS
C/O CORPORATION COUNSEL FOR THE CITY OF NEW YORK
100 Church Street
New York, New York 10007

THE NEW YORK CITY POLICE DEPARTMENT
C/O CORPORATION COUNSEL FOR THE CITY OF NEW YORK
100 Church Street
New York, New York 10007

BRONX COUNTY DISTRICT ATTORNEY DARCEL CLARK
IN HIS PERSONAL AND PROFESSIONAL CAPACITY,
C/O Bronx District Attorney's Office
198 E 161ST STREET
BRONX, NEW YORK 10451

BRONX COUNTY ASSISTANT DISTRICT ATTORNEY CHRISTINE SCACCIA
IN HER PERSONAL AND PROFESSIONAL CAPACITY,
C/O Bronx District Attorney's Office
198 E 161ST STREET
BRONX, NEW YORK 10451

DETECTIVE JOHN DODD IN HIS PERSONAL AND PROFESSIONAL CAPACITY,
ESTATE OF DETECTIVE KEVIN TRACY IN HIS PERONAL AND PROFESSIONAL
CAPACTIY,
C/O THE NEW YORK CITY POLICE DEPARTMENT
C/O CORPORATION COUNSEL FOR THE CITY OF NEW YORK
100 Church Street
New York, New York 10007


INVESTIGATOR DANIEL RIVERA IN HIS PROFESSIONAL AND PERSONAL
CAPACITY C/O THE NEW YORK CITY POLICE DEPARTMENT
C/O CORPORATION COUNSEL FOR THE CITY OF NEW YORK
100 Church Street
New York, New York 10007

, and

JOHN DOES (1-50) IN THEIR PERSONAL AND PROFESSIONAL CAPACITIES,
C/O THE NEW YORK CITY POLICE DEPARTMENT
C/O CORPORATION COUNSEL FOR THE CITY OF NEW YORK
100 Church Street
New York, New York 10007