UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————X

LESTER PEARSON,

        Plaintiff,

    -against-

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, NEW YORK CITY DEPARTMENT OF
CORRECTIONS, BRONX COUNTY DISTRICT
ATTORNEY DARCEL CLARK IN HER PERSONAL
AND PROFESSIONAL CAPACITY, BRONX COUNTY
ASSISTANT DISTRICT ATTORNEY CHRISTINE
SCACCIA IN HER PERSONAL AND PROFESSIONAL
CAPACITY, DETECTIVE JOHN DODD IN HIS
PERSONAL AND PROFESSIONAL CAPACITY,
ESTATE OF DETECTIVE KEVIN TRACY IN HIS
PERSONAL AND PROFESSIONAL CAPACITY,
INVESTIGATOR DANIEL RIVERA IN HIS PERSONAL
AND PROFESSIONAL CAPACITY, AND JOHN DOES
(1-50) IN THEIR PERSONAL AND PROFESSIONAL
CAPACITIES,

        Defendants.

—————————————————————————X

22-cv-10669 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/26/24

## ORDER ON MOTIONS TO DISMISS

    Before the Court are multiple motions to dismiss the instant case. For the reasons discussed

below, the Court dismisses all Plaintiff's Claims, with the exception of his *Monell* claim against

the City of New York relating to the conditions of his confinement at Rikers. Additionally, the

Court grants Plaintiff 30 days' leave to replead certain of his claims related to his 2020-2022

incarceration at Rikers.

1

I.    **Facts**

The following facts are taken from the Amended Complaint ("AC") (Dkt. No. 55). On the pending motions to dismiss, the Court is "constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (*citing Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006)). However, even read under such a liberal standard, there are a number of factual holes and irreconcilable logical inconsistencies in Pearson's allegations that render this particular complaint almost impossible to understand. Moreover, the complaint consists primarily of factual allegations that span more than two decades and that have no relevance to the claims actually asserted in this lawsuit. The court will recount the *relevant* allegations of fact below, with as much clarity as the complaint allows. I note that many of the allegations of fact, including all of the most scurrilous ones (such as bribery of a witness by an Assistant District Attorney) are alleged in conclusory fashion without any factual support whatsoever.

On December 29, 1999, Lester Pearson and Debbie Stevenson – Pearson's girlfriend – entered a bodega in the Bronx. While the couple was inside, an intoxicated off-duty, undercover New York Police Department ("NYPD") officer, Vincent Ling, accosted Pearson. The two men had a verbal confrontation which escalated into Ling's jamming a gun against Pearson's face. Ling – motivated by the fact that he and Pearson "did not get along" -- was allegedly hoping to provoke Pearson into a physical altercation. (AC at ¶ 46). However, Pearson declined to fight Ling, and Pearson and Stevenson exited the Bodega instead. Ling and his "friend" then followed Pearson and Stevenson outside and began firing their weapons at the couple. *Id.* at ¶ 48. Pearson asserts that he and Stevenson were unarmed, but Ling was somehow shot in the abdomen and Stevenson

was shot in the thigh. Who shot them is not alleged. Pearson, fearing for his safety, fled the scene and temporarily went into hiding.

After the shooting, Ling told the NYPD that Pearson had shot him. Pearson alleges that the NYPD soon discovered that Ling was lying, but still falsely claimed that Pearson had provoked and shot Ling.

Around this same time, NYPD Detectives John Dodd and Kevin Tracy[1], various "John Does" and Bronx Assistant District Attorney Christine Scaccia[2] allegedly conspired together to prosecute Pearson for a separate crime – specifically, the 1997 murder of a man named Kuwuan Burgess (the "Burgess Case"). After the Ling shooting, Dodd and Tracy allegedly tried (and failed) to coerce multiple witnesses to say that Pearson had shot Ling. Around this same time, ADA Scaccia allegedly threatened to prosecute a man named Daniel Garcia for the "attempted murder of a pizza delivery man" if Garcia did not testify that he saw Pearson kill Burgess. (AC at ¶102). The NYPD Defendants also allegedly beat Garcia in order to coerce him into testifying against Pearson. *Id.*

On February 2, 2000, Pearson surrendered to the Bronx District Attorney's Office (the "Bronx DA") and the NYPD. (AC at ¶ 81). While in custody, Scaccia questioned Pearson, who told her that he had not shot Ling, and said that he would not provide them with information about Ling's "illegal activities." *Id.* This frustrated Scaccia, so she told Pearson that if he did not cooperate in the investigation of Ling, Pearson would be charged for the Burgess murder. (AC at ¶ 88). Pearson refused to cooperate. Scaccia subsequently charged Pearson with Murder in the Second Degree and related crimes in connection with the Burgess Case.

---

[1] Together, with NYPD Investigator Daniel Rivera and John Doe NYPD officers, the "NYPD Defendants."
[2] Together, with Darcel Clark, the "DA Defendants."

On February 7, 2000, Scaccia convened a grand jury to obtain an indictment against Pearson for the Burgess murder. Scaccia called Garcia as an eyewitness, and Garcia testified that he saw Pearson kill Burgess. The grand jury returned an indictment on March 3, 2000, after which the Bronx DA filed a criminal complaint against Pearson for the Burgess murder.

In January 2002, the Burgess Case proceeded to a jury trial, where Garcia testified, as he had in the grand jury, that he saw Pearson kill Burgess. Nonetheless, on February 1, 2002, the jury voted 11-1 for acquittal; when the jury could not reach a verdict the court declared a mistrial. Pearson alleges that Scaccia bribed the lone dissenting juror in order to secure that juror's guilty vote.

On June 11, 2003, the Bronx Supreme Court reduced Pearson's bail, allowed him to relocate to Florida, and otherwise excused him from appearing until the Bronx DA indicated it was ready to retry him. From 2003-2009, the Burgess Case was called numerous times in the Bronx Supreme Court, but Pearson– and most of the time his counsel – were not present for the proceedings. Pearson's absences were excused, as the Bronx DA never "stated ready" for trial during those six years. (AC at ¶ 3).

At some point between 2003-2005, Plaintiff relocated to Louisiana. There he was arrested and incarcerated, in August 2005 and again in May 2006. *Id.*, ex. 8 at p.4. At least one of these arrests was for "distributing a large amount of marihuana." *Id.*, ex. 3 at p.2.

On August 6, 2007, Pearson skipped bail in Louisiana. *Id.*, ex. 5 at p.4. On October 3, 2008, after learning Pearson was a fugitive in another state, the Bronx DA sought a bench warrant for his arrest. *Id.* at 3. Justice Mogulescu of the Bronx Supreme Court initially declined to issue the warrant, but directed that Pearson appear in court on the Bronx County case on multiple

occasions. He never appeared, and Justice Mogulescu finally signed a bench warrant for Pearson's arrest on April 14, 2009.

Almost ten years later, on March 15, 2019, the United States Marshals finally apprehended Pearson in Florida. At the time of his arrest, Pearson was wanted on multiple warrants including but not limited to the April 2009 New York bench warrant. *Id.* at ¶ 174; ex. 3 at p.5. According to the Marshals' arrest report, Pearson "was wanted for Manslaughter in New York and aggravated Battery on a LEO/Correction Officer in Louisiana. He was also wanted in Louisiana for possessing 50 [sic] of Marijuana. The US Marshals had been attempting to locate and arrest him for over 10 years." (AC at ¶ 175).

Pearson was initially extradited to Louisiana and held pending prosecution. In May 2020, Pearson pled guilty in Louisiana on his marijuana possession charge.  He was then extradited to New York State on July 23, 2020 – at the height of the pandemic – to face retrial in the Burgess Case. *Id.* at ¶ 183; ex. 8 at p.5.

Needless to say, the Burgess retrial never happened. After Pearson's extradition to New York, the case languished for two years; the Bronx DA ignored multiple discovery orders and repeatedly asked to adjourn the case. (AC, ex. 3 at pp.1-2). On July 8, 2022, Justice Fabrizio of the Bronx Supreme Court told the parties that, "In terms of delay since defendant's apprehension in Florida, this Court's main concern is that that People have not provided discovery to current counsel, have not filed a certificate of discovery compliance . . . and have not and apparently cannot state ready for trial." Ex. 3 at p.1. Justice Fabrizio admonished the Bronx DA, stating, "that the People could not certify their compliance with their discovery obligations because they said that their files were in storage and they had not received them, and that nothing had in fact been done other than adjourn the case." *Id.* The warning went for naught, so the Burgess Case was

dismissed on speedy trial grounds on September 8, 2022. This was over twenty years since the mistrial, and nearly twenty-five years since the murder of Kuwuan Burgess.

## II.    **Procedural History**

Pearson commenced this action on December 19, 2022. (Dkt. No. 1). The original complaint was 108 pages long, with 103 pages of exhibits attached. *Id.*

On April 17, 2023, Defendants Christine Scaccia, the City of New York, and Darcel Clark filed a motion to dismiss the Complaint as against them. (Dkt. No. 51). On May 8, 2023, rather than respond to the motions, Pearson filed an amended complaint (the "First Amended Complaint" or "Amended Complaint"). (Dkt. No. 55). The First Amended Complaint was now 158 pages long, with the same exhibits attached as Pearson's first complaint. *Id.*

On May 19, 2023, Pearson filed yet another amended complaint (the "Second Amended Complaint"), incorrectly styled as his "First Amended Complaint." (Dkt. No. 61). This new complaint was one page shorter than its predecessor but appended to it were an additional 255 pages of exhibits. Pearson did not move for leave to file this Second Amended Complaint, and having amended once as of right he could not amend again without leave of court. Fed. R. Civ. P. 15.

That said, Pearson's First Amended Complaint – which is the operative complaint as of this date – is in all material respects identical to his Second Amended Complaint. The Complaints assert the same claims, and the court does not see any substantive changes between these two pleadings. The only discernable change between the two filings is the addition of Pearson's 152-page notice of claim as an exhibit to his pleading. Since the notice of claim merely recites the allegations in the complaint, it adds nothing of substance to the pleading. The only relevant fact that this exhibit establishes is the date of Pearson's notice of claim, which is not in dispute. There

is, therefore, no reason to accept yet another prolix amended complaint with even more paper appended to it. The court will deem Pearson to have moved for leave to amend in order to file the Second Amended Complaint. I deny the motion. My ruling addresses the First Amended Complaint (the "Amended Complaint").

The Amended Complaint asserts the following causes of action: (1) false arrest and false imprisonment claims under Section 1983 and New York and Florida Law against the City, the NYPD, the NYPD Defendants, the DA Defendants, and John Does; (2) malicious prosecution, civil conspiracy, and abuse of process claims under Section 1983 and New York law against the same parties; (3) intentional infliction of emotional duress under New York and Florida law against the same parties; (4) "inhumane and cruel treatment" under Section 1983 against the City and DOC; and (5) "Lack of Medical Care", negligence, and various state constitutional claims under New York law against the City and DOC. The first three sets of claims relate to Pearson's prosecution for the Burgess murder; the last two address the conditions of his confinement after he was extradited to New York to stand trial a second time for the Burgess murder.

On June 5, 2023, the DA Defendants and City of New York filed a second motion to dismiss the Amended Complaint on their behalf. Defendant Daniel Rivera filed his own motion to dismiss on July 21, 2023, and Defendant John Dodd filed one as well on November 8, 2023.

All of plaintiff's claims relating to the Burgess murder prosecution are dismissed with prejudice. The federal conditions of confinement claims asserted under § 1983 and state law negligence claims are also dismissed, because they are inadequately pleaded; however, some of them are dismissed with leave to replead, as long as plaintiff is able to do so before the statute of limitations expires (which is imminent). The corresponding state Constitutional claims are dismissed with prejudice.

### III.    <u>Legal Standard for A Motion to Dismiss</u>

In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To achieve "facial plausibility," a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). The plaintiff must allege facts that "nudge[ ] [plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Further, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). A plaintiff must allege more than "conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights." *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (collecting cases).

Additionally, "The Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (*quoting* Fed. R. Civ. P. 8(a)(2)). Each averment must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quotations omitted). Obviously, Pearson's Amended Complaint runs afoul of the short plain statement rule.

Complaints that rely on "group pleading" and "fail[ ] to differentiate" which defendant was involved in particular allegedly unlawful conduct do not state a claim. *Atuahene v. City of*

*Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). "It is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) (quotation omitted). Federal Rule of Civil Procedure 8(a) "is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." *Monterey*, 531 F. Supp. 3d at 728 (quotation omitted); *see also Atuahene*, 10 F. App'x at 34 (internal quotation omitted) ("Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.").

Pearson's complaint raises a number of sufficiency concerns. It is among the most poorly drafted pleadings I have ever seen – indeed, so poorly drafted that the court has great difficulty believing it was prepared by an attorney, although one has filed a notice of appearance. The Amended Complaint is entirely lacking in specificity. Pearson does not identify which facts support which of his asserted claims, and indiscriminately lumps all – or the majority of – defendants together, identifying them as miscreants without specifying what each one did that relates to any particular claim. The redundancy and ambiguity of the plaintiff's factual pleading makes it difficult to discern whether the allegations are plausible.

Plaintiff's reliance on group pleading and confusing and sometimes contradictory factual allegations has placed an immense and completely unnecessary burden on both defendants and this court. *Cannon v. NYS Comm'r of Soc. Servs.*, No. 19-CV-6493 (CM), 2019 WL 3743975, at *2 (S.D.N.Y. Aug. 7, 2019) (failure to comply with Rule 8 presents "far too [heavy a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [a plaintiff's] claims." (quotation omitted)). Moreover,

because plaintiff is not proceeding *pro se*, this pleading is not entitled to any special solicitude – and I refuse to give it any. *See McClean v. Cty. of Westchester*, No. 17-CV-4492 (CS), 2018 WL 6329420, at *7 (S.D.N.Y. Dec. 3, 2018) ("Were Plaintiff pro se and entitled to 'special solicitude,' the hours spent unraveling his claims and arguments would have been appropriate. But the Court should not have to make such efforts when the plaintiff is represented by counsel") (citation omitted).[3]

I have done my best to decipher Pearson's claims and draw all reasonable inferences to which the plaintiff is entitled. I am not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (*quoting Iqbal*, 556 U.S. at 678). And the pleading is replete with those.

## IV.    Legal Standard for Statute of Limitations

Pearson brings claims relating to conduct that extends as far back as 1999. With the exception of those claims arising out of Pearson's most recent incarceration at Rikers, all of these claims ***should*** be time barred. And most of them are. However, due to the incredible delay in the Bronx DA's prosecution of the Burgess Case – which was not dismissed until 2022 – at least his malicious prosecution claim is not.

### A.    *Statute of Limitations for Federal Law Claims*

The statute of limitations for § 1983 claims filed in federal court in New York is determined by New York State's statute of limitations. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (*citing Owens v. Okure*, 488 U.S. 235, 251 (1989)). In New York, the applicable statute of limitations is three years. NY CPLR § 214 (2022); *Owens*, 488 U.S. at 251.

---

[3] Frankly, this complaint looks very much like a pro se complaint to which an attorney – perhaps a friend of the plaintiff, I don't know – appended his name as a favor. It will be treated as a complaint drafted by a lawyer.

However, while the applicable limitations period is determined by state law, the accrual date "is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

### B. *Statute of Limitations for State Law Claims*

Under New York law, the statute of limitations for intentional torts is one year. N.Y. C.P.L.R. § 215(3). Additionally, the filing of a notice of claim is a condition precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees. N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1); *see also Taylor v. Quayyum*, No. 1:16-CV-1143-GHW, 2023 WL 5293383, at *11 (S.D.N.Y. Aug. 17, 2023) (*citing C.S.A. Contracting Corp. v. N.Y. City Sch. Constr. Auth.*, 5 N.Y.3d 189 (2005)). "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (*quoting Fincher v. Cty. Of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997)). "The notice of claim must provide, among other things, the nature of the claim and ***must be filed within ninety days after the claim arises***." *Rose v. Cty. Of Nassau*, 904 F. Supp. 2d 244, 247–48 (E.D.N.Y. 2012) (citing N.Y. Gen. Mun. Law § 50-e) (emphasis added). "'Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action' for lack of subject-matter jurisdiction." *Tulino v. City of New York*, No. 15-cv-7106 (JMF), 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (*quoting AT&T Co. v.N.Y.C. Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases)); *see also See Morales v. City of New York*, No. 14 Civ. 7253, 2016 WL 9651130, at *6 (S.D.N.Y. Aug. 9, 2016) ("[F]ederal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim.").

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy*, 164 F.3d at 793.

However, the notice-of-claim requirement does not apply to federal claims brought under § 1983. *See, e.g., Bordeau v. Metro. Transit Auth.*, No. 06-cv-6781-DLI, 2008 WL 4455590, at *1 (E.D.N.Y. Sept. 30, 2008).

Pearson filed his Notice of Claim on October 26, 2022. (AC at ¶ 42). His state law claims that accrued earlier than 90 days prior to that date – July 28, 2022 – violate the notice of claim rule and cannot be heard in this court.

## V.    Legal Standard for Absolute Immunity

The doctrine of "absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). The doctrine "creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995). A prosecutor asserting immunity bears the burden of showing that it applies. *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (citing *Burns v. Reed*, 500 U.S. 478, 486-87 (1991)).

Immunity may be asserted as a defense on a 12(b)(6) motion where "the facts supporting the defense appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (*citing Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1998)); *see also Deronette v. City of New York*, No. 05 CV 5275 SJ, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007). In asserting an immunity defense at the pleading stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

In determining whether a prosecutor is entitled to absolute immunity, courts apply a "functional" test, "looking to the function being performed rather than to the office or identity of the defendant." *Hill*, 45 F.3d at 660 (*citing Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Under the functional test, prosecutors "are absolutely immune from claims arising from conduct 'intimately associated with the judicial phase of the criminal process.'" *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 357 (2d Cir. 2004) (*quoting Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). The functional test is objective. *Hill*, 45 F.3d at 662. Courts must "view the relevant circumstances as would a reasonable official in the claimant's position," *Giraldo*, 694 F.3d at 165-66 (collecting cases), and consider "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Id.* at 166. "[A] prosecutor's function depends chiefly on whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate." *Warney v. Monroe County*, 587 F.3d 113, 123 (2d Cir. 2009). Absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley*, 509 U.S. at 273.

## VI.    **Legal Standard for 1983 Claims**

A municipality cannot be held liable for the conduct of its officials in a § 1983 suit under a theory of *respondeat superior*. Rather, such liability can only attach where the action underlying the plaintiff's claim was carried out pursuant to an official policy or custom of the municipality (*Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91 (1978)), or where a municipal officer implements a mandated course of action that was deliberately chosen from various alternatives by officers responsible for establishing final policy with respect to the subject matter

in question. *City of Canton v. Harris*, 489 U.S. 378 (1989) (*citing Pembauer v. City of Cincinnati, et al.*, 475 U.S. 469 (1986)).

However, a municipality can be held liable under a respondeat superior theory for claims asserted under state law. *See, e.g., Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 502 (N.D.N.Y. 2017)

**VII.**   **Pearson's False Arrest and False Imprisonment Claims Are Dismissed**

   *A. Pearson's False Arrest and False Imprisonment Claims from His 2000 Arrest Are Time Barred*

Pearson's first cause of action alleges false arrest and imprisonment claims under both federal and New York state law. This claim relates to Pearson's 2000 arrest in connection with the Burgess Case and the Ling shooting and his incarceration following that arrest. (AC ¶¶ 292-301). He asserts these claims against the NYPD Defendants, the DA Defendants, and the City.

In his opposition papers, Pearson tries to reframe his allegations, asserting that his claims for false arrest and false imprisonment do not include a cause of action related to this 2000 arrest and instead relate only to (1) his arrest in Florida on March 15, 2019; (2) his imprisonment in Florida from March 15, 2019 to September 2, 2019; (3) his extradition from Florida to New York on July 23, 2020; and (4) his imprisonment in New York from July 23, 2020 until September 8, 2022. But that is not what the complaint alleges. And it is the pleading that governs, since a party cannot amend his allegations in response to a motion to dismiss. *Cambridge Capital LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 453 n. 11 (S.D.N.Y. 2021).

Defendants moved to dismiss the first cause of action related to Pearson's 2000 arrest as time barred. We look at this first from the perspective of his federal law claims and then his state law claims.

   i.   Federal Law

A claim for false arrest or false imprisonment under § 1983 accrues "at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007). "[T]he statute of limitations begins to run when the alleged false imprisonment ends ... [and] the victim becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Lynch v. Suffolk County Police Dept., Inc.*, 348 Fed. App'x 672, 675 (2d Cir. 2009). Pearson's was arrested in February 2000 and arraigned that same month. Accordingly, Pearson's federal claims are well outside the 3-year statute of limitations period and are time barred.

### ii.   New York State Law

"New York State common-law claims for false arrest and false imprisonment accrue on the date that the plaintiff is released from custody." *McQueen v. City of New York*, 209 A.D.3d 469, 470 (2022); *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). Release on bail constitutes a termination of confinement. *Mejia v. City of New York*, 119 F. Supp. 2d 232, 284 (E.D.N.Y. 2000). Pearson was released from confinement after he was released on bail following the Burgess mistrial, which was in 2002. Accordingly, Pearson's New York state law claims are time barred under both the one-year statute of limitations for intentional torts and the ninety day notice of claim requirement.

Moreover, Pearson's first cause of action – under both Federal and State law – is insufficiently pled. The Amended Complaint does not allege which of the defendants arrested him without probable cause on February 2, 2000.

The first cause of action, which asserts claims arising out of Pearson's 2000 arrest and incarceration, is dismissed with prejudice.

### B.   *Pearson's False Arrest and False Imprisonment Claims Arising from His Florida Arrest and Incarceration Are Dismissed*

Plaintiff's second cause of action alleges false arrest and false imprisonment under federal law and Florida state law. This claim relates to his 2019 arrest by US Marshals in Florida and his imprisonment in Florida thereafter. He asserts these claims against the DA Defendants and the City.

  i. <u>Federal Law</u>

This claim is dismissed. The arresting officers (the United States Marshals) are not named as defendants to this action. Rather, it appears that the plaintiff is alleging that he was falsely arrested because the Bronx District Attorneys obtained a bench warrant for his arrest back in 2009, which was finally executed (along with several other warrants) in 2019. But if this stated a claim of any sort it would be for abuse of process – not false arrest or imprisonment – because the Bronx DA neither arrested nor imprisoned Pearson in Florida in 2019. Florida and the federal authorities did so.

If the DA Defendants had any arguable involvement with Pearson's 2019 arrest and subsequent incarceration in Florida (they did not), it was by virtue of their request for the issuance of a bench warrant issued for Pearson's arrest. Scaccia and Clark asked for the warrant after they learned Pearson was a fugitive in Louisiana. Making such a request falls squarely within the prosecutorial function, so the ADAs enjoy absolute immunity for any arrest or ensuing imprisonment. Moreover, on the facts pleaded, the ADAs could not be sued as a matter of fact because the court did not grant their application. Instead, Justice Mogulescu ordered plaintiff to appear in court on the Burgess case, in which his presence had been long excused. When Pearson did not show up the judge issued the warrant for failure to appear – not pursuant to any application made by the DA Defendants, but on his own initiative.

To the extent that the City is alleged to be a defendant on the second cause of action under *Monell*, Pearson's claim fails because there was no underlying constitutional violation, which is a predicate to *Monell* "custom and policy" liability. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91 (1978). And in any event the pleading alleges not a single fact from which one could infer that Parson was arrested in Florida because of any unconstitutional New York City custom and policy of obtaining bench warrants for defendants who fail to appear in court as ordered. *See Twombly*, 550 U.S. at 570. He was arrested in Florida on a Louisiana warrant by federal agents who had been tracking him for a decade.

Finally, these claims are also time barred as outside the 3-year statute of limitations. Pearson became "detained pursuant to legal process" after he was arrested and arraigned in Florida in March 2019. *See Lynch*, 348 Fed. App'x at 675.

    ii.   <u>Florida State Law</u>

Any state law claim that Pearson might be trying to assert under Florida law against the DA Defendants or the City is also barred by virtue of his failure to file a Notice of Claim within ninety days of his allegedly illegal arrest. Once Pearson was arrested in Florida (on March 15, 2019), his cause of action under Florida law for false arrest and false imprisonment began to accrue. *See, e.g.*, *Hitchmon v. United States*, 585 F. Supp. 256, 260 (S.D. Fla. 1984); *Leatherwood v. City of Key West*, 347 So.2d 441 (Fla.App.1977), *cert. denied*, 358 So.2d 131 (Fla.1978); *Gordon v. City of Belle Glade*, 132 So.2d 449, 451–53 (Fla.App.1961).

Additionally, for the same reasons discussed *supra* with his federal claim, Pearson's Florida claim is barred as against the DA Defendants on absolute immunity grounds and as against the City for failure to adequately allege a *Monell* claim.

The second cause of action, which asserts claims arising out of Pearson's 2019 arrest and incarceration in Florida, is dismissed with prejudice.

### C. *Pearson's False Arrest Claims for His Extradition from Louisiana to New York Are Dismissed*

Plaintiff's third cause of action alleges false arrest under New York and federal law. He asserts these claims against the DA Defendants and the City. These claims arise out of his 2020 extradition from Louisiana to New York.

To the extent Pearson is trying to allege that his extradition was a "false arrest," he fails because extradition from one state to another is not an arrest. The only arrest touching on Pearson's extradition was his arrest in Louisiana by U.S. Marshals in 2019. So whether under federal or New York state law, Pearson has no false arrest claim to assert against anyone in New York.

Additionally, the DA Defendants' only involvement with this claim was by virtue of their extradition request. Scaccia and Clark asked for Pearson's extradition so that he could face retrial for the Burgess murder. Such a request falls squarely within the prosecutorial function, so the DA Defendants enjoy absolute immunity for their actions.

Finally, the *Monell* claim is dismissed for failure to plead an underlying constitutional violation or facts tending to show that his extradition was carried out pursuant to some unconstitutional "custom or policy" followed by the City. Obviously, Pearson's unique situation does not lend itself to such allegations.

The third cause of action, which asserts claims arising out of Pearson's 2020 extradition, is dismissed with prejudice.

### D. *Pearson's False Imprisonment Claims for His 2020-2022 New York Imprisonment Are Dismissed*

Plaintiff's fourth cause of action alleges false imprisonment under New York and federal law. He asserts these claims against the DA Defendants and the City. These claims arise out of Pearson's 2020-2022 incarceration at Rikers.

To the extent Pearson is contending that his incarceration in New York following his extradition constituted false imprisonment, the facts of his Amended Complaint bar his claim. Pearson was returned to New York on a failure to appear bench warrant. That alone gave the Bronx Supreme Court the right to remand him – which it did – on the underlying charge of murder. And that just brings us around to Pearson's first cause of action for false imprisonment on the Burgess murder charge, which, as explained *supra*, is time barred.

Moreover, this claim is also dismissed against the DA Defendants on absolute immunity grounds for the same reasons specified *supra* dismissing Pearson's extradition "false arrest" claim, and against the City for failure to plead a *Monell* violation.

The fourth cause of action, which asserts claims arising out of Pearson's 2020-2022 imprisonment, is dismissed with prejudice.

## VIII.   Pearson's Malicious Prosecution Claims Are Dismissed

Pearson's fifth cause of action alleges malicious prosecution under New York and federal law against the District Attorney Clark, ADA Scaccia, NYPD Detectives John Dodd and Kevin Tracy, and NYPD Investigator Daniel Rivera. The thrust of Pearson's claims is that these defendants maliciously prosecuted Pearson for the Burgess Case, beginning in 2000 and not ending until the case was finally dismissed on speedy trial grounds in 2022.

### A.   *State Law*

Under New York law, a plaintiff proceeding under a theory of malicious prosecution must allege special damages. *TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F.

Supp. 2d 253, 273–74 (E.D.N.Y. 2010) (*citing Wilhelmina Models, Inc. v. Fleisher*, 19 A.D.3d

267, 269 (1st Dep't 2005). "Special damages are specific and measurable losses which must be

alleged with sufficient particularity to identify actual losses and be related causally to the alleged

tortious acts." *Id.* (*citing Morea*, 2010 WL 475302, at *3). Unsurprisingly then, " '[r]ound numbers

and general allegations of dollar amounts are insufficient as special damages." *Id.* (*citing Daniels*

*v. Alvarado*, No. 03–CV–5832, 2004 WL 502561, at *7 (E.D.N.Y. Mar. 12, 2004)).

In this case, Pearson has only generally pled damages in an amount "in excess of

$100,000,000.00" for his state law malicious prosecution claim. (AC ¶ 433). He has not pleaded

any special damages. Accordingly, Pearson's state law malicious prosecution claims against all

defendants are dismissed.

### B. *Federal Law*

#### i.   The DA Defendants

Specifically, as against ADA Scaccia, Pearson alleges that, from 2000 - 2002, Bronx ADA

(1) coerced and induced Daniel Garcia to implicate Pearson before a grand jury and at trial in the

Burgess Case; (2) withheld exculpatory evidence from the grand jury; (3) mouthed answers to

witnesses and presented fabricated evidence during the Burgess trial; and (4) bribed a juror in the

Burgess trial by giving them City Housing vouchers. (AC at ¶¶ 112-20, 125, 129-37.) Pearson

contends that this conduct evidences malicious prosecution.

To the extent that this is alleged to support a malicious prosecution claim under either state

or federal law, the claim must be dismissed, because Scaccia is absolutely immune for the acts

alleged. She is accused of coercing a witness before the grand jury, withholding exculpatory

evidence, bribing a juror and misbehaving during the trial. Every bit of this conduct (assuming it

was actually committed -- and I hasten to add that not a single factual allegation in the complaint

supports any of what Pearson alleges in conclusory fashion) implicates a purely prosecutorial function. Absolute immunity extends to "the falsification of evidence and the coercion of witnesses." *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (*citing Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)). "Convincing witnesses to testify falsely is an advocacy-related action covered by absolute immunity." *Buari v. City of New York*, 530 F. Supp. 3d 356, 380 (S.D.N.Y. 2021) (*citing Cox v. City of New Rochelle*, No. 17-CV-8193 (KMK), 2019 WL 3778735, at *11 (S.D.N.Y. Aug. 12, 2019) (collecting cases)). "As much as the idea of a prosecutor conspiring to falsify evidence disturbs [the courts] we recognize that there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the performance of their duties." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). As a result, Scaccia is immune from suit for these alleged actions. *See, e.g., Taylor*, 640 F.2d at 452 (*citing Lee v. Willins*, 617 F.2d at 321-22); *Collins v. City of New York*, 923 F. Supp. 2d 462, 470, 472 (E.D.N.Y. 2013); *Moye v. City of New York*, No. 11 Civ. 316(PGG), 2012 U.S. Dist. LEXIS 94078, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012); *Urrego v. United States*, No. 00 CV 1203(CBA), 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005). As noted above, prosecutorial immunity is a very formidable obstacle.

As against District Attorney Clark, the only allegations against her pertain to the 2019 bench warrant that was obtained for Pearson's arrest. There are multiple defects with this claim, ranging from prosecutorial immunity to the fact that there is not a single allegation in the complaint tending to show that Darcel Clark herself – the District Attorney of Bronx County, not simply some Assistant District Attorney – had any personal involvement in obtaining the warrant.

ii.   Investigator Rivera

As against NYPD Investigator Daniel Rivera, the Amended Complaint does not make a single relevant factual allegation pertaining to this claim or to any of Pearson's claims. In fact,

Investigator Rivera's inclusion as a named defendant in this case is utterly nonsensical. The Amended Complaint's only specific factual allegations as to Investigator Rivera are: (1) that he sometimes attended and observed the Burgess trial; and (2) that Rivera once appeared on an episode of the television show "America's Most Wanted" and claimed Pearson had shot Detective Ling. Neither of these factual allegations have any relevance whatsoever to any of Pearson's claims. Accordingly, all claims against Rivera are dismissed with prejudice.

###### iii.    The City

Insofar as he sues the City under *Monell* for malicious prosecution, Pearson does not sufficiently allege that any of the defendants acted pursuant to an unconstitutional policy or custom, as is required for 1983 claims. Instead, Pearson only recites the conclusory statement that "all NYPD employees unlawfully acted under the City's and NYPD's policies, customs, practices and culture" and that "said NYPD employees engaged in their unlawful acts under the City/NYPD Policies which, as shown herein, have a causal connection to the deprivations of Pearson's constitutional and civil rights." *Id.* at ¶ 268. These bald assertions do not sufficiently plead *Monell* liability, since Pearson fails to allege what the NYPD Defendants did that was unconstitutional.

###### iv.    The NYPD Defendants

That leaves Pearson's federal malicious prosecution claim, which has been dismissed against the City, Inspector Rivera and the DA Defendants, but remains pending as against the remaining NYPD Defendants – Detectives Dodd and Tracy. The only alleged facts that could potentially underlie this claim are that Dodd and Tracy threatened and beat Daniel Garcia in order to convince him to falsely testify that he saw Pearson commit the Burgess murder. Pearson also alleges that Garcia was motivated to falsely testify based on Scaccia's threat to prosecute him for another unrelated murder.

Given that this alleged beating took place 23 years ago, one would imagine that it is time barred. However, a cause of action for malicious prosecution pursuant to § 1983 does not accrue "until the criminal proceedings have terminated in the plaintiff's favor." *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). The Burgess Case was not dismissed until September 8, 2022.

In order to state a claim for malicious prosecution under New York law, the plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against the plaintiff; (2) that the proceeding was terminated in the plaintiff's favor; (3) an absence of probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Savino v. City of New York*, 331 F.3d 63, 70 (2d Cir.2003). A malicious prosecution claim brought pursuant to Section 1983 requires the plaintiff to allege and prove the same elements as the state law claim, and, as an additional element of his claim, "some post-arraignment deprivation of liberty that rises to the level of a Constitutional violation." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir.1995). Being compelled to attend criminal proceedings suffices as a post-arraignment deprivation of liberty. *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir.2003).

"In an action brought against a law enforcement officer, 'a malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by police.'" *Breeden v. City of New York*, No. 09-CV-4995 ARR JMA, 2014 WL 173249, at *10 (E.D.N.Y. Jan. 13, 2014) (*quoting Hartman v. Moore*, 547 U.S. 250, 263 (2006)). "There is a presumption that a prosecutor exercises independent judgment in bringing a criminal case, thereby breaking any chain of causation between a police officer's conduct and the initiation of the proceeding." *Andrews v. Johnson*, No. 21-CV-8310 (LTS), 2022 WL 158538, at *4 (S.D.N.Y. Jan. 18, 2022), *appeal dismissed* (May 18, 2022) (*quoting Stukes v. City of New York*, No. 13-CV-6166, 2015 WL 1246542, at *9 (E.D.N.Y. Mar. 17, 2015) "Even if . . . defendants

could be considered to have forwarded information to prosecutors, or to have participated in the arrest of the plaintiff, they would not be subject to a malicious prosecution action 'in the absence of evidence that [they] misled or pressured the official who could be expected to exercise independent judgment.'" *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 458–59 (S.D.N.Y. 2009) (*quoting Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir.1999). "In general, once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution. [The] exception [is] in a situation where a police officer is accused of providing false information to a prosecutor that influences a decision whether to prosecute . . . ." *Douglas v. City of New York*, 595 F.Supp.2d 333, 342 (S.D.N.Y.2009)

Pearson fails to assert this first element of his malicious prosecution claim. Pearson does not allege that Dodd or Tracy "misled or pressured" Scaccia to charge Pearson with the Burgess murder. Nor does Pearson contradict the assumption that Scaccia was exercising her independent judgment in bringing those charges. In fact, Pearson avers exactly the opposite.

Specifically, Pearson alleges that Scaccia – together with Dodd and Tracy – falsified the relevant evidence, *i.e.*, Garcia's testimony. Scaccia allegedly did so by threatening Garcia with prosecution for another unrelated murder. According to Pearson, Scaccia coerced and coached Garcia to get him to testify against Pearson, thereby allowing the DA to bring charges against him before a grand jury, which indicted him. (AC at ¶ 33). Per the prolix complaint, the decision to arrest and charge Pearson with the Burgess was made by Scaccia alone. After Pearson turned himself in for the Ling incident, Scaccia was the only individual who questioned Pearson about the shooting and about Ling's "illegal activities.". During questioning, Scaccia informed Pearson

that if he did not cooperate in the investigation of Ling, she would charge Pearson with the Burgess murder. (AC at ¶ 88). It was only after Pearson refused to testify against Ling that Scaccia – allegedly frustrated that Pearson would not testify – ended the questioning and told Pearson that he was under arrest for the Burgess murder. Finally, it was Scaccia who allegedly presented Garcia's false testimony to the grand jury and at trial, in addition to the allegedly false testimony of another witness, whose testimony Scaccia – and not Dodd or Tracy – had allegedly coerced. (AC at ¶ 134).

Thus, nothing in the Amended Complaint alleges, or even suggests, that Scaccia brought changes against Pearson as a result of being misled or pressured by either Dodd or Tracy.

Accordingly, Pearson's federal malicious prosecution claims are dismissed as to the remaining defendants – Detectives Dodd and Tracy.

## IX.    Pearson's Abuse of Process Claims Are Dismissed

Pearson's sixth cause of action alleges abuse of process claims under federal and state law. The allegations underlying these claims mimic Pearson's malicious prosecution claims. Unsurprisingly, these claims suffer from the same issues, *i.e.*, the DA Defendants have absolute immunity for the acts underlying this claim, and Pearson's *Monell* action fails to state a claim.

### A.    *State Law*

Under New York law, Pearson's state law abuse of process claim fails. A plaintiff proceeding under a theory of abuse of process prosecution must allege special damages. *TADCO*, 700 F. Supp. 2d at 273–74 (*citing Morea v. Saywitz*, 09–CV–4410, 09–CV–3935, 2010 WL 475302, at *3 (E.D.N.Y. Feb. 8, 2010). However, Pearson has only generally pled damages in an amount of "in excess of $100,000,000.00" for his abuse of process claim. (AC ¶ 568).

Additionally, Pearson does not allege that any of the NYPD defendants issued process against Pearson, nor that they acted to obtain some collateral objective. Both elements are required for an abuse of process claim. *See PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 839 F.2d 42, 43 (2d Cir. 1988).

B. *Federal Law*

Finally, Pearson's federal abuse of process claim is also time barred. A § 1983 abuse of process claim "accrues at such time as the criminal process is set in motion—typically at arrest—against the plaintiff." *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 515 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19CIV11265ATRWL, 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022). "[A]ccrual of a cause of action for [1983] abuse of process need not await the termination of an action in claimant's favor." *Pinter v. City of New York*, 976 F. Supp. 2d 539, 570 (S.D.N.Y. 2013) (*quoting Cunningham v. State*, 53 N.Y.2d 851, 853 (1981). Pearson's arrest for the Burgess Murder was in 2000 and his federal claim is clearly time barred. Pearson's 2019 arrest is not a separate "criminal process" and does not constitute a separate claim. This abuse of process claim concerns the Burgess Case, a process that was still "in motion" in 2019.

Accordingly, Pearson's abuse of process claims are dismissed in their entirety.

**X.    Pearson's Intentional Infliction of Emotional Distress Claim Is Dismissed**

Pearson's seventh cause of action alleges intentional infliction of emotional distress under New York Law against all defendants. Pearson bases these claims on his 2000 arrest and trial for the Burgess murder, his 2019 arrest and imprisonment in Florida, and his 2020-2022 extradition to and incarceration in New York.

Pearson does not allege that any of the defendants individually caused the tort, but rather relies on group pleading to allege that the defendants have, over the course of 23 years, all

continually caused him harm in the form of his continued prosecution in the Burgess Case.[4] That alone defeats his claim. However, Pearson also does not allege any of the required elements of the tort. While the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

Moreover, most of the facts underlying this claim are also time barred by the statute of limitations and by the ninety day Notice of Claim requirement. In New York, claims for intentional infliction of emotional distress accrue on the date of injury. *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 391–92 (E.D.N.Y. 2014). "Section 215(3) of New York's C.P.L.R. imposes a one-year statute of limitations on claims of intentional infliction of emotional distress, and the limitations period begins to run on the date of injury." *Corrigan v. Town of Brookhaven*, No. CV224688GRBARL, 2023 WL 7003936, at *2 (E.D.N.Y. Oct. 24, 2023) (*quoting Romeo v. Aid to the Developmentally Disabled, Inc.*, No. 11-CV-6340 (JS), 2013 WL 1209098, at *7 (E.D.N.Y. Mar. 22, 2013)).

The only part of Pearson's claims that could even conceivably be read as timely would be those arising from Pearson's most recent incarceration at Rikers. However, the only defendants whose actions relate to Pearson's Rikers' incarceration are the DA Defendants, and their only relevant act was the 2019 request for extradition, which is time barred and covered by absolute immunity.

Nothing else in Pearson's complaint alleges a timely act to serve as a basis for his intentional infliction of emotional distress claim. His claims must have arisen within the ninety-day period preceding Pearson's claim notice date, *i.e.*, between July 28 - October 26, 2022.

---

[4] A claim rendered all the more ridiculous by the fact that Detective Dodd apparently retired from the NYPD in 2003 and Detective Tracy passed away in 2017.

However, Pearson does not include any relevant dates or specific facts within this claim and only alleges his claims in the most vague and general fashion, claiming that Defendants "caus[ed] him to be falsely imprisoned once gain [sic] against his will at Rikers" and "during which time they took away his freedom and liberty and left him to languish in prison while they never intended to retry him and did nothing at all to bring the case to trial . . . " (AC at ¶ 583). Without more, these allegations are untimely and fall well short of the standard of sufficiency needed to survive a motion to dismiss.

These claims are dismissed in their entirety.

## XI.   Pearson's Civil Conspiracy Claims Are Dismissed

Pearson's eighth cause of action alleges civil conspiracy claims under New York and federal law against all defendants. Specifically, Pearson alleges that the NYPD Defendants, DA Defendants, and various John Does formed a conspiracy in 2000 to prosecute Pearson for the Burgess murder and carried out the conspiracy over the course of 20 years as they attempted to prosecute the case.

### A.  *Federal Claims*

Pearson's federal conspiracy claims are time barred. § 1983 civil conspiracy claims – including conspiracies to violate an individual's civil rights – accrue "from the time of commission of the overt act alleged to have caused damages." *Allen v. Mattingly*, 10 cv 0667, 2011 WL 1261103, at *11 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 478 F. App'x 712 (2d Cir. 2012) (*quoting Chodos v. Fed. Bureau of Investigation*, 559 F. Supp. 69, 74 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 289 (2d Cir. 1982)). "Characterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as 'a single series of interlocking events' does not postpone accrual of claims based on individual wrongful acts." *Singleton v. City of New York*, 632 F.2d 185, 192

(2d Cir. 1980). "The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Id.* "To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Id.* Pearson's complaint alleges conspiratorial overt acts by the Defendants ranging all the way back to January 2000. Accordingly, Pearson's claims are well outside the statute of limitations.

   B. *State Law Claims*

Finally, there is no independent cause of action in New York for state civil conspiracy claims; there must be some underlying tort. *See, e.g., Troy-McKoy v. Mount Sinai Beth Israel*, 182 A.D.3d 524, 525 (2020). Since all of Pearson's other tort claims against the alleged conspirators have been dismissed, his conspiracy claims must be as well.

## XII.   Pearson's Remaining Claims are Improperly Joined

All of the claims discussed above relate, in one way or another, to Pearson's prosecution for the Burgess murder and to official conduct alleged to have violated his rights in connection therewith.

To those claims, Pearson has added unrelated claims concerning the conditions of his confinement at Rikers Island during the period from July 23, 2020 to September 8, 2022 – which is the period during which he was incarcerated at Rikers following his extradition from Louisiana. Such claims, as a rule, should be brought in a separate lawsuit, because, while tangentially related to the subject of the earlier claims, they do not arise out of the same conduct or course of conduct. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 160 (S.D.N.Y. 2009); *Vlamakis v. Ross*, 103 F.R.D. 398, 400 (S.D.N.Y.1984).

Pearson's claims about the conditions of his confinement at Rikers have nothing to do with his allegations about a 23-year long conspiracy to prosecute him for the Burgess murder. In the ordinary course the Rikers claims would be severed and dismissed without prejudice, so that they could be brought in a separate lawsuit. *See, e.g., Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 560 (S.D.N.Y. 2013); *Adams v. U.S. Bank, NA*, No. 12 CV 4640 KAM LB, 2013 WL 5437060, at *5 (E.D.N.Y. Sept. 27, 2013).

However, as the defendants have not objected to the improper joinder, I will deal with them now.

As a threshold matter, Pearson has named the Department of Corrections ("DOC") as a party to the remaining claims. The DOC is a city agency, and Plaintiff cannot sue an agency of the City of New York; he must sue the City. *See* N.Y. City Charter ch. 17, § 396 ; *see also Walker v. Shaw*, No. 08 CIV. 10043 (CM), 2010 WL 2541711, at *4 (S.D.N.Y. June 23, 2010) ("The overwhelming body of authority holds that DOC is not a suable entity") (quotation omitted). Therefore, to the extent that Pearson asserts his Rikers-based claims against the DOC, those claims are dismissed.

### XIII.  Pearson's Negligence Claims

Pearson ninth cause of action alleges negligence under New York law against the City based on his incarceration at Rikers from 2020-2022.

Under New York law, plaintiffs alleging negligence must establish "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 747 (S.D.N.Y. 2017) (*citing Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013)).

Pearson's negligence claim is so poorly pled that the court cannot even discern the basis for its assertion. It lists a ridiculous litany of "duties" that the City allegedly denied him, including

duties to provide Pearson with "sneakers", "fruits", "toothpaste", "to select his living quarters", and "to go to a store to buy food." (AC at ¶ 676). Obviously, this is the sort of nonsensical pleading one would expect from a *pro se* plaintiff – so it bears repeating that a lawyer actually signed off on this cause of action.

Additionally, to the extent the City violated any actual duties that they owed to the Plaintiff during his incarceration, any such violations that precede the 90-day notice of claim date are time barred. In New York, claims for negligence accrue on the date of injury. *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 337 (E.D.N.Y. 2012). The notice of claim was filed on October 26, 2022, which means any violations occurring prior to July 28, 2022 cannot be pursued under the common law of negligence. Additionally, since Pearson was released from Rikers on September 8, 2022, there is a roughly five-week period for any timely negligence claims regarding his incarceration. As Plaintiff does not specify a single date on which these "violations" occurred, he fails to establish that he has any timely negligence claim arising out of the conditions of his confinement.

However, amongst Pearson's prolix and incoherent negligence allegations, there appear to be two potentially viable claims (assuming they are timely, which I cannot tell from the text of the pleading).

First, Pearson claims that the City had a duty to "provide him necessary medical and dental care" while incarcerated, but that he "had no right to make an appointment with a doctor or dentist." (AC at ¶ 677).[5]

---

[5] Pearson also asserts a claim for "Lack of Medical Care" under Section 1983. However, some of the alleged facts underlying that claim are outside the Notice of Claim period. To the extent the same facts from Pearson's 1983 claim form the basis of his negligence claim, they must be timely, and Pearson must make that clear in any repleading.

Second, Pearson claims that the City "failed to protect [Pearson] from assaults and battery committed against him by other inmates incarcerated at Rikers and by their employees at Rikers." (AC at ¶ 674).

Pearson does not elaborate on either claim. He does not specify what dental condition he had that required attention or when he was denied "the right" to make a doctor's or dentist's appointment (I assume with the Rikers medical staff, since Plaintiff had no right during his incarceration to make appointments outside the facility where he was incarcerated). Plaintiff does allege that he suffered from a serious medical condition that required hospitalization (see below for more detail), but he specifically pleads that this occurred in 2021– more than 90 days before he filed his notice of claim. As a result, Plaintiff's state law claim with respect to this particular medical issue (albeit not any corresponding federal claim) is time barred.

Plaintiff also does not identify when he was assaulted by other inmates at Rikers or which City employees (presumably corrections officers) failed to protect him. Because of the 90 day notice of claim bar, any such incident that occurred prior to July 28, 2022 would be time-barred even if plaintiff had pleaded the necessary "who, what, when, where, and why."

However, it is at least theoretically possible that plaintiff has a cognizable common law negligence claim that is not time-barred on either or both of these grounds. And because the City can be held liable under a theory of *respondeat superior* for the conduct of its employees, the fact that plaintiff fails to plead that anything occurred pursuant to a policy or practice of the City, as would be required in order to assert a *Monell* claim under federal law, is irrelevant.

Accordingly, the Court grants Pearson leave to replead his negligence claim against the City, but ***only*** as to (1) Pearson's medical care or lack thereof while at Rikers; and (2) the City's failure to protect Pearson from attacks while at Rikers. Plaintiff's failure to plead facts making it

plausible that these things actually occurred will be fatal to repleading; so will his failure to identify when these things happened.

XIV. **Pearson's 1983 Claims Against the City for Alleged Constitutional Violations**

Pearson's tenth cause of action alleges § 1983 claims against the City for violations of Pearson's Eighth and Fourteenth Amendment rights while he was incarcerated at Rikers from 2020-2022.

At the outset, it should be noted that the Eighth Amendment does not apply to pre-trial detainees like Pearson. "'[T]he cruel and unusual punishment proscription of the Eighth Amendment to the Constitution does not apply,' because 'as a pre-trial detainee, [the plaintiff is] not being punished.' Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the . . . Due Process Clause of the Fourteenth Amendment if held in state custody." *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) *overruled on other grounds by Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) (*quoting Cuoco v. Mortisugu*, 222 F.3d 99, 106 (2d Cir. 2000)(internal citations omitted)).

Additionally, the only defendant on the tenth cause of action is the City of New York. Pearson does not assert these claims against any individuals – whether Rikers employees or otherwise. For Pearson to state a valid claim under 1983 against the City, he must allege that the actions underlying his claim were carried out pursuant to an official policy or custom of the municipality (*Monell*, 436 U.S. 690–91), or that a municipal officer implemented a mandated course of action that was deliberately chosen from various alternatives by officers responsible for establishing final policy with respect to the subject matter in question. *City of Canton*, 489 U.S. 378 (*citing Pembauer*, 475 U.S. 469). His complaint is deficient in this regard.

Any federal claim Pearson may be trying to assert has a three year statute of limitations, so things that might be time-barred under state negligence law could be viably actionable under

§1983. However, the pleading is simply incomprehensible. An attorney has signed and is responsible for this pleading, so the court is not required to analyze it to see whether it might possibly state some claim. Nonetheless, I have tried to figure out what among Pearson's laundry list of complaints might actually rise to the level of a federal constitutional violation. I have come up with these possibilities:

### A. *Misclassification as A Gang Member*

Pearson contends that he was misclassified as a gang member upon entry to Rikers, which subjected him to bodily harm at the hands of DOC guards and gang member inmates.

The underlying factual support for this claim is conflicting and nonsensical. Pearson first asserts that the Clark, Scaccia, Rivera, and Dodd directed the DOC to misclassify Pearson as a gang member. Pearson then claims that DOC employees misclassified him because former NYPD Commissioners Safir and O'Neill claimed, back in 2000, that Pearson had shot Ling, and because DOC employees had heard the same accusation on America's Most Wanted, in tweets, and "on the internet and the like." (AC at ¶ 599). Finally, Pearson claims that the DOC intentionally misclassified him because DOC employees wanted to assault him.[6]

Regardless of these pleading deficiencies, even under the most favorable of readings, Pearson has failed to state a claim. Pearson does not allege he was misclassified pursuant to any official custom or policy, but essentially as part and parcel of the "conspiracy" against him that was orchestrated out of the Bronx DA's Office. That alone defeats his *Monell* claim.

Additionally, "It is well settled that the administrative classification of prisoners does not give rise to a protectable liberty interest under the Due Process Clause." *Walker v. Shaw*, No. 08 CIV. 10043 (CM), 2010 WL 2541711, at *4 (S.D.N.Y. June 23, 2010) (collecting cases).

---

[6] How Pearson's misclassification has any logical relation to DOC employees' alleged desire to harm him is unclear.

Accordingly, Pearson's claims based on his misclassification as a gang member are dismissed with prejudice.

B. *Lack of Access to a Law Library*

Pearson's second claim alleges that the City failed to prove him with "meaningful access" to the law library as part of a general "policy to create an absolute defense to litigation." (AC at ¶¶ 231, 636). Pearson does not elaborate further on this claim, so the court cannot tell if Pearson means he was denied access to the law library altogether or only on specified occasions.

An inmate has the right to use a law library, but he has no right to use the library to the extent he might wish. "Prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quotation omitted). "The Constitution . . . does not require unlimited and unrestricted access to a law library at the demand of a prisoner [and] prison officials may place reasonable restrictions on inmates' use of facility law libraries as long as those restrictions do not interfere with inmates' access to the courts." *See Gamble v. City of New York ex rel. NYC Dep't of Corr.*, 2009 WL 3097239, at *6 (S.D.N.Y. Sept. 25, 2009) (internal citations and quotations omitted). An inmate's right to use a law library can be restricted if the restrictions employed are reasonably related to legitimate penological interests—namely, security. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Thornburgh v. Abbott*, 490 U.S. 401, 409, 413 (1989); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 210 (N.D.N.Y. 2015).

Plaintiff's pleading of this aspect of his claim is again utterly deficient. Pearson fails to allege when and/or how frequently he was denied access to the law library, let alone how the denial of law library access hindered his efforts to pursue legal challenges in his criminal case or

interfered with his access to the courts. As Pearson was at all times represented by counsel, who had access to his own legal research materials, the failure to plead how his defense was impacted renders Pearson's claim implausible. Plaintiff does not assert that the City's denial of law library access resulted in any actual injury to him, such as dismissal of a meritorious claim. *See Cancel v. Goord*, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001). Finally, Plaintiff does not allege any facts tending to show that he was denied library access on any occasion as a result of some illegitimate or non-penological interests.

Accordingly, Pearson fails to state a *Monell* claim against the City (the only Defendant) for lack of access to a law library. The pleading alleges not a single fact from which one could infer that Pearson was ever denied library access because of any unconstitutional custom and policy of "creat[ing] an absolute defense to litigation." This claim is dismissed with prejudice.

C.  *Failure to Provide Medical Care*

While incarcerated at Rikers, Pearson alleges that he was denied adequate medical care. This claim is notable because it is the only claim regarding the conditions of Pearson's confinement at Rikers that he pleads with any specificity. Pearson asserts as follows:

> In and around March 2021 or May 2021, [he] began experiencing severe respiratory issues and breathe issues, had severe cramps throughout his body, including in his chest and ribs, and severe pain in his lungs. Despite his repeated requests for medical care for his aforesaid medical issues, the City and DOC denied him timely and proper medical care and treatment. They finally took him to Jacobi Hospital by ambulance, but only after his medical condition became seriously dire. He remained hospitalized for 5 days and lost 40 pounds due to his serious illness.

(AC at ¶ 622). Pearson also alleges that DOC employees denied Pearson access to his required medications, but Pearson does not provide any factual details about what medication he was denied, by whom, and when.

Pearson's claim fails as against the City – the only defendant to this claim – because he does not allege his denial of medical care was pursuant to an official custom or policy. However, viewing Pearson's complaint in the most favorable light, he conceivably could have claim for deliberate indifference to his medical needs against Rikers employees who ignored his condition and allowed it to deteriorate. *See, e.g., Jones v. Sheriff of Suffolk Cnty.*, 518 F. Supp. 3d 650, 657 (E.D.N.Y. 2021). Accordingly, Pearson is granted leave to replead this claim. However, he must name the parties who were involved and give sufficient detail to allow the claim to survive a motion to dismiss under the *Twombly-Iqbal* standard.

### D. Conditions of His Confinement

Pearson also alleges multiple problems with the conditions of his confinement. Specifically Pearson alleges that – while incarcerated at Rikers – the City exposed him to: (1) extreme heat; (2) "chemical agents"; (3) unsanitary living conditions; (4) unsanitary and contaminated food and water; (5) inadequate access to hygiene; (5) prolonged periods of holding on inmate transportation; and (6) inadequate heating, cooling, and ventilation. Once again, Pearson does not provide any specifics about when these things occurred or who was responsible.

These types of allegations are familiar to federal judges who have on their dockets similar claims from others who were detained at Rikers during the relevant period. Some aspects of Pearson's claim (prolonged period on inmate transportation) do not state a claim against the City, but fairly read, the other aspects of Pearson's conditions of confinement claim suggests that the City had a policy of failing to provide inmates with safe and sanitary housing during his sojourn at Rikers. I will allow this claim to go forward against the City under *Monell.*

*Strip Searches*

Finally, Pearson also alleges that the DOC had a policy of "almost daily strip searches" of Rikers inmates, to which Pearson himself was subjected. Pearson alleges that these searches were done "in a sexualized manner" in front of female officers for the purposes of humiliating him. Pearson does not provide any further elaboration for this claim.

Pearson's strip search allegations, devoid of any particularity or factual detail, do not state a § 1983 claim. For challenges to strip searches in particular, courts in this Circuit require that a plaintiff allege that the defendants engaged in conduct far more egregious than that alleged by Pearson. *See, e.g., Vaughn v. Strickland*, No. 12 CIV. 2696 JPO, 2013 WL 3481413, at *3 (S.D.N.Y. July 11, 2013) (holding that "the alleged abuse caused by the visual cavity search was not severe enough to satisfy the objective seriousness requirement of Eighth Amendment analysis. As discussed, visual cavity searches have been consistently upheld as a legitimate penological restriction."); *see also Easley v. Pinnell*, No. 98–16536, 1999 WL 311390, at *1 (9th Cir. May 13, 1999) ("[V]isual anal cavity searches [of male prisoner] conducted within female prison officials' view does not amount to cruel and unusual punishment."); *Arnold v. Westchester Cty.*, No. 09 Civ. 3727, 2012 WL 336129, at *11 (S.D.N.Y. Feb. 3, 2012) (finding officer's instruction to inmate "to open his anus for a cavity inspection" did not violate the Eighth Amendment), *report and recommendation adopted*, 2012 WL 841484 (S.D.N.Y. Mar. 13, 2012).

Pearson alleges no facts tending to show that there were not legitimate penological reasons for any strip search to which he was subjected. In fact, Petitioner pleads no facts from which anyone could infer that these "almost daily" searches were conducted for any reason other than security. He has, therefore, not alleged a constitutional violation.

Furthermore, Petitioner does not allege the requisite "who, what, when and why" needed to state a viable claim relating to strip searches. *Cf. Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015) (prisoner's factual allegations supporting 1983 claim were sufficient to survive a motion to dismiss where prisoner detailed "The timing [of the frisk], combined with [the prison guard's] stated reason for initiating the frisk, [which] suggest[ed] that the frisk was pretext for sexual abuse.") Pearson does contend, in wholly conclusory fashion, that the searches were done in a "sexualized manner." However, Pearson does not elaborate on his meaning of this term. The fact that searches involve inspection of an inmate's genital and anal areas does not automatically cause them to be "sexualized;" neither does the presence of female officers during a strip search. Strip searches – and to a further extent cavity searches –are by their nature particularly invasive of one's bodily autonomy and sensitive areas. The mere vague allegation of "sexualization" is insufficient to independently establish this as a claim.

Once again, the only named defendant is the City. And in this singular instance, Pearson actually alleges that the strip searches were conducted pursuant to a DOC policy. Unfortunately for him, he fails to identify what that policy is or to allege why a DOC policy relating to strip searches violates his constitutional rights.

The Court grants Pearson leave to replead this claim, but I will not hesitate to dismiss it if Pearson continues to make vague and non-specific assertions.

## XV.    **Pearson's State Constitutional Violations Claims Are Dismissed**

Pearson's final cause of action alleges that the City committed various violations of provisions of the New York State Constitution during his 2020-2022 incarceration at Rikers. These allegations are made in the most generalized fashion. For example, Pearson states that, "The City and DOC violated Article 1, Section 5 of the New York State Constitution by holding Pearson in

inhumane and dangerous conditions while incarcerated at Rikers," and that, "The City and DOC violated the New York Constitution by allowing and permitting their employees, agents, and/or servants to inflict bodily harm upon Pearson." (AC at ¶¶ 666-67). Pearson limits himself to conclusory statements and pleads no facts that would support such claims.

There is, however, no need to allow Pearson to replead his state constitutional claim. There is no private right of action for violations of the state constitution if an alternative remedy is available elsewhere[.]" *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) (collecting cases); *see also Li v. City of New York*, 246 F. Supp. 3d 578, 639 (E.D.N.Y. 2017) ("District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983."). The allegations underlying Pearson's state constitutional claim – inhumane and dangerous conditions of incarceration and assault – can be redressed (if properly pleaded) under Section 1983 and possibly negligence. The court has allowed Pearson a second try at pleading these claims. Therefore, Pearson has no private right of action for redress under the New York State Constitution, and his final cause of action is dismissed with prejudice.

## CONCLUSION

For the reasons discussed above, all of Plaintiff's claims against all individual defendants, the New York DOC, and the NYPD are DISMISSED with prejudice.

Plaintiff's Claims 1-8, and 11 against the City are DISMISSED with prejudice.

Plaintiff's Claim 9 against the City is DISMISSED with 30 days' leave to replead.

Plaintiff's Claim 10 against the City is DISMISSED in part, with 30 days' leave to replead.

This constitutes the decision and order of the court. It is a written opinion. The Clerk of Court is respectfully directed to terminate the motions at Docket Numbers 51, 68, 77 and 97.

Dated: March 26, 2024
      New York, New York

U.S.D.J.

BY ECF TO ALL COUNSEL